

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

MOMO ENTERPRISES, LLC, a dissolved Limited )
Liability Company, ANASTACIO GONZALEZ, )
Plaza Lounge, LLC, dissolved Limited Liability Company )
)
)
Plaintiffs )
)  Case No. 1:15-cv-11074
v. )
)  **JURY TRIAL DEMANDED**
BANCO POPULAR OF NORTH AMERICA, )
POPULAR INC, POPULAR COMMUNITY BANK, )
CHUHAK & TECSON, PEAK PROPERTIES, )  Judge Sharon Johnson Coleman
DAVID J. AXELROD AND ASSOCIATES, )  M. Judge Sidney I. Schenkier
THOMAS H. HORN, TERENCE G.TIU )
DANIEL J. FUMAGALLI, JOSHUA S. HYMAN )
KARA ALLEN, MICHAEL L. ZUCKER, )
ROBERT S. STONE, DAVID BALL, JENNIFER CIRAR, )
DIVISON POINT TERRACES CONDO ASSOCIATION, )
DPT CONDO PRESIDENT, DPT CONDO SECRETARY )  **FILED**
KOVITZ SHIFRIN & NESBIT, JOHN LEYDON, )
KATE LEYDON, 1700 W. DIVISION LLC, )  MAR 0 7 2016 ﾂ
JEFFREY E. ROCHMAN, DAVID J. AXELROD, )
UNNAMED CO-CONSPIRATORS, e.t al, )  THOMAS G. BRUTON
)  CLERK, U.S. DISTRICT COURT
Defendants )

## PLAINTIFF'S AMENDED CLAIMS AGAINST DEFENDANTS
## WITH JURY DEMAND

Now come the Plaintiffs, ANASTACIO GONZALEZ, MOMO Enterprises, and Plaza

Lounge LLC, by their attorney Robert D. Shearer and respectfully submit their Claims against

the Defendants name here in. In support of this motion, Plaintiffs state as follows:

1

## I.    INTRODUCTION

1.      This extraordinarily egregious and profoundly disturbing case arises out of a malicious on-going CIVIL CONSPIRACIES, motivated by racial hatred towards Latinos and by "organized racketeering style" financial greed and unjust enrichment, which was fully executed in concert of action by the CO-CONSPIRATORS listed below and whose primary purpose was and is to: (1) defraud the PLAINTIFF, Anastacio Gonzalez, a first generation Latino (hereinafter, "GONZALEZ") of his most important assets including: (a) his residential condominium and home (hereinafter, GONZALEZ RESIDENTIAL CONDO); (b) his rooftop condominium (hereinafter, GONZALEZ ROOFTOP CONDO; (c) his commercial condominium (hereinafter, GONZALEZ COMMERCIAL CONDO); and (d) his restaurant business and personal property (hereinafter, GONZALEZ RESTAURANT); all located in a new construction building (hereinafter, SUBJECT BUILDING), situated in one of the top four commercial income producing neighborhoods in the country as reported by Forbes; (2) unlawfully conceal and cover-up that scheme through various unlawful and malicious acts; and (3) maliciously deprive GONZALEZ of his Federal and State civil rights, his Federal and State statutory rights and his State personal injury rights, in an effort to: (a) oppress and forcibly silence GONZALEZ; and (b) force the relevant statutes of limitations to run out.

2.      As such, this is a Complaint against the Defendants for a: (1) Civil Conspiracy to Defraud GONZALEZ and his Businesses; (2) Civil Conspiracy to Deprive GONZALEZ and his Businesses of their Civil Rights; and (3) for various unlawful acts and torts committed by the CO-CONSPIRATORS in furtherance of those schemes.

3.      The present CONSPIRACIES involve direct and indirect collusion between the following individuals and entities, as well as others (hereinafter sometimes jointly and/or severably

2

referred to as "CO-CONSPIRATORS") all of whom knowingly entered into an unlawful

agreement and committed various tortious acts, civil right violations and unlawful overt acts in

concert of action with each other, in furtherance of the aforesaid CIVIL CONSPIRACIES, as fully

detailed in this Complaint:

      a.  Banco Popular of North America Popular, upon information and belief aka Popular Community Bank (hereinafter "BPNA" or PCB BANK);

      b.  Thomas H. Horn, Assistant Vice President of Commercial Lending for BPNA (hereinafter "HORN")

      c.  BPNA's law firm, Chuhak & Tecson, (hereinafter "C&T LAW");

      d.  BPNA's Agent and Management Company: Michael Zucker, (hereinafter " ZUCKER") and Peak Properties, (hereinafter "PEAK");

      e.  Attorney David J. Axelrod, (hereinafter "AXELROD") and his law firm, David J. Axelrod & Associates (hereinafter "AXELROD LAW");

      f.  Four Caucasian individuals (Robert STONE, (hereinafter "STONE"), David BALL, (hereinafter "BALL"), Jennifer CIRAR, (hereinafter "CIRAR"), and John Leydon, (hereinafter "LEYDON); and

      g.  The Division Point Terraces Condominium Association, hereinafter "DPT CONDO" and its officers who control the association: STONE (the Secretary of DPT CONDO, hereinafter DPT CONDO SECRETARY), and BALL (the President of DPT CONDO, hereinafter DPT CONDO PRESIDENT).

## A.   **OVERVIEW**

     4.     GONZALEZ, a first generation Latino, purchased a commercial condominium unit

(GONZALEZ COMMERCIAL CONDO) on the first floor of a new construction four-unit, four-

story, mixed-use condominium building (SUBJECT BUILDING) which is located in Chicago's

lucrative and trendy Wicker Park neighborhood, with the intention of opening a restaurant

(GONZALEZ RESTAURANT) in the commercial first floor space. GONZALEZ also purchased

a residential condominium unit (GONZALEZ RESIDENTIAL CONDO) located on the fourth

floor of the SUBJECT BUIDLING, which became his home, and the rooftop deck condominium parcel (GONZALEZ ROOFTOP CONDO).

5.  John Leydon (LEYDON), a Caucasian male and business man who owns various properties and businesses near the SUBJECT BUILDING, and a longtime friend of Robert Stone (STONE), directed STONE to purchase Residential Condominium Unit 2, located on the second floor of the SUBJECT BUILDING, which he did. Thereafter, STONE and LEYDON secretly entered into a conspiracy with other CO-CONSPIRATORS, to defraud GONZALEZ of GONZALEZ COMMERCIAL CONDO and GONZALEZ RESTAURANT.

6.  David Ball (BALL) and Jenifer Cirar (CIRAR) purchased Residential Condominium Unit 3, located on the third floor of the SUBJECT BUILDING and also resided in that condominium unit at all relevant times.

7.  The Condo association governing the SUBJECT BUILDING, was and/or is the Division Point Terraces Condominium Association (DPT CONDO) of which BALL was and/or is the President (DPT CONDO PRESIDENT) and STONE was and/or is the Secretary (DPT CONDO SECRETARY).

**UNLAWFUL /OVERT ACTS COMMITTED BY STONE, BALL & CIRAR**

8.  Prior to GONZALEZ launching GONZALEZ RESTAURANT, STONE: (1) repeatedly demanded that GONZALEZ sell or lease to him GONZALEZ COMMERCIAL CONDO; (2) communicated to GONZALEZ that he did not want Gonzalez's Latino business in his building; (3) sent a text message to GONZALEZ stating to the effect that: If you open a Latino business, I will hire a very young and very hungry attorney and drown you in legal debt; and (4) asserted that he (STONE) had the power, influence and money to take all of GONZALEZ's personal and business assets and that he was going to do so.

4

9.    GONZALEZ consistently refused all of those demands by STONE, and proceeded to launch GONZALEZ RESTAURANT in GONZALEZ COMMERCIAL CONDO. Thereafter, STONE began to conspire with BALL, CIRAR, LEYDON, DPT CONDO and BPNA to maliciously damage GONZALEZ, GONZALEZ COMMERCIAL CONDO, and GONZALEZ RESTAURANT by committing various unlawful and tortious acts in an effort to prevent GONZALEZ RESTAURANT first from opening, and then from earning a profit once it opened. The intent was to: (1) making it impossible for GONZALEZ to make his mortgage payments; (2) force a sale of GONZALEZ COMMERCIAL CONDO at public auction; and (3) execute a bid-rigging scheme to ensure the transfer of the property to CO-CONSPIRATORS. In furtherance of this initial effort, STONE, BALL, CIRAR and LEYDON, individually and in concert with the other CO-CONSPIRATORS, committed various malicious, unlawful and overt acts respectively, including but not limited to the following:

a.    Maliciously filed the first fraudulent lawsuit against GONZALEZ individually and GONZALEZ RESTAURANT (which had no legal basis and which specifically violated specific provisions in the real estate sales/purchase contracts for Residential Condominium Units 2 and 3) with the intent to financially damage GONZALEZ, fraudulently force GONZALEZ to incur high legal fees, and tortiously interfere with GONZALEZ RESTAURANT. Significantly, Chicago Alderman Joe Proco Moreno (as well as others) set forth a declaration pursuant to an investigation conducted by the Mexican American Legal Defense and Education Fund (MALDEF) Attorney Jorge Sanchez, demonstrating that the aforesaid lawsuit was fraudulent and that STONE and BALL had committed perjury.

b.    Repeatedly dumped dog feces and urine around the front, side and rear entrances of GONZALEZ RESTAURANT (as well as around GONZALEZ personal residential entrance), to create a constant foul odor and barrier, in an attempt to prevent customers from patronizing GONZALEZ RESTAURANT. Most of the instances were logged, documented via photographs, and captured on video; for example, on one occasion, the PLAINTIFF'S video recorded dog feces and urine clearly being dumped from STONE'S second floor condo unit at the entrance and inside of GONZALEZ RESTAURANT;

c.    Repeatedly racially attacked GONZALEZ and his Latino employees and associates by consistently referring to them as 'piece of shit, jag off, punks," then disturbingly harassing them utilizing dog feces;

d. Repeatedly pad-locked the rear entrance/emergency exit to GONZALEZ RESTAURANT. The intent was to prevent the business from operating in that the rear exit functioned not only as an emergency exit for the establishment, but also served as the main way to bring in food, beverages and supplies into GONZALEZ RESTAURANT kitchen and to remove garbage from the premises. On one occasion, GONZALEZ filed a Chicago Police report and a motion in Court to force STONE and BALL to remove the pad-locks which they had unlawfully placed on the rear fence of GONZALEZ RESTAURANT. As a result, STONE and BALL admitted to pad-locking GONZALEZ RESTAURANT rear fence, and Judge Mary K. Rochford, in response, subsequently entered a Court Order directing STONE, BALL, and CIRAR to remove the pad-locks. However, despite that Court Order, the pattern continued.

e. Repeatedly blocked the rear entrance/emergency exit GONZALEZ RESTAURANT with large commercial garbage containers (and their own garbage) and then smeared the handles of the garbage containers with dog feces to make them more difficult to move. Many of these instances were logged, photographed and/or captured on video.

f. Repeatedly filed and/or caused to be filed several false Chicago Police reports and/or calls falsely alleging a noise nuisance at GONZALEZ RESTAURANT which caused a constant police presence at GONZALEZ RESTAURANT. The intent was to label GONZALEZ RESTAURANT as a "troubled business" after which potential customers were dissuaded from patronizing GONZALEZ RESTAURANT. The constant arrival of members of the Chicago Police Department also caused customers to leave GONZALEZ RESTAURANT. Several Police investigations conducted as a result of the false noise nuisance complaints, determined that there was never any noise nuisance. As a result, GONZALEZ RESTAURANT was never issued any noise nuisance related citation;

g. Consistently defamed and committed libel and slander against GONZALEZ and GONZALEZ RESTAURANT through various means including social media, verbally and in writing. For example, various Starbucks employees, located across the street from GONZALEZ RESTAURANT, stated that STONE and/or BALL were coming into that Starbucks and defaming GONZALEZ and GONZALEZ RESTAURANT verbally and in writing by dropping off printed material, which defamed GONZALEZ and GONZALEZ RESTAURANT. One Starbucks employee provided a signed and notarized affidavit to this effect to GONZALEZ.

h. Sent various messages to GONZALEZ via text, including but not limited to the following, which further clearly demonstrates the fraudulent nature of the first fraudulent lawsuit and reveals STONE's actual motivation for filing these suits was to destroy Plaintiff and Plaintiffs business financially:

[STONE]: "***pay dave (BALL) and we will stop – this is not a fucken game – we are taking you to court for a second time and we already started preparing for a lengthy trial on the first suit. I

6

have deep pockets – I hope you do!" [Sent September 24, 2009, 10:11 p.m.]

[STONE]: "*** I rather Mediated then take this case to trial – save your pennies. End of Story". [Sent by STONE to GONZALEZ on June 23, 2009]

[STONE]: "it will never stop I'm on your ass***" [November 8, 2009, 2:03 am]

[STONE]: "***I'm dragging ur ass through a long ass trial – then we are coming after u again***" [Sent December 5, 2009, 12:20 a.m.]

[STONE]: "***see you in court - my love" [Sent December 5, 2009, 12:24 a.m.]

## UNLAWFUL / OVERT ACTS COMMITTED BY DPT CONDO

10.  STONE, BALL and CIRAR formed DPT CONDO with the malicious intent to damage GONZALEZ and GONZALEZ BUSINESS as clearly demonstrated by the following text message(s), of several, that STONE sent to GONZALEZ:

[STONE]: "I tried to be civilized about this matter and u refuse to accommodate dave and myself – so now we are going to use the powers of the condo board – dave is president fyi.", "***Ur out voted and this is just the start *** its going to get ugly", "*** it's a two thirds vote we can do whatever we want***" [December 5 and 7, 2009]

11.  Thereafter, STONE and BALL utilized their positions as DPT CONDO PRESIDENT (BALL), and DPT CONDO SECRETARY (STONE) to damage GONZALEZ, GONZALEZ RESTAURANT, and GONZALEZ COMMERCIAL CONDO including but not limited to the following acts:

a.  Filed a second malicious and fraudulent lawsuit, which was directed against GONZALEZ RESTAURANT, fraudulently alleging that GONZALEZ RESTAURANT owed DPT CONDO certain monies for Insurance. However: GONZALEZ RESTAURANT had already obtained insurance; also, no demand letter was ever sent to GONZALEZ prior to the filing of the aforesaid lawsuit, as required by law. In addition, a default judgment was obtained by DPT CONDO by scheduling the Motion for Default Judgment to coincide with two other court dates involving

7

BPNA and STONE/BALL which GONZALEZ was obligated to attend. However, this lawsuit ended in GONZALEZ RESTAURANT favor.

b. Filed a third malicious and fraudulent lawsuit, which was directed against GONZALEZ, which fraudulently alleged that GONZALEZ owed the DPT CONDO certain monies for assessments, and which demanded possession through the Forcible Entry and Detainer Act. Significantly, DPT CONDO did not provide any substantiating evidence and all of their Verified complaints alleged different amounts owed by GONZALEZ (from $5650.00 to $11,735.00). However, DPT CONDO obtained a judgment against GONZALEZ and in its favor through the false testimony of BALL as DPT CONDO PRESIDENT.

c. Intentionally damaged GONZALEZ from a financial standpoint, by: (1) Fraudulently inducing GONZALEZ to pay for common DPT CONDO bills by falsely promising they would reimburse GONZALEZ for their share of the payments, including maintenance, repairs, improvements, and utility bills, (such as the COMED electrical bill for the common public meter and a common City of Chicago Water Bill). STONE and BALL's promise to fully reimburse GONZALEZ was false since they never intended to fully reimburse GONZALEZ. As a result, GONZALEZ incurred numerous expenses beyond his share of the common expenses for the SUBJECT BUILDING, which totaled thousands of dollars for which GONZALEZ was never reimbursed.

d. Physically and verbally attacked GONZALEZ during an unlawful breaking and entry of GONZALEZ ROOFTOP PARCEL. At that time, STONE, BALL and an unknown associate, unlawfully trespassed onto GONZALEZ private rooftop, by drilling out the deadbolt lock to the access door. As GONZALEZ was videotaping the incident with his phone, the unidentified person who was drilling out the lock, physically attacked and verbally assaulted GONZALEZ while holding the drill in his hand. GONZALEZ filed a Chicago Police report, which documented the incident. Significantly, GONZALEZ was then treated at St. Mary and Elizabeth Hospital for the injuries he sustained, during the physical attack.

e. Repeatedly discriminated against GONZALEZ, violated GONZALEZ housing rights and blatantly breached their fiduciary duties as DPT CONDO PRESIDENT and DPT CONDO SECRETARY. For example the DPT CONDO: (1) refused to service or provide any maintenance for the common element areas located on GONZALEZ's fourth floor front and rear stairways, thereby causing a very dangerous environment for GONZALEZ; (2) refused to change the hallway lights when they went out and paint or clean the front and rear stairways on GONZALEZ floor; (3) restricted GONZALEZ from utilizing certain common areas in the same manner that the other Caucasian tenants were allowed to, as clearly demonstrated by a certified letter proferred to GONZALEZ by the DPT CONDO attorney, as well a text messages sent to GONZALEZ by the DPT CONDO officers; (4) Did not afford GONZALEZ the right to vote as a DPT CONDO MEMBER as demonstrated by various text messages; and (5) committed perjury during the adjudication of a restraining order filed by GONZALEZ against STONE, as attested to by Alderman Joe Proco Moreno.

f. Repeatedly committed various criminal acts including criminal trespass and racially motivated criminal damage to property. For example, on one occasion, STONE disturbingly damaged the building's interior hallways, in an effort to terrorize and defame GONZALEZ. On February 2, 2010, STONE damaged the front and rear hallways in the entire building, including the garage, from the first floor to the fourth floor by spray painting derogatory terms ("stasur n ass", "u ass", "scumbag stas") in large blood red letters from floor to ceiling, which were specifically directed at GONZALEZ ("stas" is GONZALEZ nickname). GONZALEZ immediately filed a Chicago Police report related to the aforesaid February 2, 2010 incident. In response to that incident, Judge Mary K. Rochford, issued an Order which mandated that STONE and BALL "cease and desist" contacting GONZALEZ, spray painting, and/or damaging the premises, in any way.

g. Committed perjury under oath in relation to the aforesaid criminal damage to property, as attested to by a declaration from Alderman Joe Proco Moreno, which was conducted by MALDEF Attorney Jorge Sanchez.

## UNLAWFUL /OVERT ACTS COMMITTED BY BPNA AND C&T LAW

12.     After STONE, BALL, LEYDON and the DPT CONDO accomplished their initial goal of maliciously forcing GONZALEZ COMMERCIAL CONDO to fall behind in its mortgage payments, they began to fully conspire with BPNA and C&T LAW, to effectuate their scheme. Their specific intent was to: (1) initiate a wrongful foreclosure; (2) force a sale of GONALEZ COMMERCIAL CONDO at public auction; and (3) effectuate a bid-rigging scheme so that the property could be purchased by one of the CO-CONSPIRATORS at a price far below the fair market value.

13.     Significantly, BPNA and C&T LAW methodically orchestrated and successfully executed the most unlawful and damaging elements of the present CIVIL CONSPIRACIES which allowed the CO-CONSPIRATORS as a whole to effectuate their schemes and accomplish their unlawful goals, which actions are clearly and indisputably evidenced by videotaped footage, court testimony under oath and transcripts, witness testimony, emails, text messages, and official documents in the record, as detailed below:

a. Initiated and executed a wrongful foreclosure, by intentionally inserting fraudulent material information in their pleadings, thereby forcing a sale of GONZALEZ COMMERCIAL CONDO at a court ordered public auction;

b. Conspired directly with STONE, BALL and the DPT CONDO during foreclosure proceedings against GONZALEZ and GONZALEZ COMMERCIAL CONDO. Significantly, BPNA appeared in court in collaboration with STONE and BALL during which BPNA fraudulently misled the Court by the use of perjured testimony by STONE and BALL. The specific fraudulent intent of such actions by BPNA was to appoint ZUCKER as their chosen Receiver for GONZALEZ COMMERCIAL CONDO in an effort to unlawfully transfer control of GONZALEZ COMMERCIAL CONDO to BPNA.

c. Effectuated a bid-rigging scheme in direct violation of the SHERMAN ACT in which they purposefully suppressed competitive bidding and artificially suppressed the price of GONZALEZ COMMERCIAL CONDO;

d. Fraudulently purchased GONZALEZ COMMERCIAL CONDO at a non-competitive price and deep discount at the court ordered public auction.

e. Materially altered the judicial sale deed of GONZALEZ COMMERCIAL CONDO and recorded that fraudulent deed with the Cook County Recorder of Deeds in an initial effort to conceal the bid-rigging conspiracy;

f. Executed a malicious and wrongful eviction via a Forcible Entry and Detainer Action against GONZALEZ RESTAURANT. Significantly GONZALEZ RESTAURANT was not a party to the foreclosure proceedings, and prior thereto, BPNA had specifically waived their right to evict GONZALEZ RESTAURANT.

g. Unlawfully converted all of GONZALEZ RESTAURANT personalty in direct violation of orders issued by the Circuit Court of Cook County and by Cook County Sheriff. The aforementioned theft was captured on video and confirmed and testified to under oath by ZUCKER, BPNA'S own Agent.

h. Fraudulently sold GONZALEZ COMMERCIAL CONDO and all of GONZALEZ RESTAURANT personalty to LEYDON, at a deep discount and in violation of the Illinois Uniform Fraudulent Transfer Act, Orders by the Circuit Court of Cook County and the Cook County Sheriff. Significantly the sale was effectuated after GONZALEZ had filed a lawsuit and had encumbered title to GONZALEZ COMMERCIAL CONDO by filing a lispendens, and after GONZALEZ had also filed a lien in the amount of $1,500,000.00;

i. Aided and abetted LEYDON in a mortgage fraud scheme to enable LEYDON to purchase GONZALEZ COMMERCIAL CONDO from BPNA. Significantly, LEYDON apparently pledged GONZALEZ RESTAURANT personalty, which he did not own, and represented clear and marketable title in order to obtain the loan to purchase GONZALEZ COMMERCIAL CONDO from BPNA. BPNA was well aware of their fraudulent representations made by LEYDON. It is also important

10

to note that, LEYDON was captured on video accessing GONZALEZ
COMMERCIAL CONDO with his own set of keys on at least two occasions both
of which were prior to the time BPNA sold GONZALEZ COMMERCIAL
CONDO to LEYDON; and (2) During the sale of GONZALEZ COMMERCIAL
CONDO to LEYDON, C&T LAW became LEYDONS Attorney.

## UNLAWFUL /OVERT ACTS COMMITTED BY LEYDON

14.     On two occasions GONZALEZ and an employee of GONZALEZ RESTAURANT,

observed and videotaped LEYDON freely entering GONZALEZ COMMERCIAL CONDO with

his own set of keys, when LEYDON was not yet the owner, which further clearly evidences

LEYDON's direct collusion with BPNA. Thereafter, LEYDON committed various unlawful acts

in furtherance of the CIVIL CONSPIRACY, including but not limited to the following:

   a. Set in motion a physical and verbal assault against GONZALEZ Latino Associate
      during the second time that he was observed entering GONZALEZ
      COMMERCIAL CONDO. GONZALEZ Latino associate was struck in the face
      and back of the head by LEYDON'S associate pursuant to which he suffered
      injuries to the head and eye. During the physical attack, he was verbally assaulted
      pursuant to which he was called a "jag off", "piece of shit", and "fat boy". Further,
      the offender yelled "I hate punks". GONZALEZ Latino associate filed a police
      report regarding the battery and was subsequently examined and treated at the St.
      Elizabeth Hospital Emergency Room on two occasions for the injuries suffered in
      this attack. Significantly, the entire incident was captured on video and witnessed
      by two individuals.

   b. Committed the first instance of Mortgage fraud during the purchase of
      GONZALEZ COMMERCIAL CONDO from BPNA as follows: (1) fraudulently
      represented that he had clear and marketable title to GONZALEZ COMMERCIAL
      CONDO; and (2) apparently pledged GONZALEZ RESTAURANT personalty in
      order to obtain the mortgage loan to purchase GONZALEZ COMMERCIAL
      CONDO from BPNA. Significantly, both LEYDON and STONE utilized that
      same Attorney (ROCHMAN) to close on their respective units in the SUBJECT
      BUILDING.

   c. Unlawfully transferred GONZALEZ COMMERCIAL CONDO to a separate
      company, which LEYDON controlled and at no cost, in violation of the Uniform
      Fraudulent Transfer Act and in violation of a Citation to Discover Assets that was
      issued by a Cook County Judge which strictly prohibited such transfer of assets;

   d. Committed a second instance of Mortgage Fraud as follow: (1) utilized a false
      address; and (2) once again represented clear and marketable title. Significantly,

11

that transfer was additionally unlawful in that it constituted a second violation of the Uniform Voidable Transactions Act (UVTA).

e. Modified the legal description of GONZALEZ COMMERCIAL CONDO (via a quit claim deed executed during the above mentioned second instance of Mortgage fraud) to include the indoor commercial parking spot which was specifically and intentionally excluded from the legal description (when BPNA purchased GONZALEZ COMMERCIAL CONDO at public auction, and when LEYDON purchased GONZALEZ COMMERCIAL CONDO from BPNA) in a further effort to effectuate and conceal BPNA's bid-rigging scheme;

f. Unlawfully converted the remaining personalty owned by GONZALEZ RESTAURANT and located in GONZALEZ COMMERCIAL CONDO after which GONZALEZ filed a motion against LEYDON demanding the return of said personalty. Significantly, in response: (1) LEYDON refused to return GONZALEZ personalty; (2) C&T LAW became LEYDON's Attorney in defense of said motion; (3) the petition for Attorney's fees submitted by Counsel for LEYDON (C&T LAW) demonstrated that STONE and BALL were being prepared to offer testimony to defend LEYDON; and (4) LEYDON, STONE and BALL were captured on video inside GONZALEZ COMMERCIAL CONDO celebrating over drinks and utilizing GONZALEZ personalty when GONZALEZ was evicted from his residential condo.

## THE SCHEME TO: (1) CONCEAL AND COVER-UP THE CIVIL CONSPIRACY (2) FORCIBLY SILENCE AND DEPRIVE GONZALEZ OF HIS CIVIL RIGHTS AND (3) UNLAWFULLY CAUSE THE STATUTES OF LIMITATIONS TO EXPIRE

15.    BPNA and C&T LAW, conspired directly with Attorney David J. Axelrod (AXELROD) and his law firm, David J. Axelrod & Associates (AXELROD LAW) to conceal the present conspiracy, to deprive GONZALEZ of his civil rights, and to cause the statutes of limitations to expire. To accomplish this goal, they orchestrated and executed a precisely timed and coordinated scheme, pursuant to which they repeatedly violated GONZALEZ civil rights, relentlessly and egregiously misused legal proceedings constituting several instances of malicious abuse of process and malicious prosecution and also subjected GONZALEZ and his business to physical, emotional and financial harm by committing various unlawful and illegal acts. Significantly, the main elements of this present scheme, were initiated after GONZALEZ began

12

defending himself by exposing the fraud and overall CIVIL CONSPIRACY executed by the CO-

CONSPIRATORS. This scheme primarily consisted of the following:

a. Moved to enforce a fraudulent Deficiency Judgment and pursuant thereto, issued a Citation to Discover Assets, seven months after the sale of GONZALEZ COMMERCIAL CONDO. This act was in direct response to a motion that was filed by GONZALEZ which clearly demonstrated fraud on the part of BPNA in obtaining the Default Judgments against GONZALEZ.

b. Filed a fraudulent Sanctions Motion against GONZALEZ requesting that GONZALEZ be held in Civil Contempt for allegedly filing false pleadings and to be restricted from filing future pleadings. Significantly, GONZALEZ pleadings were not false but were true, which fact was clearly evident based solely on the face of the record;

c. Filed a fraudulent Amended Sanctions Motion demanding that GONZALEZ be arrested and prosecuted by the Cook County State's Attorney for a class 3 Felony for the filing of the same allegedly false pleadings. Once again, it is evident based solely on the face of the record that GONZALEZ pleadings were not false;

d. Filed a fraudulent Motion for Contempt against GONZALEZ demanding that GONZALEZ be arrested, which Motion specifically demanded "the issuance of a writ of attachment against ANASTACIO GONZALEZ". Said Motion was also fraudulent and in direct violation of Orders issued by Cook County Circuit Judge Alexander P. White, which had stayed all citation proceedings, pending the adjudication of a motion by GONZALEZ to vacate the Default Judgment of Foreclosure and Sale. Significantly, Judge White issued that Order directing that GONZALEZ vacate the Judgment, after Judge White apparently came to the conclusion that there was apparent Fraud and Misconduct on the part of BPNA.

e. Fraudulently attempted to strike GONZALEZ Section 2-1401(f)Petition to Vacate the Default Judgments of Foreclosure and Sale (which Judge White had directed GONZALEZ to file) by attempting to submit an order to that effect without any basis for it in the Circuit Courts ruling;

f. Intentionally "spoiled" material evidence (which GONZALEZ had accumulated against the Defendants) through the theft, conversion and disposal of GONZALEZ documents, which were in the sole control and possession of BPNA. The theft and spoliation of evidence, was captured on video, witnessed, corroborated under oath by a BPNA Agent, and reported to the Chicago Police;

g. Subjected GONZALEZ and his Latino Associates to several assaults and batteries, one of which was executed by a BPNA agent (ZUCKER) and which attack was approved and coordinated by a C&T LAW Attorney (TERRENCE G. TIU) who was present for the entire physical and verbal attack. The incident was captured on video and witnessed. A Chicago Police report was promptly filed.

13

h.  Maliciously conspired directly with AXELROD and AXELROD LAW by coordinating and executing the following unlawful acts with AXELROD: (1) two unlawful attempts to arrest GONZALEZ; (2) two instances of false imprisonment; (3) one instance of unlawful detainment for four days after being ordered released from Cook County Jail by the assigned Circuit Court Judge; (4) The entry of several unlawful body attachments which wrongfully restricted GONZALEZ's freedom for over nine months; (5) the fabrication of a rule to show cause and the obtaining of a body attachment based on that non-existent rule to show cause after the relevant case was dismissed with prejudice; and (6) an attempt to extort GONZALEZ into signing a release/settlement agreement by threatening to arrest GONZALEZ.

i.  Significantly, even though BPNA and its Counsel are well aware of the allegations against them, (including a lispendens, lien, and Amicus Curiae, and Order from Judge White) BPNA, in an apparent attempt to circumvent or decrease any potential or possible liability has begun to sell its assets in Illinois, Florida and California, once again, in gross violation of the Illinois Uniform Fraudulent Transfer Act. The aforesaid sales were concealed from the Plaintiff's and from the court.

## UNLAWFUL / OVERT ACTS COMMITTED BY AXELROD AND AXELROD LAW

16.    As stated previously, BPNA and C&T LAW intentionally and unlawfully conspired directly with AXELROD and AXELROD LAW in furtherance of the present CIVIL CONSPIRACIES, but mainly in furtherance of their scheme to: (1) conceal and cover-up the present civil conspiracies; (2) forcibly silence and deprive GONZALEZ of his civil rights; and (3) unlawfully cause the statutes of limitations to expire.

17.    Moreover, previously, AXELROD on behalf of his client intentionally filed a fraudulent breach of contract/account stated lawsuit against GONZALEZ, in Violation of Supreme Court rule 137 and the Illinois Rules of Professional Conduct. However, Although GONZALEZ had filed an appearance and had denied the primary allegations of that Complaint, after which a first status date was set by the Court, AXELROD, went before the Court and obtained an Ex-Parte Default Judgment against GONZALEZ, by setting a Motion for a Default Judgment only approximately ten business days after GONZALEZ had filed his appearance and nearly a month before the first status date was set by the Circuit Court Clerk's Office, of which AXELROD was

indisputably aware. On that same day, AXELROD also apparently conducted an Ex-Parte Prove-Up hearing, then struck the first status date and then also struck the case from the call.

18.     BPNA subsequently conspired with AXELROD and AXELROD LAW in furtherance of that fraudulent lawsuit with the intent to further the CIVIL CONSPIRACIES, in question.

19.     AXELROD subsequently committed various additional, unlawful and fraudulent acts against GONZALEZ and GONZALEZ RESTAURANT, in direct collusion with BPNA, C&T LAW and others, in furtherance of the present CIVIL CONPIRACIES, including but not limited to the following acts:

a. AXELROD intentionally aided his client in the commission of various torts including fraud pursuant to which a triple recovery for certain furniture items was obtained against GONZALEZ. This is evident due to the fact that AXELROD: (1) was indisputably aware that he (AXELROD)had filed a fraudulent case against GONZALEZ; (2) knowingly obtained a monetary judgment against GONZALEZ on that fraudulent claim; and (3) was indisputably aware that his client had already unlawfully removed the subject items from GONZALEZ COMMERCIAL CONDO before GONZALEZ filed his first motion to vacate the fraudulent lawsuit.

b. Thereafter, AXELROD intentionally committed at least seven (7) instances of "Fraud Upon the Court" during the adjudication of seven motions which GONZALEZ filed to dismiss the case and vacate the Default Judgments against him. During the presentation of said motions, AXELROD each time intentionally misled the Court, as he misrepresented, concealed and suppressed material information and each time failed to vacate the judgment, which he legally was required to do.

c. Significantly, AXELROD maliciously conspired directly with BPNA and C&T LAW, and spearheaded the effort to effectuate: (1) two unlawful attempts to arrest GONZALEZ; (2) two instances of false imprisonment; (3) one instance of unlawful detainment after GONZALEZ was ordered released from Cook County Jail; and (4) several instances of obtaining body attachments without any legal basis which wrongfully restricted GONZALEZ's freedom for over 9 months. Significantly, the dates for the two unlawful attempts to arrest GONZALEZ and the two dates when GONZALEZ was arrested, were dates coordinated by C&T LAW, BPNA, and

15

AXELROD, which maliciously required GONZALEZ to appear in two separate Courtrooms at the same time.

d. AXELROD also fabricated a "rule to show cause" against GONZALEZ. Thereafter, AXELROD'S own client: (1) fired AXELROD; (2) summited two affidavits exposing all of the CIVIL CONPIRACIES described in this Complaint as well as the egregious misconduct and fraudulent acts by AXELROD; and (3) then dismissed the case against GONZALEZ with prejudice and vacated all judgments against GONZALEZ.

e. Thereafter, two months after the case against GONZALEZ was dismissed with prejudice: (1) AXELROD obtained another fraudulent body attachment against GONZALEZ; and (2) attempted to extort GONZALEZ on two occasions by proffering a settlement agreement letter to GONZALEZ, which would have completely absolved AXELROD (and possibly the rest of the CO-CONSPIRATORS) of any wrong doing in all matters and which threatened to have GONZALEZ arrested if GONZALEZ did not agree to sign the letter.

## II.   THE PARTIES

### A.   Plaintiffs

20.   Plaintiff ANASTACIO GONZALEZ (herein "GONZALEZ") is a resident of Cook County, Illinois. Plaintiff, ANASTACIO GONZALEZ, is a male Latino individual who owned and resided in Residential Condominium Unit 4 located on the fourth floor of the Subject Property at 1700 W. Division, Chicago Illinois, 6022. Plaintiff ANASTACIO GONZALEZ, through his company, MOMO Enterprises, also owned Commercial Condominium Unit 1, located on the first floor of the Subject Property.   Plaintiff ANASTACIOGONZALEZ subsequently opened a Restaurant on October, 2008 in Commercial Condominium Unit 1 named Plaza Lounge LLC.

21.   Plaintiff MOMO ENTERPRISES LLC, (herein "GONZALEZ COMMERCIAL CONDO") is a dissolved limited liability company organized under the laws of Illinois, and with its principal place of business in the State of Illinois. MOMO is the former owner of the commercial space unit 1, located 1700 W, Division unit #1, Chicago Il, 60622.

22.   Plaintiff PLAZA LOUNGE LLC, a restaurant, (herein "GONZALEZ RESTAURANT") is a dissolved limited liability company organized under the laws of Illinois, with its principal place of business in, the State of Illinois. GONZALEZ RESTAURANT is the former lease holder of commercial space unit 1located 1700 W, Division, Chicago Il, 60622.

### B.   Defendants

23.   On information and belief, at all times relevant hereto, Defendant POPULAR, INC. (1129382), according to the National Information Center is the parent(s) of BANCO POPULAR NORTH AMERICA (27736291) in the State of New York in the United States and BANCO POPULAR DE PUERTO RICO (940311) in State of Puerto Rico in the United States. POPULAR, INC. (NASDAQ: BPOP) is the largest banking institution by both assets and deposits in Puerto

Rico and in the United States ranks among the 50 largest banks and thrifts by total assets. In the United States, Popular has established a community banking franchise providing a broad range of financial services and products with branches in Florida, New Jersey and New York. POPULAR, INC., is a financial services conglomerate that has been operating in Puerto Rico for almost 121 years and in the United States for over 53 years. Defendant POPULAR, INC., through its subsidiaries, BANCO POPULAR OF NORTH AMERICA and BANCO POPULAR DE PUERTO RICO, offers a range of retail and commercial banking products and services in New York, New Jersey, Florida and Puerto Rico, both located in the United States.

24.     On information and belief, at all times relevant hereto, Defendant BANCO POPULAR NORTH AMERICA, upon information and belief also operating as POPULAR COMMUNITY BANK (herein "PCB BANK" or "BPNA) a subsidiary of POPULAR, INC., a Puerto Rico Corporation, was and is a national bank organized and existing under the laws of the United States and is a member bank of the Federal Reserve System and an insured depository institution of the Federal Deposit Insurance Corporation (FDIC).

25.     On information and belief, at all times relevant hereto, Defendant POPULAR COMMUNITY BANK (herein "PCB BANK") aka BANCO POPULAR NORTH AMERICA a subsidiary of POPULAR, INC., a Puerto Rico Corporation, was and is a national bank organized and existing under the laws of the United States with a branch office located at 9600 W. Bryn Mawr, Rosemont Illinois, 60018, PCB BANK is a member bank of the Federal Reserve System and an insured depository institution of the Federal Deposit Insurance Corporation (FDIC).

26.     (a)     On information and belief, at all times relevant hereto, Defendant THOMAS H. HORN (herein "HORN") was the Assistant Vice President/Loan Workout Officer of PCB BANK.

18

27.     On information and belief, at all times relevant hereto, Defendant CHUHAK &
TECSON, P.C. (#70693)("C&T LAW"), located 30 South Wacker Drive, Suite 2600 Chicago,
Illinois 60606-7512 is and was a professional corporation law firm organized under the laws of
Illinois, and with its principal place of business in, the State of Illinois.

28.     (a)     On information and belief, at all times relevant hereto, Defendant
TERENCE GERONA TIU, is and was an attorney at the law firm of CHUHAK & TECSON, P.C.
("C&T" LAW), and has been licensed to practice law in the State of Illinois since May 4, 2000.
As a member of C&T LAW he was the main attorney representing BPNA and JOHN LEYDON
(Case No 10 CH 02403) and against GONZALEZ, MOMO and PLAZA.

29.     (b)     On information and belief, at all times relevant hereto, Defendant JOSHUA
SIDNEY HYMAN is a Principal with CHUHAK & TECSON, P.C. ("C&T LAW"), and has been
licensed to practice law in the State of Illinois since November 9, 1989. As a member of C&T he
filed the initial mortgage foreclosure complaint (Case No 10 CH 02403) for PCB BANK and
against GONZALEZ, MOMO.

30.     (c)     On information and belief, at all times relevant times hereto, Defendant
DANIEL JOSEPH FUMAGALLI, is an attorney at the law firm of CHUHAK & TECSON, P.C.
("C&T LAW"), and has been licensed to practice law in the State of Illinois since November 1,
1982.

31.     (d)     On information and belief, at all times relevant hereto, Defendant KARA
ALLEN, is an attorney at the law firm of CHUHAK & TECSON, P.C. ("C&T"), and has been
licensed to practice law in the State of Illinois since November 6, 2003. As a member of C&T she
has appeared as substitute counsel on matters on behalf of PCB BANK (Case No 10 CH 02403)
and against GONZALEZ, MOMO and PLAZA.

32.     On information and belief, at all times relevant times hereto, Defendant PEAK PROPERTIES LLC ("PEAK") located at 2201 W. Roscoe Chicago, Illinois 60618 is a limited liability corporation organized under the laws of, and with its principal place of business in, the State of Illinois.

33.     (a)     On information and belief, at all times relevant hereto, Defendant MICHAEL L. ZUCKER is the president of PEAK.

34.     On information and belief, at all times relevant hereto, Defendant ROBERT S. STONE is an adult Caucasian individual who owns and resides in unit #2 at the condominium property located at 1700 West Division Street, Unit #2, Chicago, Illinois 60622.

35.     On information and belief, at all times relevant hereto, Defendant DAVID BALL (herein "BALL") is an adult in Caucasian individual who owns and resides in unit#3 at the condominium property located at 1700 West Division Street, Unit #3, Chicago, Illinois 60622.

36.     On information and belief, at all times relevant hereto, Defendant JENNIFER CIRAR (herein "CIRAR") is an adult Caucasian individual who owns and resides/resided in unit #3 at the condominium property located at 1700 West Division Street, Unit #3, Chicago, Illinois 60622.

37.     On information and belief, at all times relevant hereto, DIVISION POINT TERRENCE CONDO ASSOCIATION (herein "DPT CONDO") was granted the authority to administer the property located at 1700 W. Division Street Chicago IL, 60622 units #2, 3 and 4 pursuant to a declaration of condominium filed with Illinois Secretary of State.

38.     (a)     On information and belief, at all times relevant hereto, Defendant DAVID BALL was President of DPT CONDO.

20

39.  (b)  On information and belief, at all times relevant hereto, Defendant ROBERT S. STONE was secretary of DPT CONDO.

40.  On information and belief, at all times relevant hereto, Defendant Kovitz, Shifrin & Nesbit 750 Lake Cook Road, Suite 350, Buffalo Grove, Illinois 60089, law firm for DPT CONDO, took over for BROTSCHUL POTTS LLC.

41.  On information and belief, at all times relevant hereto, Defendant JOHN LEYDON ("LEYDON") is an adult individual who owns the commercial property located at 1700 West Division Street, unit #1, Chicago, Illinois 60622. LEYDON had obtained the commercial space from PCB BANK through a Special Warranty Deed and used Chicago Title & Trust Co. ("CT&TC") for title insurance.

42.  On information and belief, at all times relevant hereto, Defendant 1700 W. DIVISION, LLC, is a limited liability company organized under the laws of, and with its principal place of business in, the State of Illinois. It was formed on December 1, 2011 and its agent of record is JEFFREY E. ROCHMAN. Its principal office is located at 1743 West Division Suite 300, Chicago, Illinois 60622. 1700 W. DIVISION, LLC

43.  (a)  On information and belief, at all times relevant hereto, Defendant JOHN LEYDON ("LEYDON") is a managing member of 1700 W. DIVISION LLC.

44.  (b)  On information and belief, at all times relevant hereto, Defendant KATE LEYDON is a managing member of 1700 W. DIVISION LLC.

45.  On information and belief, at all times relevant hereto, Defendant Jeffrey Earl Rochman is an Attorney who owns the law firm of JEFFREY EARL ROCHMAN & ASSOCIATES, LTD, located at 55 West Monroe Street, Suite 3950, Chicago, Illinois 60603.

46.     On information and belief, at all times relevant hereto, Defendant DAVID J. AXELROD & ASSOCIATES ("DJA&A"), 1448 Old Skokie Road, Suite C Highland Park, IL 60035 is a law firm organized under the laws of Illinois, and with its principal place of business in, the State of Illinois. It was incorporated on January 31, 1997 and its registered agent is DAVID JAY AXELROD ("AXELROD") who lists the same address.

47.     (a)     On information and belief, at all times relevant hereto, Defendant DAVID JAY AXELROD ("AXELROD"), is a Principal/President at DJA&A. On information and belief, at all times relevant hereto, Defendant David Jay Axelrod ("AXELROD"), is an adult individual who resides in the State of Illinois, and has been licensed to practice law in the State of Illinois since May 1, 1980.

## UNNAMED CO-CONSPIRATORS

48.     Various other persons, firms and entities not named as Defendants herein have participated as co-conspirators in the violations of law alleged herein, and have aided, abetted and performed acts and made statements in furtherance thereof.

## III.     JURISDICTION AND VENUE

49.     The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

50.     Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the Plaintiff is residents of Illinois, whereas the PCB BANK Defendant is a subject of foreign states and because the value of the matter in controversy exceeds $75,000.

51.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claim is based occurred in the Northern District of Illinois. The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

22

52.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the claims asserted arise under the Constitution and laws of the United States.

53.     Venue lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 because at least one of the Defendants resides in the Northern District of Illinois, and a substantial part of the events or omissions giving rise to the claims occurred in this District. Further, there are common questions of law and fact with regard to all Defendants.

## IV.     RELEVANT FACTS

## A.     BACKGROUND

### (1)     The Subject Building

54.     The subject building is a new construction four-unit, four-story, mixed-use condominium building with an attached four car garage (hereinafter "SUBJECT BUILDING"). The SUBJECT BUILDING was constructed in 2005 and is located at 1700 W. Division, Chicago, IL 60622, in Chicago's lucrative and trendy Wicker Park neighborhood, which was recently named one of the top four neighborhoods in the country by Forbes Magazine. Furthermore, the SUBJECT BUILDING is primly located on a corner lot with unique 25-foot-wide sidewalks providing outdoor sidewalk seating on both sides (Division and Paulina), and close to public transportation (CTA Blue Line and Buses) and the 90/94 Expressway. Neighbors include Starbucks located directly across the street, as well as top restaurants, boutiques and shops. Specifically, the SUBJECT BUILDING consists of:

> a.  one commercial condominium located on the first floor known as "Unit 1" which includes one indoor garage parking spot;
>
> b.  one residential condominium located on the second floor known as "Unit 2" which includes one indoor garage parking spot;
>
> c.  one residential condominium located on the third floor known as "Unit 3" which includes one indoor garage parking spot;

23

       d.  one residential condominium located on the fourth floor known as "Unit 4" which includes one indoor garage parking spot;

       e.  one rooftop deck parcel located at the roof of the SUBJECT BUILDING with its own PIN Number and legal description, known as "Rooftop Parcel")

55.    Pursuant to the purchase contract and pertinent Condominium Documents, residential condominium Units 2, 3, and 4, belong to the Division Point Terraces Condominium Association (hereinafter "DPT CONDO").

56.    Also, pursuant to the purchase contract and pertinent condominium documents, "Unit 4" and the "Rooftop Parcel" exist separate and apart from residential condominium Units 2, 3, and 4 and therefore do not belong to the DPT CONDO (Division Point Terraces Condominium Association).

## (2)   Acquisition of Condominium Units and Specific Terms of Purchase Contracts

57.    On September 28, 2005, David Ball, a white Caucasian male, (hereinafter, "BALL") and Jennifer Cirar, a white Caucasian female (hereinafter "CIRAR") purchased and closed on residential condominium Unit 3, located on the third floor of the SUBJECT BUILDING.

58.    On October 25, 2005, Robert Stone, a white Caucasian male, (hereinafter "STONE") purchased and closed on residential condominium Unit 2, located on the second floor of the SUBJECT BUILDING

59.    Prior to purchasing their respective residential condominium units, the seller made BALL, CIRAR, and STONE aware that GONZALEZ would be purchasing Unit 4, hereinafter, GONZALEZ RESIDENTIAL CONDO, the "Rooftop Parcel, hereinafter, GONZALEZ ROOFTOP PARCEL, and Unit 1, hereinafter, GONZALEZ COMMERCIAL CONDO, and of the following conditions and terms, to which they all agreed:

       a.  GONZALEZ COMMERCIAL CONDO and GONZALEZ ROOFTOP PARCEL "shall exist separate and apart from DPT CONDO;

      b.  GONZALEZ COMMERCIAL CONDO shall be occupied by a restaurant with a liquor license;

      c.  BALL, CIRAR and STONE would forever be prohibited from directly or indirectly opposing the operation of the restaurant business, including the "application, issuance, or possession of any liquor license."

As such, BALL and CIRAR on May 12, 2005, and STONE on February 6, 2005, approved, signed

and became bound to the terms of the following provision, within their PURCHASE

CONTRACTS, which required a separate signature, and which states in pertinent part as follows:

"11.  ASSOCIATION:"

"Purchaser acknowledges that the Declaration of Covenants provides for the existence of a Commercial Parcel and a Roof Top Deck which shall exist separate and apart from the Condominium Property as set forth more fully in the Declaration of Covenants. Purchaser also acknowledges the potential of the Commercial Parcel to be utilized as a lounge-like, café-like, and/or restaurant-like establishment as permitted by the current City of Chicago Zoning and as set forth more fully in the Declarations of Covenants. Purchaser further acknowledges the potential of the Commercial Parcel to apply for and/or possess a liquor license. Purchaser hereby agrees that it will not now nor in the future contest directly nor indirectly, personally or as a member of the Association, the application, issuance, or possession of any liquor license."

      60.    In addition, pursuant to the PURCHASE CONTRACTS, STONE, BALL and

CIRAR also waived any "implied warranty of habitability", and instead agreed to a one year

guaranty from the seller expiring one year after the closing date. Furthermore, the contracts inured

to the benefit of all successors and heirs, and was deemed the controlling instrument in all

circumstances. The additional provisions in the PURCHASE CONTRACT which were

specifically approved and signed by STONE, BALL and CIRAR, stated in pertinent part as

follows:

"31.  WAIVER AND DISCLAIMER OF IMPLIED WARRANTY OF HABITABILITY.

25

"EXPRESS WARRANTIES: *** Purchaser accepts the express warranty granted therein as a substitute for the Implied Warranty of Habitability hereby waived by Purchaser and disclaimed by Seller."

"*** the terms and conditions of this Limited Warranty Agreement shall govern and control in all instances."

"The Waiver and Disclaimer of Implied Warranty of Habitability contained herein shall survive the closing of the Purchased Unit and shall be binding upon and inure to the benefit of Seller, Builder, and Purchaser and their respective successors, assigns, subsequent purchasers, heirs, executors, administrators, and legal or personal representatives."

"32.   CERTIFICATE OF LIMITED WARRANTY: (Purchased Unit)

"****"(the "Seller"), warrants the Purchased Unit that is the subject of this contract (the "Purchased Unit") at Division Point Terraces, Chicago Illinois for a period of One (1) year from the date of closing (the "Warranty Period"), against "latent defects" arising out of faulty workmanship or material.***"

"*** "This limited warranty is in lieu of all other warranties of seller, express or implied (including without limitation any implied warranty of merchantability, habitability or fitness for particular purpose), and inures only to the benefit of the purchaser who has signed and approved this limited warranty.   This warranty does not extend to incidental or consequential damages."

"****seller neither makes nor adopts any warranty whatsoever and specifically excludes express or implied warranty of merchantability or fitness for a particular purpose.***"

"34.   "I (we), as purchaser(s), have read and do understand paragraphs 30, 31 and 32 and I (we) have had an opportunity to seek professional advice concerning the contents and legal implications, and after so doing, knowingly execute this contract as my (our) free and voluntary act.***"

61.     On September 28, 2006, GONZALEZ purchased residential condominium Unit 4 (GONZALEZ RESIDENTIAL CONDO) which became his home.  GONZALEZ also became the owner of the Rooftop Parcel, hereinafter, GONZALEZ ROOFTOP PARCEL.

62.     On January 25, 2007, GONZALEZ, through his company, Momo Enterprises, purchased Commercial Space Unit 1 (GONZALEZ COMMERCIAL CONDO) with the intent to

26

open a restaurant, as had been fully disclosed to and agreed upon by STONE, BALL and CIRAR prior to the purchase of their respective residential condominium units.

## B.     UNLAWFUL / OVERT ACTSCOMMITTED BY STONE, BALL, AND CIRAR

### (1)     Threatening Demands against GONZALEZ

63.     On or about January of 2006, STONE alarmingly began to demand that GONZALEZ sell to him GONZALEZ COMMERCIAL CONDO. GONZALEZ consistently refused all of those demands by STONE, pursuant to which STONE became increasingly frustrated and upset.

64.     Beginning on or about April of 2006, STONE then began to also consistently demand that GONZALEZ lease him GONZALEZ COMMERCIAL CONDO. GONZALEZ also consistently refused all of those demands by STONE, pursuant to which STONE continued to become more and more frustrated and upset. For example, on April 21, 2006, STONE, refusing to take "No" for an answer, emailed GONZALEZ a formal letter on Petit Ami Letterhead (STONE's Company) once again demanding that GONZALEZ lease him GONZALEZ COMMERCIAL CONDO, which demand GONZALEZ also refused.

### (2)     Racial Attacks and Extortion against GONZALEZ

65.     On April 2007, GONZALEZ, through his company Plaza Lounge LLC, DBA EDGE (hereinafter GONZALEZ RESTAURANT), applied for the required licenses (food, liquor and others) to open GONZALEZ RESTAURANT in GONZALEZ COMMERCIAL CONDO.

66.     After learning that GONZALEZ had applied for the City and State Food and Liquor Licenses, and realizing that GONZALEZ would not sell or lease GONZALEZ COMMERCIAL CONDO to him (STONE), STONE then began to threaten and racially attack GONZALEZ

27

pursuant to which STONE initially sent a text message to GONZALEZ stating the following threat, non-verbatim (the exact text message will be documented upon proper discovery):

> **"If you open a Latino business, I will hire a very young and very hungry attorney and drown you in legal debt."**

67. Thereafter, beginning on or about May of 2007, STONE began a consistent and non-stop pattern of threatening and harassing GONZALEZ by consistently threatening that if GONZALEZ were to open a Latino business in GONZALEZ COMMERCIAL CONDO, he (STONE) would forcibly drive GONZALEZ into financial ruin and legal debt and subsequently forcibly deprive GONZALEZ of GONZALEZ RESIDENTIAL CONDO as well as GONZALEZ COMMERCIAL CONDO for STONE's financial gain and benefit.

**(3)** **Unlawful Attempts by STONE to prevent GONZALEZ from launching GONZALEZ RESTAURANT**

68. In direct violation and breach of the provisions pursuant to the PURCHASE CONTRACTS, during the liquor license application review period, STONE apparently met with the 1st Ward Alderman, Manny Flores, and his Chief of Staff, Ray Valadez, and without having a lawful basis, requested that he not allow GONZALEZ to obtain the required liquor license, in an obvious effort to prevent GONZALEZ from opening his restaurant business.

69. Furthermore, upon information and belief, prior to GONZALEZ opening his business, STONE engaged in various unlawful and disturbing acts, also in a blatant and obvious breach of the PURCHASE CONTRACT, in an unlawful effort to prevent GONZALEZ RESTAURANT from opening in GONZALEZ COMMERCIAL CONDO; including but not limited to defaming GONZALEZ by spreading false and negative information about GONZALEZ and his future business to the neighborhood including residents and businesses as well as to the vast circle of potential future customers and employees.

28

70.     On or about December of 2008, despite STONE's efforts to prevent GONZALEZ from opening his business, GONZALEZ launched GONZALEZ RESTAURANT.

71.     Thereafter, STONE began to collude with various individuals and entities, hereinafter, CO-CONSPIRATORS, and launched a relentless attack against GONZALEZ, GONZALEZ COMMERCIAL CONDO and GONZALEZ RESTAURANT with the malicious intent to; (1) unlawfully financially interfere with and damage GONZALEZ RESTAURANT; (2) unlawfully prevent GONZALEZ from making his monthly mortgage payments on GONZALEZ COMMERCIAL CONDO and GONZALEZ RESIDENTIAL CONDO; (3) force a sale of GONZALEZ COMMERCIAL CONDO through an unlawful foreclosure action; (4) purchase GONZALEZ COMMERCIAL CONDO at a deep discount through an unlawful bid-rigging scheme; and (5) execute a plan to forcibly oppress and silence GONZALEZ.

72.     Specific damages spearheaded by STONE, BALL and CIRAR, are as follows:

**(4)     The first of five fraudulent lawsuits against GONZALEZ and his Businesses by STONE, BALL and CIRAR**

73.     On January 26, 2009, STONE hired Attorney Jeffrey E. Rochman and in breach of the provisions of the PURCHASE CONTRACT, threatened to sue GONZALEZ via a signed and certified letter.

74.     On March 10, 2009, STONE maliciously and in breach of contract, filed a fraudulent "Verified Complaint for Injunctive and other Relief", through his Counsel, Randal Gold, against GONZALEZ and GONZALEZ RESTAURANT, falsely alleging a noise nuisance, in pertinent part, and requesting "preliminary and/or permanent relief preventing GONZALEZ RESTAURANT from "playing music after 9 p.m.".

75.     On March 10, 2009, STONE also filed a Verified "Emergency Motion for Preliminary Injunction" demanding in pertinent part, that GONZALEZ and GONZALEZ

29

RESTAURANT immediately cease and desist from playing or permitting the playing of any music after 9 p.m.

76.     As repeatedly stated by STONE. through various means including verbally and by text, the malicious intent of said complaints by STONE, was solely: (1) to financially damage GONZALEZ and his Businesses, by unlawfully forcing GONZALEZ to pay high recurring legal fees in order to defend said fraudulent lawsuit over an extended period of time; and (2) to financially interfere with GONZALEZ RESTAURANT by unlawfully forcing GONZALEZ RESTAURANT to quit playing music, which was critical to the financial success of any restaurant within the Division Street Corridor, where GONZALEZ RESTAURANT was located.

77.     The malicious intent by STONE and fraudulent nature of the Complaint by STONE against GONZALEZ, GONZALEZ COMMERCIAL CONDO, and GONZALEZ RESTAURANT, is clearly demonstrated in part by the following text messages, that STONE sent to GONZALEZ:

> [STONE]: "*** I rather Mediated then take this case to trial – save your pennies. End of Story". [Sent by STONE to GONZALEZ on June 23, 2009}
>
> [STONE]: "***pay dave (BALL) and we will stop – this is not a fucken game – we are taking you to court for a second time and we already started preparing for a lengthy trial on the first suit. I have deep pockets – I hope you do!" [Sent by STONE to GONZALEZ on September 24, 2009, 10:11 p.m.]
>
> [STONE]: "it will never stop I'm on your ass***" [Sent by STONE to GONZALEZ on November 8, 2009, 2:03 a.m.]
>
> [STONE]: "***you fucken ass talk to dave (BALL) – you ass" [Sent by STONE to GONZALEZ on November 18, 2009 at 7:42 p.m.]
>
> [STONE]: "Dude we have an offer on the table***if u don't accept see u at the trial-then I am a big witness for daves suit***don't fuk with me.***" [Sent by STONE to GONZALEZ on December 3, 2009, 8:23p.m.]

30

[STONE]: "***I'm dragging ur ass through a long ass trial – then we are coming after u again***" [Sent by STONE to GONZALEZ on December 5, 2009, 12:20 a.m.]

[STONE]: "***see you in court - my love" [Sent by STONE to GONZALEZ on December 5, 2009, 12:24 a.m.]

[STONE]: "*** ill drag ur ass back in court and u can burn money – also next week we will be filing against ur condo***" [Sent by STONE to GONZALEZ on September 17, 2010, 9:26 a.m.]

[STONE]: "*** I am going for a large cash settlement and it won't be dismissed my you going BK. I'll have debt collectors chase you and your wife for years***" [Sent by STONE to GONZALEZ on May 15, 2011, 9:46 p.m.

[STONE]: "Ii promise you when I get a judgment I won't negotiate you will pay me back – and I will be on you for 20 yrs if necessary***" [Sent by STONE to GONZALEZ on May 15, 2011, 11:05 p.m.]

[STONE]: "***I swear to god I will make sure that I get a judgment and chase ui for until ur 90 and u know I will. !!!!" [Sent by STONE to GONZALEZ on June 1, 2011, 8:42 p.m.]

[STONE]: "***I am demanding a trail that will last 2 days and u will need to hire a attorney***" [Sent by STONE to GONZALEZ on June 02, 2011, 1:04 p.m.]

78. On June 24, 2009, at approximately 7:30 p.m., STONE's Attorney, Randal Gold, came to GONZALEZ RESTAURANT and from the side walk between the outdoor patio and the front of GONZALEZ RESTAURANT, verbally threatened and harassed GONZALEZ, by yelling the following (non-verbatim – to be confirmed through proper discovery and affidavits) in front of approximately 15 patrons/witnesses including GONZALEZ, and two of GONZALEZ RESTAURANT employees: "Oh look who is here. You fucking asshole. Yes I could say that. I have freedom of speech. You are a fucking asshole. We are going to get you. See you in court you fucking asshole. Save your pennies".

31

79.     On September 16, 2009, STONE criminally trespassed twice into GONZALEZ RESTAURANT and GONZALEZ COMMERCIAL CONDO after which GONZALEZ reported the incident and created a Chicago Police Report.

80.     On September 16, 2009 at 8:03 p.m., GONZALEZ sent STONE the following text message: "you and your attorney have trespassed and disturbed the peace at EDGE in the past and I have documented it."

81.     In response, on September 16, 2009 at 8:05 p.m., STONE sent GONZALEZ the following message "Right trespassing – meeting next week – yes Rand will keep you honest. So Ill use him as needed"

82.     On September 25, 2009 at 2:39 p.m., GONZALEZ sent STONE the following text message: "If u trespass again, and you or your attorney disturb the peace again at my place I will call the police."

83.     In response, on September 25, 2009 at 2:47 p.m., STONE sent GONZALEZ the following message: "Fyi take your beef up with my attorney – I am not responsible for his actions – Just remember I have freedom of speech and any signs I put on my premise are legal-If I want to advertise my dislike for your club then so be it!***"

84.     It is significant to point out that STONE's Attorney, Randall Gold, came into GONZALEZ RESTAURANT, on at least one other occasion during business hours.

85.     On various occasions, STONE stated the following threat, (non-verbatim to be confirmed through proper discovery), to GONZALEZ: "I almost have the BALL's convinced to join the lawsuit; then we are going to pool our money against you". Subsequently, on July 22, 2009, BALL and CIRAR maliciously and in breach of contract, joined the aforesaid lawsuit against GONZALEZ RESTAURANT. Significantly, BALL and CIRAR joined the lawsuit six months

32

after STONE initiated the lawsuit despite the fact that BALL and CIRAR had previously represented to GONZALEZ that there were no sound issues with GONZALEZ RESTAURANT and that they did not condone STONE's behavior and his malicious lawsuit. Significantly, prior to joining STONE's lawsuit, BALL and CIRAR did not complain about any noise nuisance and also patronized GONZALEZ RESTAURANT.

86.     Both of the Complaints against GONZALEZ were amended to include BALL and CIRAR as PLAINTIFF'S. Significantly, both of the Complaints were verified by BALL and CIRAR, and upon information and belief, included fraudulent signatures as Jennifer CIRAR verified the Amended Verified Complaint with a false name of Jennifer BALL. All of the complaints utilized Jennifer BALL in the heading. Furthermore, in "Plaintiff's Answer and Affirmative Defenses to Amended Counterclaim", Jennifer CIRAR and David BALL allegedly verified the answer. However, upon information and belief, David BALL's signature was apparently forged (signed by Jennifer CIRAR).

87.     BALL later disclosed to GONZALEZ (during a meeting which BALL requested and that took place at the Starbucks across the street from the SUBJECT BUILDING) that due to possible financial and marital problems, BALL and CIRAR were at risk of being forced to sell their condominium unit. He further stated that accordingly, they had no choice but to join STONE's lawsuit, in an attempt to remove GONZALEZ RESTAURANT in order to be able to sell their residential condominium more quickly and for a higher price as it was not desirable to buy a condominium in a building that housed a restaurant in the first floor.

**(a)     Fraudulent Mediation**

88.     On April 29, 2009, STONE's suit against GONZALEZ was referred to mediation over GONZALEZ objection.

33

89.     On June 23, 2009, STONE sent the following text message to GONZALEZ, demonstrating that STONE, BALL and CIRAR's ulterior purpose was to force mediation solely to further drown GONZALEZ in legal debt by forcing him to pay the $1500.00 mediation fee and with no intention to mediate the situation:

>"Stas, call dave BALL I am not dealing with u – I rather Mediated then take this case to trial – save your pennies. End of Story".

90.     On September 11, 2009, the mediation was conducted and GONZALEZ was forced to pay $1500.00 for the mediation fee and also a legal fee to his Attorney. As STONE had previously indicated in his text message, there was no real intent on the part of STONE, BALL or CIRAR to mediate the situation, therefore, the case was then continued in Court.

**(b)     Failure to produce direct proof substantiating the Lawsuit**

91.     On December 21, 2010 and January 6, 2011, STONE and BALL were ordered to hire a sound engineer for the purpose of producing evidence of the claimed noise complaints, through sound level meter readings. However, STONE and BALL both failed to produce said requested evidence. Significantly, no credible evidence, other than oral testimony by STONE, BALL and CIRAR, was ever presented related to any noise nuisance as also required by the City of Chicago Noise Ordinance.

92.     Moreover, on January 17, 2011, GONZALEZ hired a Sound Engineer and conducted a Sound Analysis of STONE and BALLs Residential Units in their presence. The report indicated that there were no sound issues related to GONZALEZ RESTAURANT.

**(c)     Alderman Moreno, Committeeman Jessie Juarez and others provide information demonstrating the fraudulent nature of the lawsuit against GONZALEZ**

93.     On September 21, 2011, Chicago Alderman Joe Procco Moreno from the 1st Ward, set forth a Statement/Declaration, via a Deposition conducted by MALDEF Attorney Jorge

Sanchez, stating that he and one of his staff members were in GONZALEZ RESTAURANT "when the police arrived related to a noise nuisance complaint" by STONE, and that "there was no excessive noise at the time". Alderman Moreno's Declaration stated in pertinent part as follows:

> "On one other occasion I was with a staff member at EDGE when the police arrived in response to an alleged noise complaint". There was no excessive noise at the time".

94.     On March 29, 2011, STONE filed and/or documented a false noise complaint regarding an event that was held at GONZALEZ RESTAURANT for an Organization called Traffikfree.org, which focuses on the prevention of human trafficking and which includes the prevention of sexual exploitation of women and children. STONE's text message which was sent to GONZALEZ on March 30, 2011 at approximately 8:53 a.m. stated in pertinent part as follows:

> "***last night was unacceptable and was logged a night of disturbance***"

However, the organizers of the event required a quiet environment and the volume of the music never exceeded background level noise. There were various guest speakers at the event, including a former FBI Agent. Furthermore, the organizers where present from the time the Restaurant opened its doors to the time the Restaurant closed. Pursuant to these factual circumstances, Laura Ng, the Executive Director of the organization wrote a letter testifying to the fact that at no time did the music at GONZALEZ RESTAURANT ever exceed the level of ambient background level noise. That letter by Ms. Ng stated in pertinent part as follows:

> "At no time from open to close, was there any loud music or any music that exceeded background level music. This was a requirement that we specified prior to booking the event as we specifically stated that this would be a quiet networking event at which we would have guest speakers, and members would need to effectively communicate related to very sensitive issues regarding sex trafficking crimes"

95.     On December 21, 2010, Committeeman Jessie R. Juarez from the First Ward, (whom lived a couple of blocks away from GONZALEZ RESTAURANT and frequently

patronized the establishment) provided a formal signed letter which contradicted all of the material issues and allegations related to a noise nuisance, which were alleged by STONE, BALL and CIRAR in their Verified Complaint against GONZALEZ RESTAURANT for a supposed noise nuisance. The letter from Committeeman Jessie R. Juarez specifically states in pertinent part as follows:

> "In addition, since EDGE opened approximately two years ago, EDGE has never violated any noise nuisance laws or ordinances"

Moreover, GONZALEZ RESTAURANT was never issued any noise violation citation.

**(d)    Facts demonstrating the CIVIL CONSPIRACIES between STONE, BALL, CIRAR, LEYDON and BPNA, during the first fraudulent lawsuit against GONZALEZ**

96.    Upon information and belief, is was discovered that prior to October 2005, LEYDON a white Caucasian male and a long-time friend of STONE, directed STONE to buy Residential Unit 2. Thereafter, STONE and LEYDON secretly entered into a conspiracy with BPNA and others to defraud GONZALEZ of GONZALEZ COMMERCIAL CONDO, GONZALEZ RESTAURANT, and GONZALEZ RESIDENTIAL CONDO. This was initially demonstrated by the following facts:

   a.    During the litigation in case number 2009-CH-10944 (STONE v. GONZALEZ), STONE consistently stated to GONZALEZ and his Counsel that he was working with Thomas Horn from Banco Popular, AKA Popular Community Bank, to buy GONZALEZ's Restaurant Unit right from under him. On at least one occasion, STONE waived a supposed purchase contract for GONZALEZ COMMERCIAL CONDO in his hand, and attempted to hand it to GONZALEZ and his Counsel, claiming it was from HORN, AVP of Commercial Lending for BPNA and could do whatever he wanted, and that he was going to forcibly take GONZALEZ COMMERCIAL CONDO from GONZALEZ.

   b.    Significantly, on June 30, 2010, Counsel for BPNA, C&T LAW, conducted a telephone conference call regarding the purchase of GONZALEZ RESTAURANT, (upon information and belief with LEYDON and/or STONE), as they documented a line item in their petition of Attorney's fees stating

> "telephone conference regarding purchase of club and status of foreclosure".

c. At the relevant time, STONE began to verbally communicate to GONZALEZ that he was working with LEYDON and meeting with PCB BANK, and that it was only a matter of time before they forcibly deprived GONZALEZ of GONZALEZ COMMERCIAL CONDO, and GONZALEZ RESIDENTIAL CONDO. STONE further stated to GONZALEZ that LEYDON and STONE were long-time friends, that LEYDON hated GONZALEZ, and that LEYDON had directed STONE to buy STONE RESIDENTIAL CONDO from the seller in 2005.

d. In late 2010, (exact date and time to be confirmed upon proper discovery) LEYDON called GONZALEZ and stated to GONZALEZ that he received a call from STONE at which point STONE stated that he was in the process of damaging GONZALEZ and working with PCB BANK to buy GONZALEZ COMMERCIAL CONDO. LEYDON further stated that STONE asked LEYDON to become an investor.

e. On September 15, 2010, GONZALEZ sent LEYDON a text message requesting LEYDON to confirm the date and content in writing via text of the aforesaid call from STONE and the specific details related to the aforementioned conversation between LEYDON and GONZALEZ. LEYDON then reluctantly sent GONZALEZ a text message confirming that STONE had called him, by stating in pertinent part "Stas, bob mentioned buying your place". However, LEYDON then refused to confirm in writing any of the other aforementioned details requested by GONZALEZ.

f. On September 15, 2010, Randal B. Gold, Counsel for STONE, BALL and CIRAR, sent GONZALEZ Counsel an email stating the following:

> "As Mr. STONE was explaining to Dave yesterday after court, we know that Mr. GONZALEZ was foreclosed in regards to his retail establishment. His property is now owned by Banco Popular and it is going to be 30-120 days before he is evicted."

g. As fully detailed later, on September 16, 2010, STONE and BALL accompanied PCB BANK to Court, and together fraudulently testified that GONZALEZ owed a $17,000.00 water bill. Significantly, as also fully detailed later, on September 16, 2010, PCB BANK, STONE, BALL, CIRAR and DPT CONDO set coinciding court dates on three separate lawsuits against GONZALEZ, further demonstrating their concerted plan of attack.

## (5) RELENTLESS ATTACK AGAINST GONZALEZ AND HIS BUSINESSES UTILIZING DOG FECES

97.    Over a period of approximately three years beginning on or about December of

2008, STONE and/or the co-conspirators consistently and relentlessly dumped dog feces and a

liquid (consisting of urine and dog feces) at the entrance of GONZALEZ RESTAURANT to deter

customers from patronizing the business and also prevent the business from profiting. The same items were also dumped at the entrance of GONZALEZ's rear garage entrance space. Many of the instances were documented via log, videotape and/or pictures. For example:

a. on September 11, 2010 at approximately 11:00 a.m., Robert STONE and/or the co-conspirators, dumped or caused to be dumped a tremendous amount of liquid mixed with feces and urine into GONZALEZ RESTAURANT during business hours, directly from STONES RESIDENTIAL CONDO, which was videotaped.

b. On or about January 6, 2011, January 13, 2011, April 11, 2011, June 9, 2011, October 7, 2011, the CO-CONSPIRATOR(S) consistently dumped feces in the area of the front, side and rear entrances of the GONZALEZ RESTAURANT to negatively affect the business by creating a constant foul order and barrier, thereby preventing customers from patronizing the establishment. Said dumping of feces, many times purposefully included STONE's mark, such as mail containing his name and address. Many of those instances were also documented via photographs.

## (6) STONE, BALL and CIRAR repeatedly Chain Locked and Blocked the Rear Entrance of GONZALEZ RESTAURANT to prevent it from operating and profiting

98. Over a period of approximately three years, beginning on or about December of 2008, the CO-CONSPIRATORS consistently and repeatedly pad-locked GONZALEZ RESTAURANT back fence or blocked the rear exit and the emergency exit to GONZALEZ RESTAURANT with large commercial garbage containers. They then smeared the handles of the garbage containers with dog feces, in an effort to prevent the business from operating in that the rear exit functioned not only as an emergency exit for the establishment, but also served as the main way to bring in food, beverages and supplies into the business and to remove garbage from the premises. For example:

a. On or about April 20, 2010, the STONE and BALL chain locked the rear exit door to GONZALEZ COMMERCIAL CONDO without providing any key to GONZALEZ or the Business. Due to the fact that STONE and BALL refused to remove the chains, GONZALEZ filed a Chicago Police Report on April 25, 2010. In addition, on May 17, 2010, GONZALEZ raised the issue in court in front of

Judge Rochford, at which point Judge Rochford ordered STONE and BALL to remove the chains and open the rear gate door.

b. On various occasions, the CO-CONSPIRATORS blocked the rear entrance to GONZALEZ RESTAURANT with large commercial garbage containers and smeared the handles of the garbage containers with dog feces to prevent the garbage cans from being moved. Many of the instances were documented via logs, photographs and videotape. In addition, much of the garbage intentionally contained STONE's belongings including address and mailing labels to his home and business.

## (7) **STONE, BALL and CIRAR Maliciously File False Police Reports against GONZALEZ RESTAURANT**

99.     Over a period of approximately three years, beginning on or about December of 2008, the CO-CONSPIRATORS repeatedly filed or caused to be filed several false Chicago Police reports and/or calls, falsely alleging a noise nuisance at GONZALEZ RESTAURANT, which caused a constant Police presence at GONZALEZ RESTAURANT, as each time they called, the Police were required to conduct an investigation. The intent was to label GONZALEZ RESTAURANT as a "troubled business" in an effort to dissuade potential customers from patronizing GONZALEZ RESTAURANT and/or cause customers to leave GONZALEZ RESTAURANT. Although the Chicago Police conducted several noise nuisance investigations, no noise nuisance was ever discovered. As a result, GONZALEZ BUSINESS was never issued any citation related to any alleged noise nuisances.

## (8) **STONE and BALL Maliciously defamed GONZALEZ and his business and unlawfully interfered with GONZALEZ's business via Social Media and in person**

100.     Over a period of approximately three years, beginning on or about December of 2008, STONE, BALL and CIRAR maliciously defamed GONZALEZ and his businesses, in person, via social media, by visiting the local businesses, etc., in order to spread the defamation. In addition, the following occurred:

39

a. On June 1, 2011 GONZALEZ held a private event hosted by an African American organizer named Mobolaji Akintunde at GONZALEZ's RESTAURANT. Between the hours of 8:00 p.m. and 9:00 p.m., Robert STONE caused two disturbances intended to unlawfully injure GONZALEZ RESTAURANT by disrupting the private event. Both times, STONE approached the African American employees working at the door and then yelled vulgar words stating that ANASTACIO GONZALEZ was a "fucking asshole" and a "piece of shit" in addition to many other derogatory terms. In direct response to this disturbance by STONE. On June 14, 2011, Mr. Akintunde, provided a signed letter to GONZALEZ, stating the following, in pertinent part:

> Unfortunately, between the hours of 8:00pm and 9:00pm we experienced two major disturbances of the peace at the business location by an individual named Robert STONE. Both times he approached and swore out loud at the employees at the door, whom felt threatened and harassed. In addition, he was very vulgar towards the employees and stated to the employees that the owner, ANASTACIO, was a "fucking asshole" and a "piece of shit" in addition to many other derogatory terms.

b. Various Starbucks employees, from the Starbucks located across the street from GONZALEZ RESTAURANT, directly and indirectly made GONZALEZ, aware that STONE and BALL where defaming GONZALEZ and GONZALEZ RESTAURANT, directly to Starbucks employees and their patrons. The Starbucks employees further confirmed that STONE and/or BALL took the same approach with other businesses and their respective patrons on Division Street. On January 24, 2012, one of the aforementioned Starbucks Employees, provided a signed and notarized affidavit to GONZALEZ testifying to some of the aforementioned facts.

## C. UNLAWFUL/OVERT ACTS COMMITTED AND/OR SPEARHEADED BY DPT CONDO IN COLLUSION WITH OTHER CO-CONSPIRATORS

101.    STONE, BALL and CIRAR (in collusion with BPNA, and C&T LAW) conspired to utilize the Division Point Terraces Condominium Association (DPT CONDO) and their positions as officers and a majority of the Directors of DPT CONDO (BALL as President and STONE as Secretary) to continue to irreparably damage GONZALEZ, GONZALEZ COMMERCIAL CONDO and GONZALEZ BUSINESS, and in the course of taking these actions, committed various unlawful acts against GONZALEZ and his businesses, and materially breached

the fiduciary duties which they owed to GONZALEZ and his businesses as officers and directors of the DPT CONDO. As a result, DPT CONDO subsequently defrauded GONZALEZ of his residential property and irreparably damaged GONZALEZ'S businesses as follows:

**(1)   Malicious Financial Damage**

102.   In 2006, GONZALEZ, STONE, BALL and CIRAR agreed not to form a Condominium Association, but rather to split all common bills.

103.   Beginning on or about April 2006, STONE, BALL and CIRAR began to intentionally damage GONZALEZ from a financial standpoint, by inducing GONZALEZ to pay for common building maintenance bills, common building repair and improvement bills, and common condo association bills, such as Comed Electric Bills and City of Chicago Water Bills, with no intention to fully reimburse GONZALEZ. They did this by falsely promising that they were going to fully reimburse GONZALEZ, but refusing to ever do so. This was a consistent pattern, demonstrating one of the tactics utilized by STONE, BALL, CIRAR and the DPT CONDO to maliciously damage GONZALEZ'S financial resources.

104.   Case in point, on July 26, 2006, GONZALEZ sent STONE an email asking for reimbursements from STONE for bills paid by GONZALEZ. In response, on July 27, 2006, at 11:32 a.m. STONE replied to GONZALEZ by email, stating in pertinent part as follows:

> "ANASTACIO, I will put a check for $440 downstairs – and I will pay you the balance next week rs".

However, at no point in time did STONE ever reimburse GONZALEZ for any of the common expenses paid for by GONZALEZ. As a result of repeated similar tactics by STONE and BALL, GONZALEZ incurred numerous expenses totaling thousands of dollars for which GONZALEZ was never reimbursed.

41

**(2)** **STONE and BALL form the DPT CONDO with the malicious intent to Damage GONZALEZ and GONZALEZ BUSINESS**

105.    On March 22, 2010, BALL and STONE formed the DPT CONDO and on March

26, 2010, the DPT CONDO officially obtained an FEIN number. BALL and STONE respectively

voted themselves as DPT CONDO PRESIDENT, and DPT CONDO SECRETARY.

106.    The intent of forming the DPT CONDO was to further maliciously damage

GONZALEZ, GONZALEZ COMMERCIAL CONDO, and GONZALEZ BUSINESS as clearly

demonstrated in part by the following text messages which were sent to GONZALEZ by STONE.

> [STONE]:   "I tried to be civilized about this matter and u refuse to accommodate dave and myself – so now we are going to use the powers of the condo board – dave is president fyi." [Sent by STONE to GONZALEZ on December 5, 2009, at 9:45am]

> [GONZA]:   On December 5, 2009, GONZALEZ sent a text message to STONE stating: "what time is the condo meeting? "You need my approval and input on anything related to the building."

> [STONE]:   In response, on December 5, 2009 STONE sent GONZALEZ a text message stating the following: "No we don't !!! Ur out voted and this is just the start *** its going to get ugly"

> [STONE]:   "*** it's a two thirds vote we can do whatever we want***" [Sent by STONE to GONZALEZ on December 7, 2009, 8:16 pm]

> [STONE]:   "Getting a patio license is a privilege_do u really thnk ur gong to get one nxt year" [Sent by STONE to GONZALE on December 5, 2009, 9:26 pm]

> [STONE]:   "Also dave is the condo president so I will answer to him – what ever he says goes-I can live with that" [Sent by STONE to GONZALEZ on September 24, 2009, 8:55 am]

**(3)** **DPT CONDO maliciously files a fraudulent Lawsuit against GONZALEZ**

107.    On June 3, 2010, the DPT CONDO filed a fraudulent verified complaint against

GONZALEZ, through its Attorney, Brotschul Potts, which falsely alleged that GONZALEZ owed

the DPT CONDO $4300.00 plus attorney's fees of $1512.50 totaling $6401.04.

108.    Significantly, DPT CONDO created a fraudulent "30 Day Notice and Demand Letter" pursuant to the aforesaid $6401.04 charges, and mailed it to GONZALEZ after the Complaint was filed. Although the aforesaid Complaint by DPT CONDO against GONZALEZ was filed on June 3, 2010, the "30 Day Notice and Demand Letter" associated with the Complaint, was dated June 4, 2010, and mailed after the Complaint was filed on or about June 4, 2010. This is also clearly demonstrated by the fact that the "track and confirm search results" from the United States Postal Service, states "Notice left, June 11, 2010, 4:52pm, Chicago, IL, 60622.

109.    Furthermore, that "30 Day Notice and Demand Letter", which was "verified" by Attorney Maureen E. Cullinan on behalf of the DPT CONDO was fraudulent in that the letter asserted that GONZALEZ owed the DPT CONDO $6401.04 as of April 2, 2010. However, the DPT CONDO was not formed until, March 22, 2010 and obtained its FEIN Number on March 26, 2010. Therefore, the DPT CONDO was only in existence approximately five (5) business days prior to DPT CONDO filing its Complaint against GONZALEZ. The $6401.04 allegedly owed by GONZALEZ to the DPT CONDO, were for a time period prior to the formation of the DPT CONDO. Therefore, the DPT CONDO did not exist during the time the alleged charges were incurred by GONZALEZ.

110.    On December 30, 2010, GONZALEZ filed an appearance and the DPT CONDO case against GONZALEZ was set on status call for February 14, 2011 at which point GONZALEZ was prepared to present all of his receipts demonstrating that he did not owe the alleged money to the DPT CONDO and that in fact, the DPT CONDO, STONE, BALL and CIRAR owed monies to GONZALEZ.

111.    On January 6, 2011, BALL; (1) amended the Complaint "Pro-se" to falsely allege that GONZALEZ now owed the DPT CONDO $9,491.54; (2) added Count II, demanding

43

"Possession Utilizing Forcible Entry and Detainer Act"; and (3) filed a motion which was set to be heard on January 18, 2011, requesting to transfer the case to "Forcible Call", which would prevent GONZALEZ from presenting the aforementioned proof demonstrating that the case was fraudulent.

112.    On January 19, 2011, the DPT CONDO Law firm, Brotschul Potts, withdrew from the case. The February 14, 2011 court date was then struck from the call and reset to March 9, 2011.

113.    On February 1, 2011, the Law Firm of Kovitz Shifrin Nezbit, filed an appearance on behalf of DPT CONDO in the present case.

114.    On February 14, 2011, the DPT CONDO through its Attorney filed a motion for leave to amend the Complaint and to transfer the present case to Forcible Call, which was set for presentation on the previously scheduled court date of March 9, 2011.

115.    On March 9, 2011, the present case was transferred to "Forcible Call", in an apparent bad faith attempt to prevent GONZALEZ from presenting evidence demonstrating the fraudulent nature of the present Complaint, as in Forcible Call Proceedings, it was not "germane" for GONZALEZ to present any evidence.

116.    On June 28, 2011, Kovitz Shifrin Nezbit, filed a second amended Complaint on behalf of the DPT CONDO now falsely alleging that GONZALEZ owed DPT CONDO $11,735.00, and continued its demand for Possession via the Forcible Entry and Detainer Act.

117.    Significantly, DPT CONDO's new Counsel also referred to and relied on the aforesaid fraudulent "30 Day Notice and Demand" letter which was dated and mailed after the DPT CONDO Complaint was filed against GONZALEZ.

118.   The DPT CONDO Lawsuit against GONZALEZ was presented for trial on September 21, 2011.

119.   Significantly, prior to the commencement of the trial, DPT CONDO requested through its Counsel, that GONZALEZ drop pending criminal charges filed by GONZALEZ against STONE (pursuant to repeated threats by STONE against GONZALEZ and a subsequent arrest) in exchange for dismissing and/or reducing the alleged amount owed by GONZALEZ to DPT CONDO. However, GONZALEZ refused those demands and the trial proceeded.

120.   During trial, on September 21, 2011, GONZALEZ asserted that he did not owe the DPT CONDO said monies and attempted to present evidence. However, GONZALEZ was prevented from properly presenting said evidence, due to the fact that in forcible detainer court, it is not germane to present such evidence.

121.   Furthermore, the DPT CONDO did not provide proper evidence of said monies supposedly owed by GONZALEZ, Instead, BALL as the DPT CONDO PRESIDENT opted to swear under oath that GONZALEZ owed the alleged amount to the DPT CONDO.

122.   As a result of the aforesaid perjured and false testimony by BALL as the DPT CONDO PRESIDENT, the DPT CONDO obtained a judgment of $5,650.00 against GONZALEZ, and an order for possession of GONZALEZ RESIDENTIAL UNIT.

123.   Significantly, the original Complaint and all subsequent Amended Complaints, all of which were verified, alleged different amounts owed by GONZALEZ to the DPT CONDO. In addition, the judgment amount of $5650.00 which was fraudulently obtained against GONZALEZ by DPT CONDO on September 21, 2011 was also drastically different than all of the Complaints, but more significantly, over Fifty (50) percent different than the last Amended Complaint which claimed that GONZALEZ owed DPT CONDO $11,735.00.

45

124.    On December 15, 2011, GONZALEZ was then evicted from GONZALEZ
RESIDENTIAL CONDOMINIUM by DPT CONDO. Although GONZALEZ was the owner of
the ROOFTOP DECK PARCEL, which was separate and apart from the DPT CONDO, the DPT
CONDO fraudulently asserted that it owned GONZALEZ ROOFTOP PARCEL, and on December
15, 2011, DPT CONDO also evicted and defrauded GONZALEZ of GONZALEZ ROOFTOP
PARCEL.

**(4)    DPT CONDO maliciously files a second fraudulent Lawsuit against GONZALEZ
COMERCIAL CONDO**

125.    On June 1, 2010, the DPT CONDO through their Attorney, Maureen E. Cullinan
from Brotschul Potts LLC, also filed a second fraudulent lawsuit against GONZALEZ
COMMERCIAL CONDO, falsely alleging that GONZALEZ COMMERCIAL CONDO owed
DPT CONDO $2750.00 in insurance costs for a period spanning from September 2006 to April
2010. Significantly, the Complaint was verified by BALL as the DPT CONDO PRESIDENT.

126.    The aforesaid lawsuit was obviously fraudulent for various reasons, including but
not limited to the following:

a.    DPT CONDO never sent GONZALEZ COMMERCIAL CONDO any "30 Day
Notice and Demand Letter" for the sum of $2750.00 allegedly owed by
GONZALEZ to DPT CONDO.

b.    GONZALEZ did not purchase GONZALEZ COMMERCIAL CONDO until
January 25, 2007. Therefore, it could not have incurred insurance payments for the
time period from September 2006 to January 25, 2007, as alleged in the DPT
CONDO Complaint, which is approximately seven months.

c.    On January 19, 2007, GONZALEZ COMMERCIAL CONDO obtained the
required insurance for a time period in excess of 27 months. This is evidenced by
the Certificate of Insurance from Heil & Heil Insurance Agency/Safeco (the same
insurance company utilized by DPT CONDO) which was provided to BPNA at the
closing of GONZALEZ COMMERCIAL CONDO.

d.    DPT CONDO did not exist during the aforesaid time period in which DPT CONDO
alleges GONZALEZ incurred the alleged $2750.00 in charges allegedly owed to
DPT CONDO by GONZALEZ.

46

**(a)** **DPT CONDO, in direct collusion with BPNA, fraudulently obtains an Ex-parte Default Judgment against GONZALEZ by maliciously setting coinciding court dates on three separate cases**

127.    The DPT CONDO filed a Motion for Default Judgment against GONZALEZ COMMERCIAL CONDO and initially scheduled that motion for presentation on September 14, 2010.

128.    DPT CONDO (in direct collusion with BPNA, STONE, BALL and CIRAR) maliciously scheduled the presentation of their Motion for Default Judgment against GONZALEZ COMMERCIAL CONDO to coincide with two separate Court dates in two other separate fraudulent lawsuits against GONZALEZ and GONZALEZ BUSINESS (of which STONE, BALL, CIRAR and BPNA were also parties to) maliciously requiring GONZALEZ to appear in three separate Courtrooms on the same date and time.

129.    Consequently, with GONZALEZ not attending, on September 14, 2010, DPT CONDO obtained an Ex-Parte Default Judgment against GONZALEZ COMMERCIAL CONDO for $2750.00.

130.    Significantly, on November 12, 2010, the aforesaid suit by DPT CONDO against GONZALEZ COMMERCIAL CONDO was dismissed, and the Default Judgment was vacated.

**(5)** **Criminal Damage to GONZALEZ RESIDENTIAL CONDO Stairways by STONE in collusion with BALL**

131.    On various occasions, STONE disturbingly criminally damaged GONZALEZ RESIDENTIAL CONDO stairways, in an effort to terrorize and defame GONZALEZ. For example, on February 2, 2010, STONE damaged the front and rear hallways of the SUBJECT BUILDING (as depicted below) by spray painting derogatory terms such as "stas ur n ass", "u ass", and "scumbag stas" in large blood red letters from floor to ceiling, specifically directed at GONZALEZ ("stas" is GONZALEZ nickname). GONZALEZ immediately filed a Chicago

47

Police report related to the aforesaid February 2, 2010 incident. Pursuant in part to that incident, Judge Mary K. Rochford, issued a Court Order, instructing STONE and BALL to cease and desist contacting GONZALEZ, and damaging the SUBJECT BUILDING. However, the pattern relentlessly continued.

**(6)** **Assault and Battery against GONZALEZ during unlawful breaking and entry of GONZALEZ ROOFTOP PARCEL coordinated by STONE and BALL**

132.    On March 6, 2011, STONE, BALL and an unknown associate, unlawfully broke into and trespassed onto GONZALEZ ROOFTOP PARCEL, by drilling out the deadbolt lock to the access door and forcing it to open. When GONZALEZ observed the incident, as they were drilling out the deadbolt lock, GONZALEZ made STONE, BALL and the unidentified person aware that they were unlawfully breaking and entering onto GONZALEZ ROOFTOP PARCEL and demanded that they stop. Nevertheless, STONE and BALL directed the unidentified person to continue drilling-out the deadbolt lock. As GONZALEZ was videotaping the incident with his phone, as the CO-CONSPIRATORS were breaking in, the unidentified person who was drilling out the lock, physically attacked and verbally assaulted GONZALEZ while holding the drill in his hand. After STONE and BALL trespassed onto GONZALEZ ROOFTOP PARCEL, STONE then yelled at GONZALEZ "Go back into your fucking habitrail".

133.    On March 6, 2011, shortly after the incident, GONZALEZ made his Attorney aware of the incident, then filed a Chicago Police report.

134.    Significantly, on March 6, 2011, GONZALEZ was then treated at St. Mary Elizabeth Hospital for the injuries he sustained, during the aforesaid physical attack.

135.    Subsequently, GONZALEZ's attorney demanded, of BALL and STONE's attorney, the identity of the person STONE and BALL hired to drill out the deadbolt lock who had

attacked GONZALEZ. Upon information and belief, BALL and STONE's attorney refused this demand and/or stated that they did not know the identity of the person.

**(7)    Perjury by STONE and BALL, as attested to by 1st Ward Alderman Joe Moreno via a declaration, conducted by MALDEF Attorney Jorge Sanchez**

136.    Due in pertinent part, but not limited to: (1) the aforesaid February 2, 2010 damage to GONZALEZ REDIDENTIAL CONDO property by STONE; (2) the aforesaid unlawful trespass into GONZALEZ ROOFTOP PARCEL by STONE and BALL; (3) assault and battery against GONZALEZ coordinated by STONE and BALL; and (3) relentless repeated threats by STONE against GONZALEZ; on August 26, 2011 at 10:30 a.m., GONZALEZ appeared in Courtroom 202/72 located at 555 W. Harrison, requesting a restraining order against STONE, citing in pertinent part the aforesaid incidents.

137.    On August 26, 2011, BALL appeared in Court in defense of STONE, and committed perjury by stating that STONE did not commit the aforesaid February 2, 2010 damage to GONZALEZ RESIDENTIAL CONDO front and rear stairways, although it was clear for various reasons, that BALL had direct knowledge that STONE committed the damage. In addition, when asked if BALL had previously met with Joe Moreno, the Alderman of Chicago's 1st Ward, and whether BALL had represented to Joe Moreno that STONE did indeed commit the aforesaid damage, BALL stated "No".

138.    However, on September 21, 2011 Alderman Moreno subsequently set forth a Declaration, which was conducted by the Mexican American Legal Defense and Education Fund (MALDEF) Attorney, Jorge Sanchez, in which Joe Moreno specifically stated that BALL had discussed the aforesaid February 2, 2010 damage to GONZALEZ REDIDENTIAL CONDO property in detail and at length with Alderman Moreno, and during that discussion asserted that

STONE had committed that damage. This statement by Joe Moreno directly contradicted BALL's testimony under oath in Court on August 26, 2011.

**(8)     Discrimination and Interference with right to fair housing (Housing Discrimination)**

139.    In violation of the Declaration and By-Laws, the DPT CONDO did not service or provide any maintenance for the common element areas existing on GONZALEZ's fourth floor front and rear stairways, thereby causing a severely dangerous environment for GONZALEZ. For example, the DPT CONDO refused to change the hallway lights, paint, or clean the front and rear stairways on GONZALEZ floor causing a dangerous situation. GONZALEZ documented these facts via photographs and videotaped footage spanning a period time as indicated by newspapers and parking meters outside the premises. In addition, GONZALEZ was further discriminated, attacked and threatened through various other means, and he did not have equal opportunity to fair housing, as will be further demonstrated after proper discovery.

**(9)     Threatening Text Message by STONE and Subsequent Arrest of STONE**

140.    On June 4, 2011, STONE was angry due to the fact that GONZALEZ hosted an event in GONZALEZ RESTAURANT of which a majority of the attendees were African American. Thereafter, STONE sent GONZLEZ a string of disturbing text messages culminating with a threatening text message on June 4, 2011 at 1:42 am pursuant to which STONE threatened GONZALEZ, as follows: "You're a fucking deadbeat. I better not see you around".

141.    On June 4, 2011, GONZALEZ filed a police report at which point STONE admitted to the Chicago Police that he had sent the aforementioned threatening text message to GONZALEZ. As a result of that text message, and repeated subsequent threatening text messages, (also in violation of a civil no-contact order), on July 28, 2011, STONE was arrested

**D.     UNLAWFUL/OVERT ACTS BY BPNA/PCB BANK AND C&T LAW in direct Collusion with STONE, BALL CIRAR and LEYDON**

**(1)**     <u>Wrongful and Fraudulent Foreclosure</u>

142.    After the aforesaid unlawful conspiracy accomplished its initial purpose of maliciously forcing GONZALEZ COMMERCIAL CONDO to fall behind on its mortgage payment, on January 20, 2010, BPNA, through its Counsel, C&T LAW, filed a fraudulent Complaint to Foreclose on GONZALEZ COMMERCIAL CONDO in the Circuit Court of Cook County, naming GONZALEZ and GONZALEZ COMMERCIAL CONDO as the primary party Defendants. The intent was to: (1) initiate a wrongful foreclosure; (2) force a sale of GONALEZ COMMERCIAL CONDO at public auction; and (3) effectuate a bid-rigging scheme.

143.    In furtherance of that scheme, BPNA in direct collusion with C&T LAW, intentionally made the following false assertions and omissions of material facts in its Complaint to Foreclose on GONZALEZ COMMERCIAL CONDO, and also in all supporting documentation and notices, including the Summons, Notices of Service by Publication as to GONZALEZ, and Notice of Service to the Secretary of State as to GONZALEZ COMMERCIAL CONDO:

       a.   BPNA intentionally utilized an incorrect PIN Number of 17-06-234-044-0000 (hereinafter sometimes referred to as "044"). The true and correct PIN Number for the GONZALEZ COMMERCIAL CONDO is 17-06-234-071-0000 (hereinafter sometimes referred to as "071").

       b.   BPNA intentionally utilized an incorrect Legal Description of GONZALEZ COMMERCIAL CONDO;

       c.   BPNA failed to provide a Unit Number (Unit1) to identify GONZALEZ COMMERCIAL CONDO;

       d.   BPNA fraudulently excluded the Commercial Parking from GONZALEZ COMMERCIAL CONDO Legal Description;

144.    These aforesaid false assertions of fact and omissions of material facts made by C&T LAW on behalf of BPNA where <u>intentional and fraudulent</u>. Pursuant to the following facts, it is indisputably evident that prior to filing their Complaint to foreclose on GONZALEZ

COMMERCIAL CONDO, both BPNA and C&T LAW knew the correct information which they

misrepresented and materially omitted:

> a. On December 9, 2008, William D. Bolsen, Vice President of Commercial Lending for BPNA, sent an email to GONZALEZ which acknowledged that PIN Number 17-06-234-071-0000 was the correct PIN Number for GONZALEZ COMMERCIAL CONDO. Mr. Bolsen also acknowledged in that email that BPNA was utilizing the wrong legal description. Mr. Bolsen specifically stated:
>
>> "I noticed in the file a note that indicates we need the legal description that is associated with the new PIN. Our title policy has the old PIN listed."
>
> b. On December 16, 2009, Acquest Title Services, Inc. sent a title commitment letter to BPNA and C&T LAW, at their request, which set forth that the properties PIN Number was 17-06-234-071-0000 for the tax year 2006. The aforesaid document states in pertinent part as follows:
>
>> "***17-06-234-071 (New for 2006 tax year) Volume: 583"
>
> c. Significantly, on January 20, 2010, the date BPNA'S Attorneys filed the present Mortgage Foreclosure suit, BPNA recorded a "Lis Pendens" for that suit with the Cook County Recorder of Deeds. That Lis Pendens was recorded against the correct PIN number of "17-06-234-071-0000".

## (2)   Improper Notice by Publication with NO due diligence

145.   As further evidence of BPNA's fraudulent intent, it must be pointed out that, on

January 21, 2010, only one day after it filed its Complaint to Foreclose on GONZALEZ

COMMERCIAL CONDO, BPNA through its Attorney, C&T LAW, filed a fraudulent Affidavit

for Service by Publication against GONZALEZ, which was made in the third person, and which

stated "on oath" that on supposed "due inquiry" the Defendants "cannot be found so that process

cannot be served". The required "due inquiry" cannot be conducted in one day. The aforesaid

affidavit fraudulently states in pertinent part as follows:

> "Terence G. Tiu, on oath states as to Defendants, Unknown Owners and Non-Record Claimants as follows:
>
> 1.   The Defendant, Unknown Owners, on due inquiry cannot be found so that process cannot be served upon said Defendants and Unknown Owner's

place of residence upon diligent inquiry cannot be ascertained and their last known place of residence is unknown.

2. The existence, names or present or last known places of residence of Defendants, Non-record Claimants, on information and belief, are unknown to Plaintiff so that service of process cannot be served upon said Defendants.

3. Affiant further states that this affidavit is made pursuant to Section 2-206 of the Illinois Code of Civil Procedure (735 ILCS 5/2-206) and Section 15-1502 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1502)."

146.    On January 22, 2010, only two days after it filed its Complaint to Foreclose on

GONZALEZ COMMERCIAL CONDO, C&T LAW filed a fraudulent Affidavit of Compliance

for Service on the Secretary of State against GONZALEZ COMMERCIAL CONDO, and stated

under penalties of perjury that GONZALEZ, "cannot with reasonable diligence be found" as the

"Basis for Service on the Secretary of State". Two days cannot and does not constitute "reasonable

diligence". The affidavit falsely states in pertinent part as follows:

"a. The Limited Liability Company's registered agent cannot with reasonable diligence be found at the registered office in Illinois."

## (3)    Entry of a Fraudulent: (a) Default Judgement; and (2) Default Judgment of Foreclosure and Sale

147.    On May 11, 2010, GONZALEZ filed an appearance and a tentative Answer in

coordination with the Chancery Division Advice Desk Attorney located at the Daley Center.

148.    On May 20, 2010, C&T LAW specifically inserted a line item in their supplemental

petition for Attorney's fees which stated: "Review Defendant's answer; consider responsive

pleading.", thereby clearly demonstrating that BPNA and C&T LAW were aware that an Answer

had been filed.

149.    Nevertheless, on July 9, 2010, BPNA filed a "Motion for Default and Entry of

Judgment of Foreclosure and Sale", which was scheduled for presentation on July 21, 2010. Even

though GONZALEZ had filed an Answer and BPNA and C&T LAW where indisputably aware, as fully detailed and demonstrated above, said Motion fraudulently represented that although Momo and ANASTACIOGONZALEZ had been served, "none have answered or otherwise responded" and that, supposedly because of this, BPNA was entitled to an order of Default and Default Judgment of Foreclosure and Sale. That Motion specifically states in pertinent part as follows:

> "5. Notwithstanding the fact that defendants Momo Enterprises, LLC, a dissolved limited liability company, ANASTACIO GONZALEZ, City of Chicago, (collectively, the "Defendants") were served with process, none have answered or otherwise responded to Banco's Complaint and, thus, Banco is entitled to an order of default against the Defendants."

150. On July 15, 2010, Terence G. Tiu, counsel for BPNA also filed a "Certificate in Support of the Motion for Default" testifying as to the veracity of the aforementioned facts, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure.

151. Significantly, in support of BPNA's "Motion for Default and Entry of Judgment of Foreclosure and Sale", Counsel for BPNA submitted a Sworn Affidavit by Tomas Horn, Assistant Vice President/Loan Workout Officer of Banco Popular North America, pursuant to Section 15-1506(a) of the Illinois Mortgage Foreclosure Act. Although BPNA alleges it had in its possession a Promissory Note for $680,000.00 dated January 27, 2007. Said Affidavit states that the August 1, 2006 Promissory Note is for $13,287,000.00. The Affidavit by Thomas Horn states in pertinent part as follows:

> "16. I have reviewed the Bank's books and records and I am familiar with the loan transaction from the Bank to Defendant Momo, including without limitation that certain Promissory Note dated August 1, 2006 in the principal amount of $13,287,000.00 (the "Note") from Momo.***"

152. In view of these circumstances, on July 21, 2010, BPNA in collusion with C&T LAW, fraudulently obtained an Ex-Parte Order of Default and a Default Judgment of Foreclosure

and Sale in the amount of $680,000.00 against GONZALEZ COMMERCIAL CONDO, which

Default Judgment was based on an incorrect and non-existent PIN Number (17-06-234-044-0000),

an incorrect Legal Description, and a missing unit number.

153.    Based on the aforesaid fraudulent Order of Default and Default Judgment of

Foreclosure and Sale obtained by BPNA, the Circuit Court then scheduled the Judicial Sale of

GONZALEZ COMMERCIAL CONDO at public auction for August 30, 2010.

**(4)    Unlawful Bid-rigging Scheme by BPNA and C&T LAWin anticipation of the Court Ordered Judicial Sale, in direct violation of Sherman Act**

154.    After forcing a sale of GONZALEZ COMMERCIAL CONDO at public auction,

BPNA and C&T LAW then effectuated a bid-rigging scheme in direct violation of the Sherman

Act. In furtherance of that scheme BPNA and C&T LAW : (1) suppressed competitive bidding;

(2) artificially suppressed the price of GONZALEZ COMMERCIAL CONDO; (3) fraudulently

purchased GONZALEZ COMMERCIAL CONDO at a non-competitive price and at a deep

discount at the Court ordered public auction; and (4) transferred GONZALEZ COMMERCIAL

CONDO to LEYDON, one of the CO-CONSPIRATORS, at or below that same non-competitive

purchase price, in direct violation of the Uniform Fraudulent Transfer Act as demonstrated by the

following facts:

**(a)    Unlawful Suppression of Competitive Bidding**

155.    BPNA in direct collusion with C&T LAW, intentionally made the following false

assertions and omissions of material facts in its Certificate of Publication and Notice of Sale at

Public Auction for GONZALEZ COMMERCIAL CONDO, which had the effect of unlawfully

concealing the sale of GONZALEZ COMMERCIAL CONDO from certain potential bidders at

said public auction, and also unlawfully suppressed competitive bidding:

a. BPNA intentionally utilized an incorrect PIN Number of 17-06-234-044-0000, "044" for GONZALEZ COMMERCIAL CONDO;

b. BPNA intentionally utilized an incorrect Legal Description of GONZALEZ COMMERCIAL CONDO;

c. BPNA failed to provide a Unit Number (Unit 1) to identify GONZALEZ COMMERCIAL CONDO from the other three condominium units in the SUBJECT BUILDING;

d. BPNA fraudulently excluded the Commercial Parking from GONZALEZ COMMERCIAL CONDO Legal Description;

e. BPNA fraudulently concealed and failed to list the substantial improvements to GONZALEZ GOMMERCIAL CONDO; and

f. Improperly refused to allow GONZALEZ COMMERCIAL CONDO to be inspected prior to the Judicial Sale being conducted.

156.    The unlawful suppression of competitive bidding is also clearly demonstrated by

the following search result for the listed invalid PIN number of 17-06-234-044-0000, which was

conducted via the Lawyers Committee for Better Housing (LCBH) Website as of February 9, 2010,

which website sets forth the following information:

> "The listed PIN is not associated with the listed address in CN (Case Number) or
> CCA (Cook County Assessors) online records. There is no result for the listed
> address and there is no Lis Pendens associated with the parties listed on this record".



**Search result conducted and published by the Lawyers Committee for Better
Housing (LCBH) Website as of February 9, 2010.**

157.    Pursuant to the above mentioned search result and the following reasons, it is

clearly apparent that this is additional material evidence that competitive bidding was fraudulently

suppressed by BPNA and C&T LAW:

57

a. The first part of the search result which reads: "<u>The listed PIN is not associated with the listed address in CN (Case Number)</u>",clearly demonstrates that the fraudulent "044" PIN utilized by BPNA is not associated with the actual address of GONZALEZ COMMERCIAL CONDO;

b. The second part of the search result which reads: "<u>The listed PIN is not associated with the CCA (Cook County Assessors) online records</u>" clearly demonstrates that the fraudulent "044" PIN utilized by BPNA does not exist in the Cook County Assessors Records;

c. The third part of the search result which reads: "<u>There is no result for the listed address</u>"; clearly demonstrates that the address listed in BPNA's Complaint to Foreclose on GONZALEZ COMMERCIAL CONDO is not associated with the fraudulent "044" PIN utilized by BPNA's Complaint to Foreclose; and

d. The fourth part of the above mentioned search result which reads: "<u>there is no Lis Pendens associated with the parties listed on this record</u>", clearly demonstrates that the parties are not connected to the fraudulent "044" PIN utilized by BPNA in its Complaint to Foreclose, and that although BPNA listed the PIN as "044", it did not record a Lis Pendens on "044" but rather fraudulently recorded the Lis Pendens on a different PIN.

158.    Furthermore, a search for the invalid PIN Number of 17-06-234-044-000,

conducted via the Cook County Assessors Website returns the following statement:

"<u>PIN not found.  Please re-enter</u>".



**Search result conducted on the Cook County Assessor's Website demonstrating that the PIN utilized by BPNA does not exist.**

**(b)** **Unlawful Artificial Suppression of the Price of GONZALEZ COMMERCIAL CONDO**

159.   BPNA and C&T LAW also intentionally artificially suppressed the price of

GONZALEZ COMMERCIAL CONDO as clearly demonstrated by the following facts:

> a. Although GONZALEZ COMMERCIAL CONDO included a private indoor parking spot, BPNA and C&T LAW excluded the Commercial Parking from the legal description on all foreclosure and auction related documents and notices. The legal description utilized by BPNA for GONZALEZ COMMERCIAL CONDO stated in pertinent part as follows:
>
>> "ALSO COMMERCIAL PARKING: AND ALSO EXCEPTING THAT PROPERTY AND SPACE***".
>
> b. BPNA and C&T LAW also unlawfully concealed and failed to list the substantial improvements to GONZALEZ COMMERCIAL CONDO in the Notice of Sale for the public auction, by merely stating:
>
>> "the real estate is improved with a commercial property".
>
> c. Furthermore, BPNA refused to open GONZALEZ COMMERCIAL CONDO for inspection by potential bidders prior to the court ordered public auction and misrepresented the condition of the property by implication. The Notice of Sale specifically stated:
>
>> "The property will NOT be open for inspection and plaintiff makes no representation as to the condition of the property".

**(c)** **Fraudulent Purchase of GONZALEZ COMMERCIAL CONDO by BPNA at a Non-competitive Price**

160.   On August 30, 2010, the Judicial Sale of GONZALEZ COMMERCIAL CONDO

was held at which BPNA was the successful bidder and was granted a Certificate of Sale. Pursuant

to the aforementioned bid-rigging scheme, BPNA was able to purchase GONZALEZ

COMMERCIAL CONDO considerably under market value for $441,600.00. At the time BPNA

purchased GONZALEZ COMMERCIAL CONDO, it is estimated that the fair market value of

that property was approximately $2,000,000.00, which is clearly demonstrated by the following

evidence:

a. On January 5, 2007, BPNA ordered and obtained an appraisal for GONZALEZ COMMERCIAL CONDO, from R. J. Schmitt & Associates Appraisers and Consultants. At the time, the appraised value was determined to be Nine-Hundred-Thousand-Dollars ($900,000.00) in the totally raw and unimproved state as depicted in the first picture below which was extracted directly from the appraisal. (See next page for this picture)

b. Subsequently, GONZALEZ COMMERCIAL CONDO was fully improved with at least $1,200,000.00 worth of improvements, as depicted in the second photograph below (See next page for this picture). Therefore, the value of the property on August 30, 2010, at the time BPNA purchased it, was estimated to be approximately $2,000,000.00.



**Picture of GONZALEZ COMMERCIAL CONDO, extracted from BPNA's Appraisal.
GONZALEZ COMMERCIAL CONDO was appraised for $900,000.00 in this unimproved state.**



**Picture of GONZALEZ COMMERCIAL CONDO depicting over $1,200,000.00 worth of
Improvements, bringing the estimated value at $2,000,000.00. BPNA purchased GONZALEZ
COMMERCIAL CONDO in this state for $441,600.00**

**(5)** **BPNA and C&T LAW intentionally conspire with STONE, BALL, DPT CONDO and ZUCKER to fraudulently ensure the Confirmation of Sale**

161.    In an effort to fraudulently mislead the Circuit Court into confirming the report of sale and distribution pursuant to the improper purchase of GONZALEZ COMMERCIAL CONDO, BPNA and C&T LAW colluded directly with STONE, BALL and ZUCKER to achieve that illegal goal and in furtherance of that conspiracy they unlawfully committed various unlawful and improper acts in furtherance of that Scheme as demonstrated by the following facts:

**(a)     Malicious pattern of setting Coinciding Court Dates**

162.    Significantly, BPNA, in direct collusion with [STONE, BALL and CIRAR] and the DPT CONDO, maliciously set coinciding court dates in their three respective fraudulent lawsuits against GONZALEZ and GONZALEZ COMMERCIAL CONDO, requiring GONZALEZ to appear at the Daley Center in three separate Courtrooms on the same date and time. For example:

> a. On August 13, 2010, BPNA filed a motion to specifically appoint Michael ZUCKER, (owner of Peak Properties) as its chosen receiver for GONZALEZ COMMERCIAL CONDO. which was subsequently rescheduled for presentation on September 14, 2010;
>
> b. The DPT CONDO filed a motion for Default Judgment against GONZALEZ COMMERCIAL CONDO, which was scheduled for presentation on September 14, 2010;
>
> c. STONE, BALL and CIRAR filed a motion in their lawsuit against GONZALEZ RESTAURANT which was also scheduled for presentation on September 14, 2010.

**(b)     Fraud Upon the Court and Perjury**

163.    On September 14, 2010, BPNA, during Court proceedings against GONZALEZ and GONZALEZ COMMERCIAL CONDO, fraudulently represented to the Courts that GONZALEZ COMMERCIAL CONDO owed a $17.000.00 City of Chicago water bill and that due to the refusal by GONZALEZ COMMERCIAL CONDO to pay the bill, the City of Chicago was going to terminate the water service to the entire SUBJECT BUILDING. BPNA then asserted

that due in part to that failure by GONZALEZ, the control of GONZALEZ COMMERCIAL CONDO should be transferred to ZUCKER, BPNA's chosen Receiver.

164.    Shockingly, on September 16, 2010, during Court proceedings against GONZALEZ and GONZALEZ COMMERCIAL CONDO, BPNA appeared in Court with STONE and BALL and altogether once again fraudulently represented to the Court that GONZALEZ COMMERCIAL CONDO owed a $17,000.00 City of Chicago water bill and that due to the refusal by GONZALEZ COMMERCIAL CONDO to pay the bill, the City of Chicago was going to terminate the water service to the entire SUBJECT BUILDING.

165.    The aforesaid fraudulent testimony on September 14, 2010 and September 16, 2010 by BPNA, C&T LAW, STONE and BALL was intentional, which is evident pursuant to the following facts:

   a.   On or about December 16, 2009, Acquest Title Services provided BPNA and C&T LAW with evidence of a City of Chicago Water Lien against the SUBJECT BUILDING, demonstrating that as of July 18, 2008, there was an outstanding water bill of only $1643.60 for the entire SUBJECT BUILDING;

   b.   Pursuant to a City of Chicago water bill, as of June 24, 2010, the water bill for the entire SUBJECT BUILDING was $2676.97;

   c.   At the relevant time, GONZALEZ was the only person who had ever paid a City of Chicago water bill for the SUBJECT BUILDING;

   d.   As of September 16, 2010, STONE, BALL and CIRAR had never paid any water bill;

   e.   Furthermore, GONZALEZ had previously consistently attempted to collect money from STONE and BALL to pay the outstanding water bill, however, STONE consistently refused to ever pay any portion of the water bill.

166.    Nevertheless, on September 16, 2010, as a result of the aforesaid fraudulent testimony by BPNA, STONE and BALL; ZUCKER was appointed as Receiver for GONZALEZ COMMERCIAL CONDO.

(c)    **Malicious Collusion between BPNA AGENT (ZUCKER)and STONE**

167.    As soon as ZUCKER became the Receiver for GONZALEZ COMMERCIAL CONDO, STONE, BALL and BPNA began directly colluding with ZUCKER to irreparably harm GONZALEZ, GONZALEZ RESTAURANT and GONZALEZ COMMERCIAL CONDO.

168.    For example, on November 1, 2010 and November 8, 2010, STONE and BPNA AGENT ZUCKER exchanged the following emails, clearly demonstrating that they were aggressively working in concert of action, to: (1) unlawfully prevent GONZALEZ RESTAURANT from obtaining his City of Chicago and State of Illinois Liquor Licenses; (2) unlawfully evict GONZALEZ RESTAURANT from GONZALEZ COMMECIAL CONDO:

> [STONE]:    "we need him out of the retail space as soon as possible"
>
> [STONE]:    "Edge's (GONZALEZ RESTAURANT) Chicago liquor and restaurant license expires 11/15-seriously doubt he has the usd$6-8000 needed to extend his licenses for another 2 years... and why would he is he is going to be evicted in the next 2-4 months?"
>
> [ZUCKER]:    "--I am aware."
>
> [ZUCKER]:    "--I am speaking to someone else so more the merrier."

169.    Significantly, pursuant to the above mentioned email messages, STONE was aware that GONZALEZ RESTAURUANT was going to be evicted, at least three months before GONZALEZ RESTAURANT was made a party to post Confirmation of Sale Judgement Proceedings.

**(6)    Fraudulent Confirmation of Sale**

170.    On December 9, 2010, BPNA presented its "Motion for Order Approving Report of Sale and Distribution and Entry of Deficiency judgment", which was obviously fraudulent as evidenced by the facts set forth in this Complaint.

64

171.    Nevertheless, on December 9, 2010, BPNA in collusion with C&T LAW fraudulently obtained an "Order Approving the Report of Sale and Distribution" which was based on the wrong PIN Number, wrong legal description, and which excluded the commercial parking.

**(7)    Unlawful material alteration and recording of the Judicial Sale Deed with Cook County Recorder of Deeds**

172.    Accordingly, on December 10, 2010, BPNA was granted the Judicial Sale Deed for GONZALEZ COMMERCIAL CONDO.

173.    However, due to the fact that BPNA intentionally utilized the wrong PIN Number of 17-06-234-044-0000 on all foreclosure related documentation and supporting documents including the Notice of Sale at public auction, said official Judicial Sale Deed was executed for the incorrect and nonexistent PIN Number of 17-06-234-044-000.

174.    Sometime between December 10, 2010 and December 15, 2010, BPNA, in collusion with C&T LAW, forged and materially altered the Judicial Sale Deed through the act of crossing out the incorrect and non-existent PIN Number of 17-06-234-044-0000 on the Judicial Sale Deed, and adding the correct PIN Number of 17-06-234-071-000. Upon information and belief, this alteration was directly approved by BPNA.

175.    On December 15, 2010, said forged and materially altered Judicial Sale Deed, which was directly based on the non-existent PIN number of 17-06-234-044-0000 at the time of the Sale, was recorded by C&T LAW with the Cook County Recorder of Deeds against the correct PIN Number of 17-06-234-071-0000 in an intentional attempt to cover-up and conceal such fraudulent acts by BPNA in collusion with their counsel, C&T LAW. It is significant to note that as of October 14, 2014, Aron from the Judicial Sales Corporation, confirmed that the Judicial Sale Deed which they have on record, still bears the fraudulent "044" PIN Number.

65

**(8)**    <u>Wrongful Eviction of GONZALEZ RESTAURANT and Breach of Contract</u>

176.    GONZALEZ RESTAURANT was never made a party to the aforementioned foreclosure action at any time. This was true on December 9, 2010, the date on which the Order Approving the Report of Sale and Distribution was granted by the Circuit Court.

177.    On January 6, 2011, after the foreclosure of GONZALEZ COMMERCIAL CONDO was finalized, BPNA served its tenant, GONZALEZ RESTAURANT, with a LANDLORD'S FIVE DAY NOTICE pursuant to the terms of the lease for GONZALEZ RESTAURANT dated September 1, 2009, (hereinafter referred to as "GONZALEZ RESTAURANT LEASE".

178.    BPNA served GONZALEZ RESTAURANT with the aforesaid LANDLORD'S FIVE DAY NOTICE, through ZUCKER, who was acting as an AGENT for BPNA. This is evidenced by the fact that on October 19, 2011, ZUCKER testified under oath that he (ZUCKER) served GONZALEZ RESTAURANT the aforementioned "LANDLORD'S FIVE DAY NOTICE" as an <u>AGENT OF BPNA</u>. Specifically, on October 19, 2011, Michael Zucker testified under oath in pertinent part as follows:

> [Mr. GONZALEZ]: "Okay. The next question that I have is: I have this landlord's five-day notice. Mike, did you as an agent of Banco Popular serve me this notice?
>
> [Zucker]: "Yes."
>
> [Mr. GONZALEZ]: "I'm sorry, did you serve this to Plaza Lounge?
>
> [Zucker]: "Yes."
>
> [Mr. GONZALEZ]: "And what is the date on there?"
>
> [Zucker]: "January 6th.

179.    The LANDLORD'S FIVE DAY NOTICE, served upon GONZALEZ RESTAURANT includes the following language in pertinent part:

"You are hereby notified that there is now due the undersigned landlord the sum of $4600 being rent for the premises situated in the City of Chicago, County of Cook, and the State of Illinois, described to wit: 1700 W. Division St. #1, Chicago, IL 60622"

"And you are further notified that payment of said sum so due has been and is hereby demanded of you, and that unless payment thereof is made on or before the expiration of five days after service of this notice, your right of possession of said premises will be terminated."

180. On January 10, 2011, GONZALEZ RESTAURANT tendered and BPNA accepted the $4600.00 rent amount demanded by BPNA in its LANDLORD'S FIVE DAY NOTICE, pursuant to the terms of GONZALEZ RESTAURANT LEASE, thereby curing all defaults alleged by BPNA under the LANDLORDS FIVE DAY NOTICE further ratifying GONZALEZ RESTAURANT LEASE and binding BPNA to its terms.

181. On January 10, 2011, after receiving the payment from GONZALEZ RESTAURANT, the agent of LANDLORD (BPNA) signed a receipt letter which included the following language in pertinent part:

"Plaza Lounge LLC, DBA EDGE Lounge (GONZALEZ RESTAURANT) and its agent ANASTACIOGONZALEZ hereby tenders $4600 dollars pursuant to the terms of its Plaza Lounge LLC Lease (GONZALEZ RESTAURANT LEASE) for 1700 W. Division Unit 1, Chicago IL 60622, dated September 1, 2009 and the attached Landlord's Five Day Notice. This payment cures all defaults alleged by Banco Popular (BPNA) related to the Landlord's Five Day Notice issued and dated January 6, 2011, which covers lease payments for December 2010 for $2300 and January 2011 for $2300."

182. On January 10, 2011, pursuant to the actions of BPNA and the terms of its LANDLORD'S FIVE DAY NOTICE, BPNA became further bound to GONZALEZ RESTAURANT LEASE, and waived its right to terminate GONZALEZ RESTAURANT LEASE, as evidenced in pertinent part by the following language included in the LANDLORD'S FIVE DAY NOTICE, which states in pertinent part as follows:

"ONLY FULL PAYMENT OF THE RENT DEMANDED IN THIS NOTICE
WILL WAIVE THE LANDLORD'S RIGHT TO TERMINATE THIS LEASE"

183. Nevertheless, on January 31, 2011, BPNA unlawfully filed a Petition for an Order of Possession against GONZALEZ RESTAURANT, in blatant breach of GONZALEZ RESTAURANT LEASE and the aforesaid LANDLORD'S FIVE DAY NOTICE. Significantly: (1) the foreclosure had been finalized on December 9, 2010; and (2) prior to January 31, 2011, GONZALEZ RESTAURANT, was never made a party to the foreclosure.

184. Although GONZALEZ RESTAURANT continued to make monthly payments to BPNA pursuant to GONZALEZ RESTAURANT LEASE, which BPNA accepted, on September 29, 2011, GONZALEZ RESTAURANT, was wrongfully evicted from GONZALEZ COMMERCIAL CONDO by the owner and landlord, BPNA, after which BPNA forcibly took possession.

185. Pursuant to the aforementioned facts, BPNA's securing of the Supplemental Petition for Order of Possession and the subsequent wrongful eviction of GONZALEZ RESTAURNT on September 29, 2012, BPNA directly breached the following provisions contained within GONZALEZ RESTAURANT LEASE:

a. Paragraph 12 of GONZALEZ RESTAURANT LEASE entitled "SETTLEMENT PROVISION" which states in pertinent part as follows:

"In the event Landlord elects to terminate this lease at any time prior to September 31st, 2019 or any extension thereof, without the prior written approval of the Lessee, Lessor and Lessee hereby agree to the following preauthorized settlement amount of one million five hundred thousand dollars ($1,500,000.00) to compensate the Lessee for damages from the termination of the said Lease including but not limited to any liquidated damages stemming therefrom. The acceptance and acknowledgement of the above settlement amount is hereby established by the execution of this lease."

b. Paragraphs 5 and Paragraph 2A of GONZALEZ RESTAURANT LEASE, which states in pertinent part as follows:

68

"Lessor and Lessee acknowledge that the Lessee previously took possession of the commercial restaurant space in a fully unimproved state and that Lessee fully built-out and improved the space including but not limited to all plumbing and electrical construction and improvements. Lessor and Lessee acknowledge that the Lessee owns and will own any and all current and/or future improvements."

"Lessor agrees to pay a reasonable amount of money for any and all improvements, including but not limited to, underground plumbing, permanent fixtures, windows and doors, which have improved said lease space and will be left by Lessee at the Lease termination. Lessee should only be obligated to leave the premises at the end of the Lease and/or Lease extension periods, in the same condition as when Lessee initially took possession of the property, on or before September 8th, 2008, or by choice of Lessee in any improved condition."

c. Paragraph 14 of GONZALEZ RESTAURANT LEASE which states in pertinent part as follows:

"Any assignments, foreclosure, conveyance, or sale by Lessor of the Premises to any person or entity other than the Lessee during the Lease term or extension of the Lease term upon Lessee's exercise of its Option to Extend as set forth in paragraph 9 of the Rider attached to this Lease and Incorporated by reference herein, shall not interfere with Lessees right to quiet enjoyment of the Premises or any other rights of Lessees as set forth in this Lease and Rider. Lessor Hereby also agrees that all covenants, promises, representations and agreements herein contained shall be binding upon, apply and inure to the benefit of the Lessor and Lessee and their respective heirs, legal representatives, successors, assigns, bonafide purchasers, and any entity as a recipient of a transfer by operation of law, foreclosure, and/or tax sale."

**(9)      Theft and Conversion of GONZALEZ RESTAURANT Personalty**

186.      After BPNA took possession of GONZALEZ COMMERCIAL CONDO and unlawfully evicted GONZALEZ RESTAURANT, BPNA then stole and converted all of GONZALEZ assets, in direct violation of Cook County Sheriff orders and Cook County Judge Orders as demonstrated by the following facts:

**(a)      Violation Cook County Sheriff Order**

187.     On September 29, 2011, the day GONZALEZ RESTAURANT was evicted from GONZALEZ COMMERCIAL CONDO, the Office of the Sheriff of Cook County, Thomas J. Dart, Sheriff, issued an order to BPNA, the Owner and Landlord of GONZALEZ COMMERCIAL CONDO, stating in pertinent part that: (1) the property "inside" GONZALEZ COMMERCIAL CONDO is the property of GONZALEZ RESTAURANT; (2) GONZALEZ RESTAURANT "shall be afforded a reasonable time to claim his/her personalty and to have the property removed from the premises"; and (3) should BPNA deprive GONZALEZ RESTAURANT of its personal property, said deprivation by BPNA "may be actionable both criminally and civilly under the laws of the State of Illinois and the United States of America". The Order issued to BPNA by the Office of the Sheriff of Cook County specifically states in pertinent part as follows:

> "Absent any furnishings and/or appliances provided by the landlord, the property left inside the premises is the personal property of the persons evicted. The plaintiff understands and agrees the defendant and/or any other interested third party shall be afforded a reasonable time to claim his/her personalty and to have the property removed from the premises."

> "The plaintiff understands that depriving persons of their personal property may be actionable both criminally and civilly under the laws of the State of Illinois and the United States of America"

**(b)     Theft and Conversion by BPNA**

188.     On October 4, 5, and 9, 2011, as evidenced by videotaped footage, photographs and witness testimony, various items belonging to GONZALEZ RESTAURANT (totaling at a minimum tens of thousands of dollars) were unlawfully removed from GONZALEZ COMMERCIAL CONDO by BPNA and/or its agents in concert of action with others. Pursuant to that unlawful theft, October 10, 2011, GONZALEZ promptly filed a Chicago Police Report to document the incidents.

**(c)     Lien and Lis Pendens pursuant to a Lawsuit**

189.    On October 14, 2011 GONZALEZ RESTAUARANT filed a lien against the COMMERCIAL CONDO'S title for their $1,500,000.00 liquidated damages claim pursuant to the eviction and subsequent breach of contract of GONZALEZ RESTAURANT LEASE.

190.    On October 14, 2011 GONZALEZ, GONZALEZ COMMERCIAL CONDO, and GONZALEZ RESTAURANT filed a Section 2-1401(f) Petition in the mortgage foreclosure action filed by BPNA and a Lis Pendens based on that Section 2-1401(f) Petition against the COMMERCIAL CONDO's title. That Section 2-1401(f) Petition is based on "fraud upon the court" and requested for the Court to vacate and void all judgments and orders.

(d)     **BPNA Agent Testimony under Oath as to Theft and Conversion by BPNA**

191.    On October 19, 2011 during court proceedings, ZUCKER, agent of BPNA, testified under oath and in the presence of a court reporter and C&T LAW Attorneys that the aforesaid GONZALEZ RESTAURANT personalty was removed when GONZALEZ COMMERCIAL CONDO and GONZALEZ RESTAURANT was in the sole control and possession of BPNA. Specifically, when ZUCKER was asked if 100% of the liquor stock and all five of the plasma TV's were unlawfully removed when in the sole control and possession of BPNA, ZUCKER stated as follows:

> [ZUCKER]: "Plaza Lounge (GONZALEZ RESTAURANT) did not have a chance to go onto the property."

> [ZUCKER]: "Yes and yes, the stuff – more – there is a lot of stuff that's gone."

> [ZUCKER]: "Yes, the liquor is gone. Yes, the TVs are gone. Yes, the cash box is gone"

(e)     **Order by Cook County Judge Alexander P. White**

192.    Accordingly, on October 19, 2011, after reviewing the evidence and hearing the arguments, the Honorable Judge Alexander P. White, ordered BPNA to; (1) allow GONZALEZ

access to GONZALEZ COMMERCIAL CONDO in order to conduct an inventory of its remaining

personalty; and (2) schedule a time and date set certain to allow GONZALEZ the appropriate

amount of time to remove said property pursuant to said inventory. Pursuant to the Court

Transcripts, Judge White specifically, stated as follows:

> [THE COURT]: "*** Arrange for him -- you to get into the premises and take an
> inventory." "*** remove it pursuant to the inventory. Pretty simple." "I'll have an
> agreement with him (BPNA Attorney) that they're not going to remove anything."

## (10) Fraudulent Sale of GONZALEZ COMMERCIAL CONDO, and GONZALEZ RESTAURANT Personalty to CO-CONSPIRATOR (LEYDON)

### (a) Violation of the Uniform Voidable Transactions Act (UVTA)

193. Unbeknownst to GONZALEZ and the Court, on October 20, 2011, BPNA sold

GONZALEZ COMMERCIAL CONDO to LEYDON via a Special Warranty Deed in direct

violation of the Uniform Voidable Transactions Act (UVTA) as evidenced in pertinent part by the

following facts:

    a. BPNA was well aware of the aforesaid $1,500,000.00 Lien, and Lis Pendens for a suit to vacate and void the sale of GONZALEZ COMMERCIAL CONDO (based on fraud) which was filed against the Title of GONZALEZ COMMERCIAL CONDO by the Plaintiff;

    b. LEYDON was an insider, who freely accessed GONZALEZ COMMERCIAL CONDO with his own set of keys prior to the acquisition of GONZALEZ COMMERCIAL CONDO;

    c. BPNA sold GONZALEZ COMMERCIAL CONDO to LEYDON at an extremely non-competitive price.

### (b) Conversion / Violation of Court Orders

194. On October 20, 2011, BPNA also unlawfully converted all of the remaining

GONZALEZ RESTAURANT personalty by unlawfully selling GONZALEZ RESTAURANT

property to LEYDON, which was located inside GONZALEZ COMMERCIAL CONDO. These

actions were additionally unlawful for the following reasons:

a. On September 29, 2011, BPNA was under strict orders by the Cook County Sheriff to allow GONZALEZ RESTAURANT to retrieve its assets; and

b. On October 19, 2011, BPNA was also under Order by Judge White to: (1) allow GONZALEZ do an inventory and remove its assets; and (2) BPNA was ordered not to "remove anything".

**(c)** **Aiding and Abetting in Mortgage Fraud**

195.    Furthermore, BPNA and C&T LAW aided LEYDON in a mortgage fraud scheme, as fully detailed later in this Complaint, as evidenced by, but not limited to, the fact that on October 25, 2011, LEYDON apparently pledged GONZALEZ RESTAURANT personal property (which BPNA unlawfully sold to LEYDON) in order to obtain the loan to purchase GONZALEZ COMMERCIAL CONDO.

**(11)** **Assault and Battery Orchestrated and Executed by a BPNA AGENT and a C&T LAW Attorney**

196.    On October 22, 2011, at approximately 12:30 p.m., GONZALEZ and his Latino assistant arrived at the SUBJECT BUILDING in an attempt to conduct the inventory of GONZALEZ RESTAURANT remaining assets as ordered by the Court on October 19, 2011.

197.    However, upon arriving at the door to GONZALEZ COMMERCIAL CONDO, GONZALEZ Latino assistant was physically battered and verbally assaulted by BPNA AGENT ZUCKER, in collusion with and in the presence of C&T LAW Attorney, Terrence Tiu, whom witnessed the entire incident. As GONZALEZ Latino Associate was being shoved, and elbowed, by BPNA, BPNA AGENT ZUCKER repeatedly verbally assaulted GONZALEZ Latino Associate by yelling various racial epithets and derogatory terms directed at GONZALEZ Latino associate in an attempt to force him to physically respond.

198.    Neither GONZALEZ nor GONZALEZ Latino associate retaliated to the assault and battery. Instead, during the assault and battery GONZALEZ Latino Associate backed up, stared

73

at C&T LAW Attorney, Terrence Tiu, and shrugged his shoulders as he was requesting for C&T LAW Attorney to intervene and stop the attack.

199.    However, the C&T LAW Attorney failed to intervene in any way and instead laughed and grinned at GONZALEZ Latino associate during the assault and battery by the BPNA agent.

200.    Since the BPNA AGENT was not able to illicit a physical response from GONZALEZ or GONZALEZ Latino Associate, the BPNA AGENT ZUCKER then proceeded to stand in front of the door to GONZALEZ COMMERCIAL CONDO, continued to verbally assault GONZALEZ and his Latino Associate, and then dared them to enter GONZALEZ COMMERCIAL CONDO. Significantly, the incident, occurred on the public sidewalk directly outside the door of GONZALEZ COMMERCIAL CONDO.

201.    On October 22, 2011, shortly after the assault and battery, GONZALEZ called the Chicago Police to report the incident. Before the Police arrived, BPNA AGENT ZUCKER fled the scene, however, the C&T LAW Attorney was still present. Upon arriving at the scene, the Chicago Police completed a Battery Police Report naming BPNA AGENT ZUCKER, as the offender and GONZALEZ Latino assistant as the victim. When the Chicago Police asked the C&T LAW Attorney what he had seen, Terrence Tiu, lied to the Chicago Police by stating that he did not witness the incident.

202.    On October 23, 2011 at 12:12 a.m., GONZALEZ documented the entire incident in detail and emailed said documentation to BPNA, and C&T LAW. To date, they have yet to respond to or deny the factual allegations even after GONZALEZ filed motions.

74

E.    **UNLAWFUL / OVERT ACTS BY LEYDON**

(1)    **LEYDON sets in Motion a racially motivated Physical attack and Verbal Assault against GONZALEZ Latino Associate**

203.    On October 10, 2011, and October 17, 2011, when GONZALEZ COMMERCIAL CONDO was still owned by BPNA, GONZALEZ and a Latino Associate, observed and video was captured of LEYDON freely entering GONZALEZ COMMERCIAL CONDO with his own set of keys.

204.    On October 17, 2011, as GONZALEZ and his Latino Associate where observing LEYDON freely entering and exiting GONZALEZ COMMERCIAL CONDO, LEYDON instigated a physical and verbal attack against GONZALEZ Latino Associate in concert of action with another unknown individual. Specifically, the following occurred:

    a.  GONZALEZ Latino associate was struck in the face and back of the head by LEYDON's associate pursuant to which he suffered injuries to the head and eye;

    b.  GONZALEZ Latino associate was also verbally assaulted pursuant to which he was called a "jag off", "piece of shit", and "fat boy. Further, the offender yelled "I hate punks";

    c.  In response, Gonzalez Latino Associate filed a police report regarding the assault and battery and was subsequently examined and treated at St. Elizabeth Hospital Emergency Room on October 17, 2011, and October 20, 2011 for the injuries suffered;

(2)    **Mortgage Fraud**

205.    Pursuant to the Special Warranty Deed issued to LEYDON by BPNA, on October 25, 2011, LEYDON obtained a Mortgage to purchase GONZALEZ COMMERCIAL CONDO. That transaction was completed at the Offices of Chicago Title and Trust Co. Once again, LEYDON's closing Attorney was Jeffrey E. Rochman, who is also the same Attorney utilized by STONE to purchase his STONE RESIDENTIAL CONDO.

206.    Significantly, on the Mortgage documents, LEYDON made various false and fraudulent representations to the Mortgagee and Lender, including but not limited to the following:

a.  Although there was $1,500,000.00 lien and a Lis Pendens pursuant to A Lawsuit filed and recorded against GONZALEZ COMMERCIAL CONDO, LEYDON claimed and represented to the Mortgagee and Lender that he would be able to obtain clear and marketable title. LEYDON further asserted that "there are no defenses or offsets to this Mortgage that will be asserted by Mortgagor (or any third party defense or offset now know to Mortgager). LEYDON's Mortgage Documents included the following language, in pertinent part:

> "This Mortgage, when duly recorded in the public records, will create a valid, perfected and enforceable lien upon and security interest in all the Mortgaged Property. As of the date hereof, there are no defenses or offsets to this Mortgage that will be asserted by Mortgagor (or any third party defense or offset now know to Mortgager) or to any of the obligations secured hereby for so long as any portion of the Loan is outstanding. Mortgagor will forever warrant and defend its title to the Mortgaged Property, the rights of Mortgagee therein under this Mortgage and the validity and priority of the lien of this mortgage therein against the claims of all persons and parties except those having rights under Permitted collateral Liens to the extent of those rights."

b.  In LEYDON'S Mortgage Documents, LEYDON apparently claimed and represented to the Mortgagee and Lender that he owned all of the improvements and Personalty located in GONZALEZ COMMERCIAL CONDO including but not limited to machinery, furniture, furnishings, equipment, and restaurant equipment. However, said personalty was owned by GONZALEZ and his Businesses.

c.  Furthermore, LEYDON apparently pledged all of the aforementioned Personalty belonging to GONZALEZ and his Business and improvements as collateral in order to obtain the mortgage loan.

## (3)    C&T LAW becomes LEYDON'S Attorney in Defense of TRO

207.    On November 21, 2011, GONZALEZ filed an Emergency TRO, which was presented on November 23, 2011, requesting for LEYDON to: (1) cease physical contact with GONZALEZ and/or his associates; (2) cease from removing items and allow GONZALEZ to remove all his

remaining personalty from GONZALEZ RESTAURANT located in GONZALEZ

COMMERCIAL CONDO; (3) cease and desist from modifying, leasing or selling the premises;

and (4) set a hearing to determine all damages including the theft, assault and battery, and lease

violations.

208.    On or about November 22, 2011, C&T LAW became LEYDON's Attorney, in

defense of motions filed by GONZALEZ and his Businesss against LEYDON

**(4)    LEYDON and C&T LAW Summon BALL and STONE to defend LEYDON**

209.    On November 22, 2011, and November 23, 2011, per C&T LAW's petition of

Attorney's fees, LEYDON's Attorney, Terence G. Tiu from C&T LAW, made the following

entries, demonstrating that STONE and BALL were unlawfully conspiring with LEYDON, in

defense of allegations made by GONZALEZ against LEYDON:

| Date | Narrative |
|------|-----------|
| 11/22/11 | Multiple telephone conferences with client re: court appearance, testimony and jurisdiction of the court; telephone conference with David BALL re: testimony allegations of assault and filing of false pleadings; multiple e-mails with Robert STONE re: court testimony. |
| 11/23/11 | Meeting with David BALL to review testimony and exhibits. |
| 11/23/11 | Preparation of exhibits; prepare cross-examination of ANASTACIOGONZALEZ and direct examination of David BALL. |

**(5)    LEYDON, STONE, BALL and an unknown individual celebrate in GONZALEZ COMMERCIAL CONDO**

210.    Pursuant to the facts mentioned in this Complaint, On December 8, 2011,

GONZALEZ was forced to permanently leave GONZALEZ RESIDENTIAL CONDO.

211.    On December 9, 2011, GONZALEZ unexpectedly returned to GONZALEZ

RESIDENTIAL CONDO to pick up the remaining items, at which point he observed STONE,

BALL, LEYDON and an unknown individual, apparently celebrating GONZALEZ's forced

77

departure inside GONZALEZ COMMERCIAL CONDO, thereby demonstrating the apparent effectuation of their entire scheme.

212. As GONZALEZ observed the individuals celebrating and drinking inside GONZALEZ COMMERCIAL CONDO, while utilizing GONZALEZ's personal property, STONE ridiculed and arrogantly waived his hand at GONZALEZ.

213. A few minutes later, LEYDON exited GONZALEZ COMMERCIAL CONDO, approached GONZALEZ, and stated to GONZALEZ in pertinent part "See you in Court."

214. BALL also exited GONZALEZ COMMERCIAL CONDO and approached GONZALEZ, at which point he stated to GONZALEZ "Can't wait to see you in court, looking forward to it. This is fun, I didn't realize how much fun this is".

**(6)** **Contempt of Court**

215. On December 13, 2011, Judge Alexander P. White issued and approved a Citation to Discover Assets against LEYDON after which LEYDON was served that Citation.

216. The terms of that Citation to Discover Assets, expressly prohibited LEYDON from transferring his assets, as evidenced in pertinent part by the following language:

> "YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which he/she may be entitled or which may be acquired by or become due to him/her, until further order of court or termination of the proceeding.. You are not required to withhold the payment of any money beyond double the amount of the judgment."

217. On December 20, 2011, while under the strict requirements set forth in the aforesaid Citation to Discover Assets, LEYDON transferred GONZALEZ COMMERCIAL CONDO to a separate company "1700 W. Division, LLC" via a Quit Claim Deed, in violation of the terms of the Citation to Discover Assets.

78

218.    Significantly, LEYDON'S Quit Claim Deed was drafted by Attorney Jeffery E. Rochman who was also an Attorney for STONE. Moreover, Attorney Rochman's notarized signature on that Quit Claim Deed appears to be forged.

**(7)    Violation of Illinois Uniform Fraudulent Transfer Act**

219.    LEYDON transferred GONZALEZ COMMERCIAL CONDO to a company owned by LEYDON and his wife "1700 W. Division, LLC" for little to no monetary value.

220.    Significantly, the transfer occurred after GONZALEZ filed a $1,500,000.00 lien and a lawsuit against the PIN Number of GONZALEZ COMMERCIAL CONDO with the Cook County Recorder of Deeds.

**(8)    Conversion**

221.    On December 20, 2011, LEYDON also transferred and converted all of GONZALEZ RESTAURANT remaining personal property, which was located inside GONZALEZ COMMERCIAL CONDO to that new entitiy, "1700 W. Division, LLC"

**(9)    Mortgage Fraud (Second Instance)**

222.    On December 14, 2012, LEYDON obtained a second mortgage for GONZALEZ COMMERCIAL CONDO from Lakeside Bank, utilizing North American Title Co. to insure Title.

223.    Said loan was obtained despite the fact that there was a lien, and a lis pendens (pursuant to a lawsuit filed by GONZALEZ based on fraud) recorded against GONZALEZ COMMERCIAL CONDO. In other words, the second mortgage transaction was completed while Plaintiff's Section 2-1401(f) Petition to Vacate based on Fraud was pending and the aforesaid Lien and Lis Pendens had been filed against GONZALEZ RESIDENTIAL CONDO.

224.     Significantly, on the Lakeside Bank Mortgage documents, LEYDON once again

made various fraudulent representations to the Mortgagee and Lender, including but not limited to

the following:

> a. LEYDON once again claimed and represented to the Mortgagee and Lender that he had Clear and Marketable Title to GONZALEZ COMMERCIAL CONDO.
>
> b. LEYDON intentionally used an incorrect address (1743 W. Division for the mortgaged premises (GONZALEZ COMMERCIAL CONDO). But he then used the correct PIN number for GONZALEZ COMMERCIAL CONDO. The modified loan document stated in pertinent part as follows:
>
>> "The Real Property or its address is commonly known as 1743 West Division Street, Chicago, IL 60622. The Real Property tax identification number is 17-06-234-071-0000."

## (10)     LEYDON corrects the Legal Description to GONZALEZ COMMERCIAL CONDO to fully effectuate and conceal the Bid-rigging Scheme

225.     Significantly, on December 14, 2012, LEYDON filed a quitclaim deed in an

attempt to fraudulently correct the incorrect legal description in an obvious attempt to effectuate

the bid-rigging scheme. The quitclaim deed states:

**"***THIS DEED IS BEING RE-RECORDED TO CORRECT THE LEGAL DESCRIPTION***"**

F.   **THE UNLAWFUL SCHEME TO: (1) CONCEAL AND COVER-UP THE CIVIL CONSPIRACY (2) FORCIBLY SILENCE AND DEPRIVE GONZALEZ OF HIS CIVIL RIGHTS AND (3) RUN THE STATUTES OF LIMITATIONS**

226.   Beginning on or about January 20, 2010 and continuing to the present time, BPNA and C&T LAW orchestrated and executed an unlawful scheme intentionally and maliciously designed to: (a) conceal the present unlawful conspiracies, (b) damage, oppress and forcibly silence GONZALEZ; (c) deprive GONZALEZ of his civil rights; and (d) force the statutes of limitations period to expire. To accomplish this goal, the CO-CONSPIRATORS repeatedly violated GONZALEZ civil rights, relentlessly and egregiously misused legal proceedings to the extent that they committed numerous acts of malicious abuse of process and malicious prosecution and also intentionally subjected GONZALEZ to physical, emotional and financial harm.

227.   Significantly, in furtherance of that unlawful scheme, on or about January 2011, BPNA and C&T LAW began conspiring directly with Attorney David J. Axelrod "AXELROD" (who had previously filed a separate fraudulent collection lawsuit against GONZALEZ as fully detailed in the AXELROD Section) in a direct attempt to further damage GONZALEZ through various means, but mainly by maliciously causing GONZALEZ to be unlawfully and repeatedly arrested, imprisoned and detained, without any legal justification.

(1)   **First coordinated attempt by BPNA and AXELROD to unlawfully arrest GONZALEZ**

228.   On January 27, 2011, BPNA and C&T LAW conspired directly with AXELROD and AXELROD LAW in a coordinated attempt to maliciously arrest GONZALEZ. They attempted to effectuate this first unlawful arrest by setting coinciding court dates, in their respective lawsuits against GONZALEZ maliciously requiring GONZALEZ to appear in two separate court rooms on the same date and at the same time as detailed below:

a. On November 18, 2010, AXELROD obtained an Alias Body attachment against GONZALEZ in the Collection Suit filed against GONZALEZ by R&M BOOTH'S.

b. On December 20, 2010, AXELROD placed the Alias Body Attachment against GONZALEZ for service with the Cook County Sherriff and set GONZALEZ's required appearance for January 27, 2011.

c. Significantly, in the Mortgage Foreclosure suit, BPNA requested and obtained an order on January 6, 2011 which also required GONZALEZ to appear in a different Courtroom on the same date of January 27, 2011 and at the same time.

229. Significantly, on January 14, 2011, at 8:29 a.m., STONE sent GONZALEZ the following text message, which apparently demonstrated that STONE had a connection with AXELROD and his client, IRIZARRY, "the booth guy" and that he [STONE] was aware of the AXELROD Collection suit filed for R&M BOOTHS by AXELROD:

> [STONE]: "You screwed the booth guy over 30k - ***I suggest you solve this***"

230. On January 15, 2011, at 8:34 pm, STONE sent GONZALEZ a second text message, further demonstrating not only STONE's connection with AXELROD, his client and the AXELROD Collection suit but also his knowledge of the scheme to schedule Court dates on the same date and at the same time so that it would be impossible for GONZALEZ to attend both.

> [STONE]: "We have all copies of all the judgment and lawsuits against you***"

## (2) **Fraudulent Deficiency Judgment entered against GONZALEZ**

231. On April 6, 2011, GONZALEZ filed a Reply in Opposition to BPNA's Motion to obtain an Order of Possession against GONZALEZ RESTAURANT, which had the effect of exposing the unlawful acts being committed by the CO-CONSPIRATORS in furtherance of the present CIVIL CONSPIRACIES.

232.    In response to that Reply, Attorney Terrence Tiu from C&T LAW confronted GONZALEZ in the elevator at the Daley Center and made the following threat to GONZALEZ in front of a witness:

> "Quit making it rain, cause we are going to make it hail. We are going to get you for the full amount"

233.    Subsequently, on June 24, 2011, almost seven months after the Circuit Court confirmed the Report of Sale of GONZALEZ COMMERCIAL CONDO, BPNA fraudulently, maliciously and intentionally pursued a deficiency judgment against GONZALEZ and GONZALEZ COMMERCIAL CONDO for the full amount of the alleged Mortgage debt and pursuant to that deficiently judgment issued a Citation to Discover Assets. The pursuit and obtaining of the aforesaid deficiency judgment by BPNA is fraudulent and malicious for various material reasons, including but not limited to the following:

  a. In pursuing that Deficiently Judgments, BPNA concealed the fact that it had received $441,600.00 dollars in proceeds from the sale of GONZALEZ COMMERCIAL CONDO. Instead, it fraudulently pursued a deficiency against GONZALEZ and GONZALEZ COMMERCIAL CONDO for the alleged full amount of the alleged loan "$680,954.23". Significantly, the aforesaid Citation to Discover Assets issued by BPNA against GONZALEZ, was verified via a Section 1-109 Verification, and fraudulently states in pertinent part as follows:

    "*** the sum of $680,945.23 remains due and owing from Defendants/Judgment Debtors to the Plaintiff/Judgment Creditor, ***"

  b. BPNA, the Mortgagee and Lender, bid on and purchased GONZALEZ COMMERCIAL CONDO from itself. Therefore, pursuant to the "Full Debt Bid Rule" and well settled Illinois Supreme Court Opinions, when BPNA purchased GONZALEZ COMMERCIAL CONDO and received the proceeds from the sale, it became a "mere stranger to the property" and its supposed lien (as mortgagee) was fully satisfied and extinguished, yielding no deficiency.

  c. Pursuant to the above-described bid-rigging scheme effectuated by BPNA, GONZALEZ COMMERCIAL CONDO was sold to BPNA significantly under market value at, $441,600.00. At that time the property was estimated to have a fair market value of $2,000,000.00. Therefore, had GONZALEZ COMMERCIAL CONDO sold at market value, there would have been no alleged deficiency, and well over $1,000,000.00 in surplus for GONZALEZ.

**(3)** **Second coordinated unlawful attempt by BPNA and AXELROD to arrest GONZALEZ**

234.    On June 30, 2011, BPNA and C&T LAW once again conspired directly with

AXELROD and AXELROD LAW in a second coordinated attempt to unlawfully arrest

GONZALEZ. They attempted to effectuate the second unlawful arrest by using the same concert

of action strategy, that is, by again setting coinciding court dates at the same time, maliciously

requiring GONZALEZ to appear in two separate cases, in two separate court rooms on the same

date and at the same time as follows:

> a.  On March 31, 2011, AXELROD obtained an Alias Body attachment against GONZALEZ.
>
> b.  On April 21, 2011, AXELROD placed the Alias Body Attachment against GONZALEZ for service with the Cook County Sherriff and set the required appearance date for GONZALEZ for June 30, 2011.
>
> c.  Significantly, BPNA also sought and obtained an order of possession in the Mortgage Foreclosure case which also required GONZALEZ to appear in court on the same date of June 30, 2011 in a different Court Room, and at the same time

**(4)** **Intentional Spoliation of Material evidence and theft of GONZALEZ Assets by BPNA**

235.    As fully detailed in this Complaint, on October 4, 5, and 9, 2011, various items belonging to

GONZALEZ RESTAURANT were unlawfully removed from GONZALEZ COMMERCIAL

CONDO by BPNA and/or BPNA AGENTS in concert of action with CO-CONSPIRATORS and

others.

236.    The items stolen and/or converted and/or disposed of by BPNA included evidence

(documents, files and records) that GONZALEZ had accumulated against BPNA and other CO-

CONPIRATORS and which exposed the present Civil Conspiracies including the unlawful and

fraudulent acts being committed in furtherance of those Civil Conspiracies.

84

237.    The goal of the aforementioned theft and conversion by BPNA was to: (1) intentionally "spoil" incriminating evidence which GONZALEZ had accumulated against BPNA and the rest of the CO-CONSPIRATORS; and (2) to prevent GONZALEZ from selling those assets/personalty so as to prevent GONZALEZ from using those funds to obtain legal counsel.

238.    It is significant to note, as previously mentioned, that the aforementioned conversion and theft by BPNA was captured on video, witnessed, and corroborated under oath by BPNA's own Agent.

**(5)    Malicious Sanctions Motion by BPNA requesting for GONZALEZ to be held in Civil Contempt and to be restricted from filing any further motions**

239.    On October 14, 2011, GONZALEZ, and GONZALEZ COMMERCIAL CONDO filed a Section 2-1401(f) Petition against BPNA based on Fraud, in an attempt to vacate the Order of Default and the Default Judgment of Foreclosure and Sale entered against GONZALEZ COMMERCIAL CONDO. On October 14, 2011, GONZALEZ also recorded a Lis Pendens against the title of GONZALEZ COMMERCIAL CONDO, which listed the aforesaid Section 2-1401(f) Petition. As previously stated, that Petition alleged in pertinent part that:

> BPNA and C&T LAW utilized the wrong PIN Number "044", and utilized the wrong legal description which excluded the commercial parking for GONZALEZ COMMERCIAL CONDO, on all foreclosure related documents and notices.

240.    As detailed above, on October 20, 2011, BPNA sold GONZALEZ COMMERCIAL CONDO to LEYDON via a Special Warranty Deed. Significantly, that deed was prepared by C&T LAW, signed by Thomas H. Horn from BPNA, and after recording, mailed to Attorney Jeffrey E. Rochman. More importantly, that Special Warranty Deed included the correct "071" PIN number for GONZALEZ COMMERCIAL CONDO, and added the COMMERCIAL PARKING PARCEL into the legal description.

241.    Nevertheless, in response to GONZALEZ's motion which alleged in pertinent part that BPNA and C&T LAW utilized the wrong PIN number of "044", because BPNA was aware that GONZALEZ did not have legal Counsel at that time, on November 4, 2011, BPNA maliciously filed a fraudulent Sanctions Motion against GONZALEZ which falsely and intentionally alleged that GONZALEZ had filed false verified pleadings by stating in pertinent part that BPNA utilized the wrong PIN Number of "044", wrong legal description, and excluded the commercial parking space. That Sanctions Motion demanded the following in pertinent part:

a.  For GONZALEZ, GONZALEZ COMMERCIAL CONDO, and GONZALEZ RESTAURANT to be held in Civil Contempt and assessed Sanctions, for allegedly filing false verified pleadings;

b.  For GONZALEZ, GONZALEZ COMMERCIAL CONDO, and GONZALEZ RESTAURANT to be restricted from filing any motions for 180 days without leave of Court; and

c.  An award of Attorney's fees.

**(6)    First Unlawful Arrest of GONZALEZ - Orchestrated by BPNA in direct collusion and collaboration with AXELROD and AXELROD LAW**

242.    On March 28, 2012, BPNA and C&T LAW conspired directly with AXELROD and AXELROD LAW by orchestrating and executing the first unlawful arrest of GONZALEZ. That arrest was executed in part by using the same concert of action strategy utilized by BPNA, C&T LAW, and AXELROD LAW in their first two coordinated attempts to unlawfully arrest GONZALEZ. That is, BPNA and AXELROD once again set coinciding court dates and times, maliciously requiring GONZALEZ to appear in two separate cases, in two separate court rooms on the same date and at the same time. The malicious arrest of GONZALEZ was fully executed as follows:

a.  Unbeknownst to GONZALEZ, on February 14, 2012, AXELROD filed a motion for an Alias Body Attachment against GONZALEZ and scheduled that motion for presentation on March 1, 2012. on March 1, 2012, unbeknownst to GONZALEZ,

86

AXELROD obtained his requested Alias Body Attachment against GONZALEZ. On March 8, 2012, AXELROD placed the Alias Body Attachment against GONZALEZ for service with the Cook County Sherriff and set the required appearance date for GONZALEZ for March 28, 2012 no later than 9:00 am

b. On February 22, 2012, during court proceedings in the BPNA Mortgage foreclosure case, BPNA and C&T LAW continued its case against GONZALEZ to March 28, 2012. Significantly that BPNA Court Order, entered on February 22, 2012 continuing the matter to March 28, 2012, was written on AXELROD LAW letter head.

c. On March 28, 2012, GONZALEZ appeared at the Court hearing in the BPNA case, at which point C&T LAW, held the BPNA court proceedings on at least two occasions, by stating to the Judge that C&T LAW was waiting for another necessary Attorney. AXELROD then appeared in the BPNA case, after which the C&T LAW Attorney stated to the Judge that it was ready to call BPNA's case against GONZALEZ. The BPNA case was then called, after which AXELROD effectuated the unlawful arrest of GONZALEZ by the Cook County Sherriff for not appearing at the same time in the other Court room dealing with the AXELROD Collection Lawsuit. That arrest by Axelrod was effectuated before the scheduled BPNA case proceedings.

(7) **Unlawful Amended Sanctions Motion by BPNA demanding that GONZALEZ be arrested and prosecuted by the Cook County State's Attorney for a class 3 Felony.**

243. In a further attempt to oppress, silence and damage GONZALEZ, on June 11, 2012, BPNA amended their Fraudulent Sanctions Motion against GONZALEZ, and additionally egregiously requested that the matter be transferred to the Cook County State's Attorney for prosecution of a Class 3 Felony against GONZALEZ. That Motion contains the following language, in pertinent part:

"That an order be entered transferring this matter to the Cook County States Attorney for prosecution of a Class 3 Felony under 735 ILCS 5/1-109 due to Defendants (GONZALEZ) filing of numerous false verified pleadings;"

(8) **Judgement Order issued by Judge White (in favor of GONZALEZ) directing GONALEZ to vacate the underlying mortgage foreclosure and related judgment orders**

244.    On June 13, 2012, GONZALEZ's Attorney, Jorge Sanchez from MALDEF, appeared in front of the Honorable Judge Alexander P. White to defend GONZALEZ against the fraudulent Sanctions Motion and the Deficiency Judgement issued against GONZALEZ, GONZALEZ RESTAURANT and GONZALEZ COMMERCIAL CONDO.

245.    During the court proceedings on the fraudulent sanctions motion as evidenced by the court transcripts on June 13, 2012, C&T LAW Attorney (TIU), on behalf of BPNA, stated:

> "*** Your Honor, I'd also like to point out to the Court pursuant to the verification, which he swore on, specifically the last two paragraphs, your Honor, that any person who makes a false statement material to the issue in point in question which he does not believe to be true in any pleading or affidavit shall be guilty of a Class 3 felony. We would like this matter tendered to the state's attorney for prosecution of that. "*** He had filed four verified false statements, your honor." "*** I would like sanctions to be entered against the Defendant. I would like this matter turned over to you, the state's attorney —".

246.    In Defense of the Sanction Motion, GONZALEZ's Counsel, Jorge Sanchez from MALDEF, provided evidence and oral arguments which apparently demonstrated that: (1) BPNA and C&T LAW committed a fraud upon the Court in obtaining the Default Judgement of Foreclosure and Sale against GONZALEZ COMMERCIAL CONDO; and that (2) The fraudulent Sanctions Motion filed against GONZALEZ was in itself Sanctionable because it was brought against him for an improper purpose, as clearly demonstrated by the fact that it is evident from the face of the record that GONZALEZ's assertions were true and correct, and that GONZALEZ obviously did not file false verified pleadings.

247.    On June 13, 2012, after reviewing the evidence and listening to oral arguments, Judge White apparently agreed with GONZALEZ's position, and subsequently ordered GONZALEZ to file a motion to vacate the underlying Orders of Default and Default Judgment of

Foreclosure and Sale, with the Circuit Court Judge, who was assigned to the relevant Mortgage Foreclosure Calendar.

248. Significantly, Judge White also stated that there was "a big problem with the foreclosure Judgment" against GONZALEZ COMMERCIAL CONDO and alluded to the fact that there was possible "misconduct" on the part of BPNA and C&T LAW. He then ordered that all pending matters, (including the alleged deficiency judgment, the corresponding citation to discover assets, and the sanctions motion) be revisited only if needed AFTER GONZALEZ's Motion to Vacate the underlying Mortgage Foreclosure Judgment was properly adjudicated and only if there was a "valid judgment" and "valid deficiency". Significantly, on June 13, 2012, per the report of proceedings, Circuit Court Judge White made the following statements in pertinent part:

    a. "We have a big problem with the foreclosure judgment."

    b. "Go back to the judge that entered the judgment and try to get it fixed"

    c. "He's got to fix the deficiency"

    d. "Okay, we have some things that have to be done here. You're going to file a motion to vacate."

249. On June 27, 2012, GONZALEZ filed an Amended Petition, pursuant to Section 2-1401(f) of the Illinois Code of Civil Procedure, primarily based on fraud, in an effort to vacate the underlying Default Judgment and Judgment of Foreclosure and Sale, as he was directed to do by the Honorable Judge White.

250. The case was then transferred back to the Chancery Division Trial Court (Calendar 55 - Mortgage Foreclosure / Mechanics Lien Section) and re-assigned to Circuit Court Judge Swanson for re-adjudication.

**(9)** **First Motion by BPNA to transfer GONZALEZ's Mortgage Foreclosure case to a different Judicial District**

251.    In direct response to Judge White's direction to the trial Judge assigned to calendar 55, on August 17, 2012, Counsel for BPNA inappropriately presented a motion to transfer GONZALEZ's pending Section 2-1401(f) Petition, to Judge Jeffrey Warnick, who is located in a different judicial district. Said motion was entitled, "Motion to Transfer this Matter to Honorable Jeffrey Warnick".

252.    During consideration of that Motion, Judge Alfred M. Swanson, the trial Judge assigned to calendar 55, reprimanded Counsel for BPNA for failing to provide any explanation as to why this case was transferred back to the Chancery Division. GONZALEZ was not represented by Counsel at that time. Judge Swanson then directly asked Counsel for BPNA to provide an explanation as to why the case was before him.

253.    Counsel for BPNA then failed to inform Judge Swanson, that the case was transferred back to calendar 55 by Judge White, so that GONZALEZ could file a motion to vacate the Order of Default and the Default Judgment of Foreclosure and Sale and related Judgment Orders.

254.    After reviewing BPNA's "Motion to Transfer this Matter to Honorable Jeffrey Warnick" and hearing the limited argument by Counsel for BPNA, Circuit Court Judge Alfred M. Swanson, struck BPNA's Motion.

**(10)    Fraudulent attempt to strike GONZALEZ Section 2-1401(f) Petition**

255.    Instead of striking BPNA's "Motion to Transfer this Matter to Honorable Jeffrey Warnick", as directed to by Judge Swanson, Counsel for BPNA wrote in the proposed Order that GONZALEZ's Pending Section 2-1401(f) Petition was stricken when such action was not ordered by Judge Swanson. It was only after GONZALEZ demanded to be allowed to review the proposed Court Order, which was authored by Counsel for BPNA, and actually completed

that review that GONZALEZ discovered and foiled the attempt by Counsel for BPNA to intentionally enter a fraudulent order. During said review by GONZALEZ, Counsel for BPNA referred to GONZALEZ as being "Pathetic".

256.    GONZALEZ then made the Court aware of the attempt by counsel for BPNA to improperly enter the aforesaid fraudulent order and also immediately sent a detailed email to the partners of C&T LAW, BPNA's law firm, fully detailing the incident.

**(11)    Second Motion by BPNA to transfer GONZALEZ case to a different Judicial District**

257.    Despite Judge Swanson's previous ruling; on Friday, November 16, 2012, Counsel for BPNA again presented an almost identical Motion to transfer the matter to Judge Jeffrey Warnick, who was sitting in a different Judicial District.

258.    On November 16, 2012, Judge Swanson struck/denied BPNA's Second "Motion to Transfer this Matter to Honorable Jeffrey Warnick".

**(12)    Second Unlawful Arrest of GONZALEZ Orchestrated by AXELROD in direct collusion with BPNA and C&T LAW**

259.    On August 23, 2012, BPNA and C&T LAW again conspired directly with AXELROD and AXELROD LAW by orchestrating and executing a second unlawful arrest of GONZALEZ. That arrest was executed in part via the same concert of action strategy utilized by BPNA, C&T LAW, and AXELROD LAW previously. That is, BPNA and AXELROD once again set coinciding court dates, intentionally and maliciously requiring GONZALEZ to appear on two separate cases, in two separate Court rooms on the same date and at the same time. This second unlawful arrest was executed as follows:

        a. On July 26, 2012, GONZALEZ presented a motion to vacate all judgements and Orders entered against him in the AXELROD collection case because of Fraud. However, that motion was denied after AXELROD mislead the trial judge as fully detailed in the "AXELROD" Section.

b. In response, on July 26, 2012, AXELROD set a court date of August 23, 2012 requiring GONZALEZ to appear in Courtroom 1401 at 9:30 a.m. for a Citation proceeding.

c. On August 13, 2012, BPNA also set a court date of August 23, 2012, requiring GONZALEZ to appear in Courtroom 2503 at 9:30 a.m. for the Mortgage Foreclosure proceeding.

d. On August 23, 2012, GONZALEZ was arrested by the Cook County Sheriff at the request of AXELROD in the AXELROD case against GONZALEZ.

e. Significantly, beginning on or about April 2012, BPNA in it Foreclosure suit against GONZALEZ, began to include AXELROD on the service list for all BPNA Foreclosure motions and copies of relevant documents.

**(13)** **Unlawful detainment of GONZALEZ in Cook County Jail**

260. On August 24, 2012, Counsel for GONZALEZ appeared before the Court and presented a motion, demonstrating that BPNA had unlawfully removed and/or converted many of the personalty items and records belonging to GONZALEZ which were unlawfully being sought by AXELROD in the AXELROD Citation Proceedings.

261. For this reason, on August 24, 2012, at approximately 9:30 a.m., a Court Order was entered which directed that GONZALEZ be released immediately from Cook County Jail that same day.

262. After the Court hearing, upon information and belief, AXELROD orchestrated and executed a plan which had the effect of unlawfully detaining GONZALEZ for an additional four days in Cook County Jail.

263. On August 27, 2012, GONZALEZ was transferred from Cook County Jail to the Daley Center to reappear before the aforesaid Judge.

264. On that date, substitute Counsel for AXELROD, after consulting with AXELROD via mobile phone, demanded that GONZALEZ not be released from Cook County Jail and that the

Court issue a higher bond, even though AXELROD knew that there was a prior Court Order, which directed that GONZALEZ be released immediately from Cook County Jail.

265.    On August 27, 2012, the Circuit Court Judge denied the aforesaid demands by AXELROD and issued a second Order, directing that GONZALEZ be immediately released from Cook County Jail.

**(14)    Malicious Motion for Contempt against GONZALEZ, by BPNA demanding for "the issuance of a writ of attachment**

266.    On October 2, 2012, GONZALEZ obtained legal Counsel and filed an Amended Petition pursuant to Section 2-1401(f) to vacate the Default Judgment of Foreclosure and Sale.

267.    On October 19, 2012, although GONZALEZ Section 2-1401 Petition was pending, BPNA filed a motion for Contempt against GONZALEZ, GONZALEZ COMMERCIAL CONDO and GONZALEZ RESTAURANT in the Mortgage Foreclosure Case, which demanded before Judge White, that GONZALEZ be arrested.  The motion specifically demanded the following:

"the issuance of a writ of attachment against ANASTACIO GONZALEZ".

This action obviously violated Judge White's prior Order, entered on June 13, 2012, pursuant to which Judge White directed GONZALEZ to file a motion to vacate the foreclosure judgment, and that only after the adjudication of the section 2-1401(f) Petition, would the Sanction Motion and Deficiency Judgment be revisited.

**(15)    AXELROD Response which asserted that his client, IRIZARRY, removed GONZALEZ's assets from GONZALEZ RESTAURANT at the direction of a BPNA Attorney**

268.    On October 10, 2012 AXELROD provided a Response, pursuant to a Motion to Compel filed by Counsel for GONZALEZ in the AXELROD/IRIZARRY v. Gonzalez case.  That

93

Response by AXELROD asserts that his client, IRIZARRY (the owner of R&M BOOTH's) "removed certain business property at the directions of the attorney for Banco Popular***".

**(16)** **IRIZARRY Affidavit asserting that he (IRIZARRY) removed GONZALEZ assets at the direction of BPNA**

**269.** On January 17, 2013, AXELROD filed and provided an Affidavit by his client, IRIZARRY in the "AXELROD/IRIZZARY v. GONZALEZ case", as ordered to by the Court, which was certified pursuant to a Section 5/1-109 Verification. In that Affidavit certification, IRIZARRY stated that "In late March 2012, I was called by someone who said he was connected with Banco Popular, a bank foreclosing on 1700 W. Division, Chicago, IL." IRIZARRY further stated that that BPNA AGENT communicated to him that he "had one hour to remove the furniture" he had from GONZALEZ COMMERCIAL CONDO.

**(17)** **LULAC (League of United Latin American Citizens) Amicus Curiae**

270. On February, 21, 2013, LULAC (the largest and most widely respected Hispanic Civil Rights organization in the United States, founded in 1929) filed an Amicus Curiae Brief in support of GONZALEZ, GONZALEZ COMMERCIAL CONDO, and GONZALEZ RESTAURANT, with the following specific interests in mind:

   a. To help decrease or prevent the proliferation of anti-Hispanic sentiment and racial discrimination and provide negative reinforcement in an effort to protect the general Latino Public;

   b. To help prevent the proliferation of Latino housing discrimination and segregation; and (2) help reduce the enormous and disproportionate crisis related to unlawful and discriminatory foreclosure practices against Latinos, perpetrated by banks in collusion with its law firms;

   c. To help prevent discrimination and damage related to the economic development of Latino Small Businesses, and encourage the growth and economic development; and

   d. To deter Banks from unethically and unlawfully colluding with their law firms and others, and subsequently irreparably harming the general Latino public through unlawful or illegal acts

**(18)** **Second Affidavit by IRIZARRY which further began to expose the unlawful CIVIL CONSPIRACIES between BPNA, C&T LAW, AXELROD and STONE and Dismissal of the AXELROD lawsuit against GONZALEZ by AXELROD's client**

271.    On September 10, 2013, at 11:10 a.m., IRIZARRY unexpectedly called

GONZALEZ and left a voicemail message stating that he wanted to talk to GONZALEZ.

272.    On September 11, 2013 at approximately 6:30 p.m. GONZALEZ met with

IRIZARRY during which IRIZARRY stated the following to GONZALEZ:

   a.  IRIZARRY repeatedly stated that he was "dropping" the aforesaid collection lawsuit which was filed against GONZALEZ by AXELROD on behalf of R&M IRIZARRY'S company.

   b.  IRIZARRY stated that he had instructed AXELROD to drop the lawsuit over a year ago and prior thereto and made the same request many times. However, AXELROD consistently refused. He also stated that he told AXELROD he was not going to attend court and was not going to be involved in the lawsuit any longer. He further stated that anything that AXELROD did was AXELROD's own decision and not his own.

   c.  IRIZARRY emphasized and repeatedly stated to GONZALEZ that AXELROD refused to drop the lawsuit against GONZALEZ because he "really hated" GONZALEZ. He further told GONZALEZ that AXELROD swore and used derogatory terms when he referred to GONZALEZ, specifically stating on various occasions that GONZALEZ was a "Pipsqueak". "Pipsqueak" is a derogatory term used against a person sometimes meaning someone who is insignificant and despicable.

273.    Pursuant to the aforesaid discussions and representations made by IRIZARRY to

GONZALEZ, on September 11, 2013, IRIZARRY voluntarily signed, dated, notarized and

verified an Affidavit, in which IRIZARRY voluntarily agreed to vacate all Judgments and

Judgment Orders previously entered against GONZALEZ in the AXELROD Lawsuit against

GONZALEZ. IRIZARRY also stated to GONZALEZ that he signed the affidavit so that

AXELROD would no longer have "power" over GONZALEZ. IRIZARRY specifically stated

"He (AXELROD) doesn't have no more power, he doesn't have no more power over you, and that's good".

274. On September 20, 2013, IRIZARRY signed and notarized an additional affidavit, which states in pertinent part as follows:

    a. "More than a year ago, and repeatedly since then, I directed David J. Axelrod to vacate all judgments and judgment orders and dismiss the above-captioned case. However, Mr. Axelrod consistently refused.";

    b. "Although Mr. Axelrod was personally pursuing the case without my full voluntary authorization or consent, on various occasions, Mr. Axelrod told me that if I attempted to drop the lawsuit, he would charge me at least $3,000.";

    c. "On various occasions, Mr. Axelrod referred to Gonzalez as a "pipsqueak" and our "enemy". He further consistently stated that he really hated Gonzalez and used derogatory terms when referring to Gonzalez. For example, on at least one occasion Axelrod stated that he hated Gonzalez's guts and that Gonzalez was a "piece of shit".";

    d. "On or about October 19, 2011, I received a call from Robert Stone. He stated that he was attempting to remove Anastacio Gonzalez from his home and business located at 1700 W. Division. He further stated to me that Mr. Gonzalez was no good, he was all trouble and that he was trying to get him out. I told him that he had to talk to my attorney, David J. Axelrod and gave him Mr. Axelrod's contact information.";

    e. "On about October 19, 2011, but after I received the call from Robert Stone, Attorney Terrence G. Tiu, from the law firm Chuhak & Tecson P.C, who represents Banco Popular North America in Banco Popular North America v. Anastacio Gonzalez, Case No. 10 CH 02403 (Mortgage Foreclosure Action), called me to appear in court on October 19, 2011 in Courtroom 2503 at 2:00 p.m. and then instructed me to represent and testify that I owned the subject furniture located at 1700 W. Division. I then informed him that I was being represented by attorney David J. Axelrod, gave him his contact information, and told him to call Mr. Axelrod directly. Mr. Tiu called me back after speaking with Mr. Axelrod and informed me that Mr. Axelrod could not attend court on October 19, 2011 at 2:00, but that he authorized me and instructed me to appear. Mr. Tiu then prepared me for direct and cross-examination as a witness, and instructed me to tell the judge that the furniture was mine. In addition, Mr. Tiu stated that Banco Popular was going to take all of Gonzalez's assets and "leave him on the street", including his condominium, business, furniture, TV's, and coolers located on the second level above the kitchen. Mr. Tiu further stated that if I were to comply with his requests, I could also take the coolers and the stove, but I declined.";

    f. "On or about February of 2012, John Leydon, the supposed current owner of the premises at 1700 W. Division, called me and told me not to worry about taking the

furniture from the restaurant because the bank had sold him everything inside the premises, and that he (John Leydon) in turn was going to give me some of the stuff. He told me not to worry and not to do anything. He (John Leydon) further stated to me that he was going to call me in a couple of weeks to pick up the furniture and other stuff.";

g.  "About a month later, on or about late March of 2012, John Leydon called me to pick up the furniture inside the premises. He told me to be there the next day at 1:00 pm. When I arrived at the premises, I picked up some of the furniture; however, John Leydon told me that he was going to keep one of the circle booths for one of his friends.";

275.  On September 23, 2013, AXELROD'S client IRRIZARY, appeared in court and dismissed the Case with Prejudice then vacated all judgments and judgment orders against GONZALEZ.

276.  The above mentioned representations by IRIZARRY are corroborated by C&T LAW's documentation, due to the fact that on October, 19 and 20, 2011, C&T LAW on behalf of BPNA, entered a line item in their petition of attorney's fees for the BPNA mortgage foreclosure case, which stated the following:

a.  "Telephone conference with Ray's Booths regarding lawsuit and claim to certain personal property against debtor.

b.  "Telephone conference with Ray's Booths regarding invoices, personal property and testimony at hearing."

c.  "Review message from creditor claiming secured interest in personal property."

d.  "Review e-mail from client regarding arrest of debtor."

e.  "E-mail to client regarding bench warrant and timing of process."

**(19)  Unlawful Body Attachment against GONZALEZ by AXELROD two months after the case against GONZALEZ was dismissed with Prejudice**

277.  Shockingly, on November 14, 2013, almost two months after the Judgment Orders in the AXELROD case against GONZALEZ had been vacated and the Complaint dismissed with prejudice, AXELROD appeared in court and maliciously obtained a body attachment against

97

GONZALEZ, pursuant in part to an alleged "Rule to Show Cause" against GONZALEZ, which was intentionally fabricated by AXELROD.

**(20)** **Extortion by AXELROD**

278.    Thereafter, on or about November 14, 2013, AXELROD mailed a letter to GONZALEZ's Attorney, informing him that he had obtained a body attachment against GONZALEZ on November 14, 2013, which had not yet been placed with the Cook County Sheriff. That Letter stated in pertinent part as follows:

> "The order entered on September 12, 2013, also continued Rule to Show Cause as to your client to November 14, 2013. Neither Mr. Gonzalez nor anyone from your office appeared on the continued rule date, and the court issued a 2nd Attachment. That has not been placed with the Sheriff: the Attachment is in my file.

279.    On November 14, 2013, AXELROD also proffered a fraudulent "Release" letter to GONZALEZ then attempted to extort GONZALEZ by threatening to have GONZALEZ arrested if GONZALEZ did not agree to sign the letter which would have completely absolved AXELROD (and possibly the rest of the CO-CONSPIRATORS) of any wrong doing in all matters. Said Letter by AXELROD stated in pertinent part as follows:

a.   "Regardless I am enclosing a proposed Mutual Release which I have prepared"

b.   "***remised, released and forever discharged***" AXELROD from "***any action taken by AXELROD in representing any of the parites***from the beginning of the world until the date of these presents***"

280.    On or about December 8, 2013, AXELROD mailed a second letter to GONZALEZ's Attorney, in which AXELROD continued to extort and threaten to arrest GONZALEZ if GONZALEZ would not agree to sign the aforesaid "Release Letter", which again would have completely absolved AXELROD (and possibly the rest of the CO-CONSPIRATORS) of any wrong doing in all matters. Said Letter by AXELROD stated in pertinent part as follows:

"Please contact me upon receipt of this letter, so we can get this matter resolved. If I do not hear from you, then I will recommend to my client that we proceed with the attachment against Mr. Gonzalez.

281. On January 16, 2014, AXELROD fraudulently induced the Court to strike a motion which Counsel for GONZALEZ had previously filed to Vacate the Improper Body Attachment against GONZALEZ. This action took place on January 16, 2014 at 11:10 a.m., long after the Court call was completed.

**(21)  BPNA begins to sells assets in violation of Uniform Voidable Transactions Act**

282. In direct response to the aforementioned facts, especially the IRIZZARY affidavit which implicated BPNA as the main co-conspirator, BPNA began selling its assets. The selling of its assets was in direct violation of the Uniform Fraudulent Transfer Act for many reasons but primarily because there was a pending lawsuit and Lis Pendens filed by GONZALEZ against BPNA. Specifically, upon information and belief, BPNA made the following sales, in direct violation of the Uniform Fraudulent Transfer Act:

    a. On August 11, 2014, BPNA sold their Chicago Assets

    b. On August 31, 2014, BPNA sold their Florida Assets

    c. On November 7, 2014, BPNAs old their California Assets

**(22)  BPNA Attorney's agreed to over (18) continuances in GONZALEZ's Mortgage Foreclosure Case.  This acquiescence only stopped on November 7, 2014, after BPNA's California Assets were sold**

283. On December 17, 2014, (after BPNA sold its Chicago, Florida, and California Assets) BPNA stopped agreeing to continuances and now began demanding that the Court enforce a Deficiency Judgment against Gonzalez.

284. Significantly, prior to December 17, 2014, BPNA acquiesced to (18) Continuances, spanning approximately two and a half years beginning on June 13, 2012. Some

of the continuances where for 60 or even 90 days. It is apparent that BPNA's Attorney's agreed

to those continuances in order to provide cover for BPNA's unlawful transfer of assets. The

exact dates of the agreed to continuances are as follows:

    a. On November 20, 2012, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    b. On December 5, 2012, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    c. On March 5, 2013, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    d. On May 30, 2013, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    e. On July 11, 2013, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    f. On September 11, 2013, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    g. On November 13, 2013, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    h. On January 9, 2014, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    i. On March 27, 2014, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    j. On May 19, 2014, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    k. On June 25, 2014, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    l. On July 23, 2014, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    m. On August 20, 2014, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

    n. On September 23, 2014, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

o. On December 17, 2014, BPNA acquiesced to a continuance with no opposition and with no specific limitations.

**(23)** **Judge White orders the Mortgage Foreclosure case transferred back to Trial Court for the Second Time**

285.    On February 25, 2015, GONZALEZ filed a Motion to vacate the Deficiency

Judgment. In Response to that motion, on February 25, 2015, Judge White transferred the case

back to the Trial Court to evaluate the propriety of the Deficiency Judgment, as well as the

underlying Order of Default and Default Judgment of Foreclosure and Sale. BPNA not address

or deny any of the allegations set forth in GONZALEZ's Motion to Vacate.

**(24)** **BPNA's Third Attempt to Transfer the case to a different Judicial District and out of the Mortgage Foreclosure Section**

286.    Significantly during oral argument on February 25, 2015, after Judge White

Ordered the case to be transferred back to the trial Judge assigned to the appropriate Calendar in

the Mortgage Foreclosure Section in the Richard J. Daley Center, in Chicago Illinois. However,

BPNA again, for the third time, improperly demanded that the case be transferred to Associate

Judge Jeffrey Warnick, who no longer sat in the Mortgage Foreclosure Section, but was assigned

to a Judicial District in a different City.

**G. ADDITIONAL UNLAWFUL / OVERT ACTS BY AXELROD AND AXELROD LAW**

287.    On September 3, 2009, AXELROD, on behalf of his client IRIZARRY, intentionally filed a fraudulent breach of contract/account stated lawsuit against GONZALEZ (the "AXELROD LAWSUIT"), in violation of Supreme Court rule 137 and the Illinois Rules of Professional Conduct. As previously stated, BPNA subsequently conspired with AXELROD and AXELROD LAW in furtherance of that fraudulent lawsuit with the intent to further the aforesaid CIVIL CONSPIRACIES in question but also to (1) conceal and cover-up the present civil conspiracies; (2) forcibly silence and deprive GONZALEZ of his civil rights; and (3) unlawfully cause the statutes of limitations to expire.

288.    Pursuant to the AXELROD LAWSUIT, AXELROD intentionally aided his client in the commission of various torts including fraud pursuant to which a triple recovery for certain furniture items was obtained against GONZALEZ. This is evident due to the fact that AXELROD: (1) was indisputably aware that he (AXELROD) had filed a fraudulent case against GONZALEZ; (2) knowingly obtained a monetary judgment against GONZALEZ on that fraudulent claim; and (3) was indisputably aware that his client had already unlawfully removed the subject items from GONZALEZ COMMERCIAL CONDO before GONZALEZ filed his first motion to vacate the fraudulent lawsuit.

289.    This is further evidenced by the fact that on or before April 10, 2012, AXELROD was aware that his client, R&M had unlawfully removed the subject furniture in question which were the subject of the fraudulent AXELROD complaint. Which is demonstrated by the following facts:

> a.    On April 10, 2012, C&T LAW sent a motion to AXELROD via Facsimile as stated on the Service List from the BPNA case entitled, "John Leydon's Emergency Motion for Order Authorizing Removal and/or Storage of Certain Personal

102

Property". Paragraph 12 of that Motion states the following: "As a result of the removal of Ray's Collateral, a minor amount of items remained at the Premises".

b. In response to a Motion to Compel filed by counsel for GONZALEZ, on October 10, 2012, AXELROD provided a Response in which: (1) AXELROD admitted receiving the aforesaid motion, which stated that his client IRIZARRY removed the property without filing a replevin, and stated that ray removed the property at the direction of the bank. Specifically, that Response stated as follows:

"1. ***Plaintiff admits that it removed the property without filing a replevin. ***

***3. Upon inquiry of its attorney, Plaintiff admits that a copy of the Emergency Motion attached as Exhibit "A" was sent by FAX to its attorney.

4. "**Plaintiff states that it removed certain business property at the direction of the attorney for Banco Popular, and without consulting Plaintiff's attorney."***

290.    Thereafter, AXELROD intentionally committed at least seven (7) instances of "Fraud Upon the Court" during the adjudication of the following seven motions which GONZALEZ filed to dismiss the AXELROD CASE and vacate the Default Judgments against him [GONZALEZ]. During the presentation of the following motions, AXELROD each time intentionally misled the Court, as he misrepresented, concealed and suppressed material information and each time failed to vacate the judgment, which he legally was required to do:

a. On April 12, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

b. On April 16, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

c. On June 6, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

d. On July 24, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

e. On July 26, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

f. On September 9, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

g. On September 12, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

V.  **TOLLING OR NON-ACCRUAL OF STATUTES OF LIMITATION**

A.  **There Are No Statutes of Limitations Due the Fact That All Actions Stemmed from A Void Order as A Result of Multiple Instances of Fraud Upon the Court, a repeated Violation of GONZALEZ'S Due Process and a resulting Lack of Subject Matter Jurisdiction.**

291.  Plaintiffs incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

292.  As fully detailed in this Complaint, BPNA and C&T LAW in collusion with the rest of the CO-CONSPIRATORS, executed multiple instances of Fraud Upon the Court and repeatedly violated GONZALEZ Due Process Rights, resulting in part in a Lack of Subject Matter Jurisdiction.  Accordingly, all Judgements and Judgment Orders in the present case, including every transaction into which it entered are "VOID".

293.  Significantly, the fraudulent foreclosure action executed by C&T LAW and BPNA in furtherance of the aforesaid Bid-Rigging Scheme, which was one of the first and most critical components of the aforesaid CIVIL CONSPIRACIES to defraud GONZALEZ and his Businesses, was a result of an egregious violation of GONZALEZ's Due Process Rights and was one of various indisputable instances of Fraud Upon the Court committed by C&T LAW in collusion with BPNA, as fully detailed in this Complaint.

294.  As previously stated, on January 20, 2010, BPNA, through its Counsel, C&T LAW, filed a fraudulent Complaint to Foreclose on GONZALEZ COMMERCIAL CONDO in the Circuit Court of Cook County, naming GONZALEZ and GONZALEZ COMMERCIAL CONDO as the primary party Defendants.  The intent was to: (1) initiate a wrongful foreclosure; (2) force a sale of GONALEZ COMMERCIAL CONDO at public auction; and (3) effectuate a bid-rigging scheme.

295.   In furtherance of that scheme, BPNA in direct collusion with C&T LAW, intentionally made the following false assertions and omissions of material facts in its Complaint to Foreclose on GONZALEZ COMMERCIAL CONDO, and also in all supporting documentation and notices, including the Summons, Notices of Service by Publication as to GONZALEZ, and Notice of Service to the Secretary of State as to GONZALEZ COMMERCIAL CONDO:

a.  BPNA intentionally utilized an incorrect PIN Number of 17-06-234-044-0000 (hereinafter sometimes referred to as "044"). The true and correct PIN Number for the GONZALEZ COMMERCIAL CONDO is 17-06-234-071-0000 (hereinafter sometimes referred to as "071").

b.  BPNA intentionally utilized an incorrect Legal Description of GONZALEZ COMMERCIAL CONDO;

c.  BPNA failed to provide a Unit Number (Unit1) to identify GONZALEZ COMMERCIAL CONDO;

d.  BPNA fraudulently excluded the Commercial Parking from GONZALEZ COMMERCIAL CONDO Legal Description;

296.   These aforesaid false assertions of fact and omissions of material facts made by C&T LAW on behalf of BPNA where intentional and fraudulent. Pursuant to the following facts, it is indisputably evident that prior to filing their Complaint to foreclose on GONZALEZ COMMERCIAL CONDO, both BPNA and C&T LAW knew the correct information which they misrepresented and materially omitted:

a.  On December 9, 2008, William D. Bolsen, Vice President of Commercial Lending for BPNA, sent an email to GONZALEZ which acknowledged that PIN Number 17-06-234-071-0000 was the correct PIN Number for GONZALEZ COMMERCIAL CONDO. Mr. Bolsen also acknowledged in that email that BPNA was utilizing the wrong legal description. Mr. Bolsen specifically stated:

"I noticed in the file a note that indicates we need the legal description that is associated with the new PIN. Our title policy has the old PIN listed."

b.  On December 16, 2009, Acquest Title Services, Inc. sent a title commitment letter to BPNA and C&T LAW, at their request, which set forth that the properties PIN Number was 17-06-234-071-0000 for the tax year 2006. The aforesaid document states in pertinent part as follows:

"***17-06-234-071 (New for 2006 tax year) Volume: 583"

    c.  Significantly, on January 20, 2010, the date BPNA'S Attorneys filed the present Mortgage Foreclosure suit, BPNA recorded a "Lis Pendens" for that suit with the Cook County Recorder of Deeds. <u>That Lis Pendens was recorded against the correct PIN number of "17-06-234-071-0000".</u>

297.    The aforesaid example is just one of many instances of Fraud Upon the Court, which were perpetrated by C&T LAW and a C&T LAW Attorney, an officer of the Court. Furthermore, the aforesaid fraud upon the court was:

    a.  Intentionally false, willfully blind to the truth, and in reckless disregard of the truth;

    b.  Directed at the Judicial machinery, deceived the court, and prevented the judicial machinery from performing in the usual manner its impartial task of adjudging cases that were presented for adjudication, thereby perverting the course of justice;

    c.  As a direct and proximate result of Defendants' fraud upon the court (material omissions and fraudulent misrepresentations) Plaintiff has suffered an enormous amount of damages.

298.    "Fraud upon the Court" renders void all orders and judgments entered by the court defrauded. In other words, any attempt by an officer of the court to commit "fraud upon the court" vitiates the entire proceeding. Furthermore, the maxim that fraud vitiates every transaction into which it enters applies to judgments rendered by a circuit court as well as to contracts and other transactions.

299.    There is no statute of limitation to challenge a Void order. Since a void order has no legal force or effect there can be no time limit within which to challenge the order or judgment. Further since the order has no legal force or effect, it can be repeatedly challenged. Therefore, the Defendants should be prevented from asserting the statutes of limitation defense under any doctrine or theory.

**B.**   **Equitable Estoppel**

300.   The Plaintiffs incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

301.   The Defendants should be prevented from asserting the statute of limitation defense under the doctrine of equitable estoppel for the following reasons:

302.   The Defendants took "active steps" to prevent the Plaintiff from timely bringing suit including but not limited to the following:

    a.   BPNA maliciously conspired directly with AXELROD and AXELROD LAW by coordinating and executing the following unlawful acts with AXELROD: (1) two coordinated unlawful attempts to arrest GONZALEZ; (2) two instances of false imprisonment; (3) one instance of unlawful detainment for four days after being ordered released from Cook County Jail by the assigned Circuit Court Judge; (4) The entry of several unlawful body attachments which wrongfully restricted GONZALEZ's freedom for over nine months; (5) the fabrication of a rule to show cause and the obtaining of a body attachment based on that non-existent rule to show cause after the relevant case was dismissed with prejudice; (6) an attempt to extort GONZALEZ into signing a release/settlement agreement by threatening to arrest GONZALEZ which is currently ongoing, and (7) current repeated threats to falsely arrest and to criminally prosecute GONZALEZ; all as fully detailed in this Complaint;

    b.   After BPNA took possession of GONZALEZ COMMERCIAL CONDO and unlawfully evicted and executing GONZALEZ RESTAURANT, BPNA then stole and converted all of GONZALEZ assets, in direct violation of Cook County Sheriff orders and Cook County Judge Orders. For example, on October 4, 5, and 9, 2011, as evidenced by videotaped footage, photographs and witness testimony, various items belonging to GONZALEZ RESTAURANT (totaling at a minimum tens of thousands of dollars) were unlawfully removed from GONZALEZ COMMERCIAL CONDO by BPNA and/or its agents in concert of action with others. This was a specific act by BPNA and C&T LAW, in collusion with others, with the intent and which had the effect of preventing GONZALEZ from timely bringing suit by inflicting economic duress upon GONZALEZ by preventing GONZALEZ from selling those assets to properly obtain legal Counsel in a timely manner;

    c.   BPNA in coordination with C&T LAW and others, intentionally "spoiled" material evidence (which GONZALEZ had accumulated against the Defendants) through the theft, conversion and disposal of GONZALEZ documents, which were in the sole control and possession of BPNA. The theft and spoliation of evidence, was captured on video, witnessed, corroborated under oath by a BPNA Agent, and

reported to the Chicago Police. This was a specific act by the DEFENDANTS with the intent and which had the effect of forcibly preventing the PLAINTIFF'S from timely bringing suit;

d.  The Defendants fraudulently concealed and omitted evidence and material fact throughout the relevant time frame, as fully detailed in this Complaint;

e.  The Defendants committed various instances of Assault and Battery against GONZALEZ and his Associates, as fully detailed in this Complaint;

f.  The Defendants repeatedly misused legal proceedings and committed various instances of Abuse of Process, as fully detailed in this Complaint, with the intent to financially damage GONZALEZ and inflict economic duress. The specific intent was to prevent GONZALEZ from timely filing suit.

303.    The aforesaid deliberate, blameworthy and improper misconduct by the Defendants, caused the Plaintiffs to miss the statutory deadlines.

304.    The Defendants committed the aforesaid misconduct with the specific intent to prevent the PLAINTIFFS from timely filing suit.

305.    The PLAINTIFFS relied on the Defendant's aforesaid improper misconduct in deciding not to timely bring suit.

306.    The Plaintiffs "reasonably feared that the Defendants would make good on their threats including the repeated threats of arrests and subsequent criminal prosecution. This is clearly evident due to the fact that the Defendants had already repeatedly arrested Gonzalez and Gonzalez feared reporting the scheme because of the Defendants repeated threats to expose him to criminal prosecution and unlawful arrests.

307.    The Defendants obviously profited from their own repeated acts of wrongdoing in a court of justice as fully detailed in this Complaint as the Plaintiff was ultimately defrauded of his business and home.

308. All of the aforesaid Defendant's improper misconduct, which prevented the PLAINTIFF'S from timely bringing suit, is separate and distinct from the alleged wrong giving rise to the suit.

309. the Defendant wrongfully induced the PLAINTIFFS to refrain from timely commencing an action by fraud, deception, misrepresentations, concealment, threats or other misconduct, and some of the aforesaid conduct is on-going.

310. Therefore, the doctrine of equitable estoppel precludes the Defendants from asserting the statute of limitations Defense.

## C. **Tolling by Duress**

311. Plaintiffs incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

312. The Defendants should be prevented from asserting the statute of limitation defense under the doctrine of Tolling by Duress for the following reasons:

313. The Defendants took "active steps" to prevent the Plaintiff from timely bringing suit including but not limited to the following:

    a. BPNA maliciously conspired directly with AXELROD and AXELROD LAW by coordinating and executing the following unlawful acts with AXELROD: (1) two coordinated unlawful attempts to arrest GONZALEZ; (2) two instances of false imprisonment; (3) one instance of unlawful detainment for four days after being ordered released from Cook County Jail by the assigned Circuit Court Judge; (4) The entry of several unlawful body attachments which wrongfully restricted GONZALEZ's freedom for over nine months; (5) the fabrication of a rule to show cause and the obtaining of a body attachment based on that non-existent rule to show cause after the relevant case was dismissed with prejudice; (6) an attempt to extort GONZALEZ into signing a release/settlement agreement by threatening to arrest GONZALEZ, and (7) current repeated threats to falsely arrest and to criminally prosecute GONZALEZ; all as fully detailed in this Complaint;

    b. After BPNA took possession of GONZALEZ COMMERCIAL CONDO and unlawfully evicted GONZALEZ RESTAURANT, BPNA then stole and converted all of GONZALEZ assets, in direct violation of Cook County Sheriff orders and Cook County Judge Orders. For example, on October 4, 5, and 9, 2011, as

evidenced by videotaped footage, photographs and witness testimony, various items belonging to GONZALEZ RESTAURANT (totaling at a minimum tens of thousands of dollars) were unlawfully removed from GONZALEZ COMMERCIAL CONDO by BPNA and/or its agents in concert of action with others. This was a specific act by BPNA and C&T LAW, in collusion with others, with the intent and which had the effect of preventing GONZALEZ from timely bringing suit by inflicting economic duress upon GONZALEZ by preventing GONZALEZ from selling those assets to properly obtain legal Counsel in a timely manner;

c. BPNA in coordination with C&T LAW and others, intentionally "spoiled" material evidence (which GONZALEZ had accumulated against the Defendants) through the theft, conversion and disposal of GONZALEZ documents, which were in the sole control and possession of BPNA. The theft and spoliation of evidence, was captured on video, witnessed, corroborated under oath by a BPNA Agent, and reported to the Chicago Police. This was a specific act by the DEFENDANTS with the intent and which had the effect of forcibly preventing the PLAINTIFF'S from timely bringing suit;

d. The Defendants fraudulently concealed and omitted evidence and material fact throughout the relevant time frame, as fully detailed in this Complaint;

e. The Defendants committed various instances of Assault and Battery against GONZALEZ and his Associates, as fully detailed in this Complaint;

f. The Defendants repeatedly misused legal proceedings and committed various instances of Abuse of Process, as fully detailed in this Complaint, with the intent to financially damage GONZALEZ and inflict economic duress. The specific intent was to prevent GONZALEZ from timely filing suit.

314. The aforesaid deliberate, blameworthy and improper misconduct by the Defendants, caused the Plaintiff to miss the statutory deadline.

315. The Defendants committed the aforesaid misconduct with the specific intent to prevent the PLAINTIFFS from timely filing suit.

316. The PLAINTIFFS relied on the Defendant's aforesaid improper misconduct in deciding not to timely bring suit.

317. The Plaintiffs "reasonably feared that the Defendants would make good on their threats including the repeated threats of arrests and subsequent criminal prosecution. This is clearly evident due to the fact that the Defendants had already repeatedly arrested Gonzalez and

111

Gonzalez feared reporting the scheme because of the Defendants repeated threats to expose him to criminal prosecution and unlawful arrests.

318.    The Defendants obviously profited from their own repeated acts of wrongdoing in a court of justice as fully detailed in this Complaint as the Plaintiff was ultimately defrauded of his business and home.

319.    All of the aforesaid Defendant's improper misconduct, which prevented the PLAINTIFF'S from timely bringing suit, is separate and distinct from the alleged wrong giving rise to the suit.

320.    the Defendant wrongfully induced the PLAINTIFFS to refrain from timely commencing an action by fraud, deception, misrepresentations, concealment, threats or other misconduct, and some of the aforesaid conduct is on-going.

321.    Therefore, the doctrine Tolling by Duress precludes the Defendants from asserting the statute of limitations Defense.

**D.    Equitable Tolling – We did not obtain vital information until Ray gave us his affidavit exposing the entire conspiracy.**

322.    Plaintiffs incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

323.    The Defendants should be prevented from asserting the statute of limitation defense under the doctrine of Equitable Tolling for the following reasons:

324.    The Defendants took "active steps" to prevent the Plaintiff from timely bringing suit including but not limited to the following:

   a. BPNA maliciously conspired directly with AXELROD and AXELROD LAW by coordinating and executing the following unlawful acts with AXELROD: (1) two coordinated unlawful attempts to arrest GONZALEZ; (2) two instances of false imprisonment; (3) one instance of unlawful detainment for four days after being ordered released from Cook County Jail by the assigned Circuit Court Judge; (4)

112

The entry of several unlawful body attachments which wrongfully restricted GONZALEZ's freedom for over nine months; (5) the fabrication of a rule to show cause and the obtaining of a body attachment based on that non-existent rule to show cause after the relevant case was dismissed with prejudice; (6) an attempt to extort GONZALEZ into signing a release/settlement agreement by threatening to arrest GONZALEZ, and (7) current repeated threats to falsely arrest and to criminally prosecute GONZALEZ; all as fully detailed in this Complaint;

b. After BPNA took possession of GONZALEZ COMMERCIAL CONDO and unlawfully evicted GONZALEZ RESTAURANT, BPNA then stole and converted all of GONZALEZ assets, in direct violation of Cook County Sheriff orders and Cook County Judge Orders. For example, on October 4, 5, and 9, 2011, as evidenced by videotaped footage, photographs and witness testimony, various items belonging to GONZALEZ RESTAURANT (totaling at a minimum tens of thousands of dollars) were unlawfully removed from GONZALEZ COMMERCIAL CONDO by BPNA and/or its agents in concert of action with others. This was a specific act by BPNA and C&T LAW, in collusion with others, with the intent and which had the effect of preventing GONZALEZ from timely bringing suit by inflicting economic duress upon GONZALEZ by preventing GONZALEZ from selling those assets to properly obtain legal Counsel in a timely manner;

c. BPNA in coordination with C&T LAW and others, intentionally "spoiled" material evidence (which GONZALEZ had accumulated against the Defendants) through the theft, conversion and disposal of GONZALEZ documents, which were in the sole control and possession of BPNA. The theft and spoliation of evidence, was captured on video, witnessed, corroborated under oath by a BPNA Agent, and reported to the Chicago Police. This was a specific act by the DEFENDANTS with the intent and which had the effect of forcibly preventing the PLAINTIFF'S from timely bringing suit;

d. The Defendants fraudulently concealed and omitted evidence and material fact throughout the relevant time frame, as fully detailed in this Complaint;

e. The Defendants committed various instances of Assault and Battery against GONZALEZ and his Associates, as fully detailed in this Complaint;

f. The Defendants repeatedly misused legal proceedings and committed various instances of Abuse of Process, as fully detailed in this Complaint, with the intent to financially damage GONZALEZ and inflict economic duress. The specific intent was to prevent GONZALEZ from timely filing suit.

325. The aforesaid deliberate, blameworthy and improper misconduct by the Defendants, caused the Plaintiff to miss the statutory deadline.

113

326. The Defendants committed the aforesaid misconduct with the specific intent to prevent the PLAINTIFFS from timely filing suit.

327. The PLAINTIFFS relied on the Defendant's aforesaid improper misconduct in deciding not to timely bring suit.

328. The Plaintiffs reasonably feared that the Defendants would make good on their threats including the repeated threats of arrests and subsequent criminal prosecution. This is clearly evident due to the fact that the Defendants had already repeatedly arrested Gonzalez and Gonzalez feared reporting the scheme because of the Defendants repeated threats to expose him to criminal prosecution and unlawful arrests.

329. The Defendants obviously profited from their own repeated acts of wrongdoing in a court of justice as fully detailed in this Complaint as the Plaintiff was ultimately defrauded of his business and home.

330. All of the aforesaid Defendant's improper misconduct, which prevented the PLAINTIFF'S from timely bringing suit, is separate and distinct from the alleged wrong giving rise to the suit.

331. The Defendants wrongfully induced the PLAINTIFFS to refrain from timely commencing an action by fraud, deception, misrepresentations, concealment, threats or other misconduct, and some of the aforesaid conduct is on-going.

332. Therefore, the doctrine of equitable tolling precludes the Defendants from asserting the statute of limitations Defense.

**CLAIMS FOR RELIEF BY ANASTACIO GONZALEZ, GONZALEZ RESTAURANT, AND GONZALEZ COMMERCIAL CONDO JOINTLY OR IN THE ALTERNATIVE INDIVIDUALLY, AGAINST ALL PLAINTIFFS JOINTLY AND SEVERALLY AS WELL AS IN THEIR INDIVIDUAL CAPACITY**

## COUNT I
## FRAUD UPON THE COURT
(GONZALEZ WAS DEFRAUDED OF GONZALEZ RESIDENTIAL CONDO AND GONZALEZ ROOFTOP PARCEL)

(ALL PLAINTIFFS v. DPT CONDO, DPT CONDO PRESIDENT, DPT CONDO SECRETARY, KOVITZ, SHIFRIN & NESBIT)

333.    Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

334.    The DPT CONDO SECRETARY, DPT CONDO PRESIDENT and its Counsel, KOVITZ, SHIFRIN & NESBIT committed various instances of Fraud Upon the Court on behalf of the DPT CONDO, as more fully detailed in this Complaint, including but not limited to the following:

> a. KOVITZ, SHIFRIN & NESBIT, intentionally filed a malicious and fraudulent lawsuit on behalf of the DPT CONDO which was directed against GONZALEZ, in direct collusion with BALL as the DPT CONDO PRESIDENT, and STONE as the DPT CONDO SECRETARY. That lawsuit fraudulently alleged that GONZALEZ owed the DPT CONDO certain monies for assessments, and which demanded possession through the Forcible Entry and Detainer Act.

> b. Significantly, the DPT CONDO did not provide any credible evidence and all of their Verified complaints alleged different amounts owed by GONZALEZ (from $5650.00 to $11,735.00). However, through the intentional submission of false pleadings by KOVITZ, SHIFRIN & NESBIT and perjured testimony under oath by the DPT CONDO PRESIDENT, the DPT CONDO wrongfully obtained possession of GONZALEZ RESIDENTIAL CONDO.

335.    The aforesaid Fraud Upon the Court, as described more fully in this Complaint, was perpetrated by the aforesaid officers of the Court.

336.    The misconduct by the Defendants described herein constitutes willful and wanton disregard for the rights of the PLAINTIFFS, was intentionally false, willfully blind to the truth, and in reckless disregard for the truth.

337.    The fraud was directed at the judicial machinery, deceived the court, and prevented the judicial machinery from performing in the usual manner its impartial task of adjudging cases that were presented for adjudication.

338.    As a direct and proximate result of the aforesaid Defendants' material omissions and fraudulent misrepresentations, the Plaintiff was defrauded of GONZALEZ RESIDENTIAL CONDO, and GONZALEZ ROOFTOP PARCEL/ aka GONZALEZ ROOFTOP CONDO and has suffered damages in an amount to be determined at trial, but which is not less than $4,000,000.00.

339.    The aforesaid Defendants' frauds and other misconduct upon the Plaintiffs and the Judiciary for their financial benefit is reprehensible, unconscionable, outrageous and demands serious punitive damages to deter Defendants from further harming the PLAINTIFFS and the public and deceiving the judiciary.

### PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiffs, respectfully request that this Court enter judgment in the Plaintiffs favor and against the Defendants as follows:

> A. VOID the Judgment of Foreclosure and Sale of GONZALEZ RESIDENTIAL CONDO, and every transaction into which it entered;
>
> B. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and
>
> C. Any other relief this Court deems appropriate and just.

**COUNT II**
**FRAUD UPON THE COURT**
(GONZALEZ WAS DEFRAUDED OF GONZALEZ COMMERCIAL CONDO)

(ALL PLAINTIFFS v. BPNA and C&T LAW and C&T LAW Attorneys')

340.    Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

341.    BPNA's Counsel, C&T LAW, in collusion with BPNA and other CO-CONSPIRATORS, committed various instances of Fraud Upon the Court on behalf of BPNA, as more fully detailed in this Complaint, including but not limited to the following:

342.    As previously stated, on January 20, 2010, BPNA, through its Counsel, C&T LAW, filed a fraudulent Complaint to Foreclose on GONZALEZ COMMERCIAL CONDO in the Circuit Court of Cook County, naming GONZALEZ and GONZALEZ COMMERCIAL CONDO as the primary party Defendants.  The intent was to: (1) initiate a wrongful foreclosure; (2) force a sale of GONALEZ COMMERCIAL CONDO at public auction; and (3) effectuate a bid-rigging scheme.

343.    In furtherance of that scheme, BPNA in direct collusion with C&T LAW, intentionally made the following false assertions and omissions of material facts in its Complaint to Foreclose on GONZALEZ COMMERCIAL CONDO, and also in all supporting documentation and notices, including the Summons, Notices of Service by Publication as to GONZALEZ, and Notice of Service to the Secretary of State as to GONZALEZ COMMERCIAL CONDO:

        a.  BPNA intentionally utilized an incorrect PIN Number of 17-06-234-044-0000 (hereinafter sometimes referred to as "044"). The true and correct PIN Number for the GONZALEZ COMMERCIAL CONDO is 17-06-234-071-0000 (hereinafter sometimes referred to as "071").

        b.  BPNA intentionally utilized an incorrect Legal Description of GONZALEZ COMMERCIAL CONDO;

     c. BPNA failed to provide a Unit Number (Unit1) to identify GONZALEZ COMMERCIAL CONDO;

     d. BPNA fraudulently excluded the Commercial Parking from GONZALEZ COMMERCIAL CONDO Legal Description;

344.    These aforesaid false assertions of fact and omissions of material facts made by

C&T LAW on behalf of BPNA where <u>intentional and fraudulent</u>. Pursuant to the following facts,

it is indisputably evident that prior to filing their Complaint to foreclose on GONZALEZ

COMMERCIAL CONDO, both BPNA and C&T LAW knew the correct information which they

misrepresented and materially omitted:

     a. On December 9, 2008, William D. Bolsen, Vice President of Commercial Lending for BPNA, sent an email to GONZALEZ which acknowledged that PIN Number 17-06-234-071-0000 was the correct PIN Number for GONZALEZ COMMERCIAL CONDO. Mr. Bolsen also acknowledged in that email that BPNA was utilizing the wrong legal description. Mr. Bolsen specifically stated:

          "I noticed in the file a note that indicates <u>we need the legal description that is associated with the new PIN</u>. Our title policy has the old PIN listed."

     b. On December 16, 2009, Acquest Title Services, Inc. sent a title commitment letter to BPNA and C&T LAW, at their request, which set forth that the properties PIN Number was 17-06-234-071-0000 for the tax year 2006. The aforesaid document states in pertinent part as follows:

          "***17-06-234-071 (New for 2006 tax year) Volume: 583"

     c. Significantly, on January 20, 2010, the date BPNA'S Attorneys filed the present Mortgage Foreclosure suit, BPNA recorded a "Lis Pendens" for that suit with the Cook County Recorder of Deeds. <u>That Lis Pendens was recorded against the correct PIN number of "17-06-234-071-0000"</u>.

345.    The aforesaid Fraud Upon the Court, as described more fully in this Complaint, was

perpetrated by the aforesaid officers of the Court.

346.    The misconduct by the Defendants described herein constitutes willful and wanton

disregard for the rights of the PLAINTIFFS, was intentionally false, willfully blind to the truth,

and in reckless disregard for the truth.

347. The fraud was directed at the judicial machinery, deceived the court, and prevented the judicial machinery from performing in the usual manner its impartial task of adjudging cases that were presented for adjudication.

348. As a direct and proximate result of the aforesaid Defendants' material omissions and fraudulent misrepresentations, the Plaintiff was defrauded of GONZALEZ COMMERCIAL CONDO and has suffered damages in an amount to be determined at trial, but which is not less than $4,000,000.00.

349. The aforesaid Defendants' frauds and other misconduct upon the Plaintiffs and the Judiciary for their financial benefit is reprehensible, unconscionable, outrageous and demands serious punitive damages to deter Defendants from further harming the PLAINTIFFS and the public and deceiving the judiciary.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiffs respectfully request the following relief from this court:

      A. VOID the Judgment of Foreclosure and Sale of GONZALEZ COMMERCIAL CONDO, and every transaction into which it entered;

      B. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

      C. Any other relief this Court deems appropriate and just.

## COUNT III
## FRAUD UPON THE COURT
(GONZALEZ WAS DEFRAUDED OF GONZALEZ RESTAURANT)

(ALL PLAINTIFFS v. BPNA and C&T LAW and C&T LAW Attorneys)

350.     Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

351.     BPNA's Counsel, C&T LAW, in collusion with BPNA and other CO-CONSPIRATORS, committed various instances of Fraud Upon the Court on behalf of BPNA, as more fully detailed in this Complaint, including but not limited to the following:

352.     As previously stated, on January 20, 2010, BPNA, through its Counsel, C&T LAW, filed a fraudulent Complaint to Foreclose on GONZALEZ COMMERCIAL CONDO in the Circuit Court of Cook County, naming GONZALEZ and GONZALEZ COMMERCIAL CONDO as the primary party Defendants. The intent was to: (1) initiate a wrongful foreclosure; (2) force a sale of GONALEZ COMMERCIAL CONDO at public auction; and (3) effectuate a bid-rigging scheme.

353.     In furtherance of that scheme, BPNA in direct collusion with C&T LAW, intentionally made the following false assertions and omissions of material facts in its Complaint to Foreclose on GONZALEZ COMMERCIAL CONDO, and also in all supporting documentation and notices, including the Summons, Notices of Service by Publication as to GONZALEZ, and Notice of Service to the Secretary of State as to GONZALEZ COMMERCIAL CONDO:

   a. BPNA intentionally utilized an incorrect PIN Number of 17-06-234-044-0000 (hereinafter sometimes referred to as "044"). The true and correct PIN Number for the GONZALEZ COMMERCIAL CONDO is 17-06-234-071-0000 (hereinafter sometimes referred to as "071").

   b. BPNA intentionally utilized an incorrect Legal Description of GONZALEZ COMMERCIAL CONDO;

   c. BPNA failed to provide a Unit Number (Unit1) to identify GONZALEZ COMMERCIAL CONDO;

   d. BPNA fraudulently excluded the Commercial Parking from GONZALEZ COMMERCIAL CONDO Legal Description;

354. These aforesaid false assertions of fact and omissions of material facts made by
C&T LAW on behalf of BPNA where <u>intentional and fraudulent</u>. Pursuant to the following facts,
it is indisputably evident that prior to filing their Complaint to foreclose on GONZALEZ
COMMERCIAL CONDO, both BPNA and C&T LAW knew the correct information which they
misrepresented and materially omitted:

      a. On December 9, 2008, William D. Bolsen, Vice President of Commercial Lending
         for BPNA, sent an email to GONZALEZ which acknowledged that PIN Number
         17-06-234-071-0000 was the correct PIN Number for GONZALEZ
         COMMERCIAL CONDO. Mr. Bolsen also acknowledged in that email that BPNA
         was utilizing the wrong legal description. Mr. Bolsen specifically stated:

              "I noticed in the file a note that indicates <u>we need the legal description that
              is associated with the new PIN</u>. Our title policy has the old PIN listed."

      b. On December 16, 2009, Acquest Title Services, Inc. sent a title commitment letter
         to BPNA and C&T LAW, at their request, which set forth that the properties PIN
         Number was 17-06-234-071-0000 for the tax year 2006. The aforesaid document
         states in pertinent part as follows:

              "***17-06-234-071 (New for 2006 tax year) Volume: 583"

      c. Significantly, on January 20, 2010, the date BPNA'S Attorneys filed the present
         Mortgage Foreclosure suit, BPNA recorded a "Lis Pendens" for that suit with the
         Cook County Recorder of Deeds. <u>That Lis Pendens was recorded against the
         correct PIN number of "17-06-234-071-0000"</u>.

355. The aforesaid Fraud Upon the Court, as described more fully in this Complaint, was
perpetrated by the aforesaid officers of the Court.

356. The misconduct by the Defendants described herein constitutes willful and wanton
disregard for the rights of the PLAINTIFFS, was intentionally false, willfully blind to the truth,
and in reckless disregard for the truth.

357. The fraud was directed at the judicial machinery, deceived the court, and prevented
the judicial machinery from performing in the usual manner its impartial task of adjudging cases
that were presented for adjudication.

358. As a direct and proximate result of the aforesaid Defendants' material omissions and fraudulent misrepresentations, the Plaintiff was defrauded of GONZALEZ RESTAURANT and has suffered damages in an amount to be determined at trial, but which is not less than $4,000,000.00.

359. The aforesaid Defendants' frauds and other misconduct upon the Plaintiffs and the Judiciary for their financial benefit is reprehensible, unconscionable, outrageous and demands serious punitive damages to deter Defendants from further harming the PLAINTIFFS and the public and deceiving the judiciary.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiffs respectfully request the following relief from this court:

A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

B. Any other relief this Court deems appropriate and just.

## COUNT IV
## FRAUD UPON THE COURT
(GONZALEZ WAS DEFRAUDED OF CERTAIN ASSETS AND MONIES)

(ALL PLAINTIFSS v. AXELROD AND AXELROD LAW)

360. Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

361. AXELROD intentionally committed at least seven (7) instances of "Fraud Upon the Court" during the adjudication of the following seven motions which GONZALEZ filed to dismiss the AXELROD CASE and vacate the Default Judgments against him [GONZALEZ]. During the presentation of the following motions, AXELROD each time intentionally misled the

Court, as he misrepresented, concealed and suppressed material information and each time failed

to vacate the judgment, which he legally was required to do:

      a. On April 12, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

      b. On April 16, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

      c. On June 6, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

      d. On July 24, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

      e. On July 26, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

      f. On September 9, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

      g. On September 12, 2012, GONZALEZ appeared in Court and requested the Court to vacate the AXELROD CASE. However, AXELROD misrepresented, concealed and suppressed material information and failed to vacate the judgment and case against GONZALEZ, which he legally was required to do.

362. The aforesaid Fraud Upon the Court, as described more fully in this Complaint, was

perpetrated by the aforesaid officer of the Court.

363.     The misconduct by the Defendants described herein constitutes willful and wanton disregard for the rights of the PLAINTIFFS, was intentionally false, willfully blind to the truth, and in reckless disregard for the truth.

364.     The fraud was directed at the judicial machinery, deceived the court, and prevented the judicial machinery from performing in the usual manner its impartial task of adjudging cases that were presented for adjudication.

365.     As a direct and proximate result of the aforesaid Defendants' material omissions and fraudulent misrepresentations, the Plaintiff was defrauded of certain assets and has suffered damages in an amount to be determined at trial, but which is not less than $4,000,000.00.

366.     The aforesaid Defendants' frauds and other misconduct upon the Plaintiffs and the Judiciary for their financial benefit is reprehensible, unconscionable, outrageous and demands serious punitive damages to deter Defendants from further harming the PLAINTIFFS and the public and deceiving the judiciary.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiffs respectfully request the following relief from this court:

> A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and
>
> B. Any other relief this Court deems appropriate and just.

## COUNT V
## VIOLATION OF DUE PROCESS
(GONZALEZ WAS DEFRAUDED OF HIS RESIDENTIAL CONDO

(ALL PLAINTIFFS v. DPT CONDO, DPT CONDO PRESIDENT, DPT CONDO SECRETARY, KOVITZ, SHIFRIN & NESBIT)

124

367.    Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

368.    As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as within the scope of their employment where relevant, deprived the Plaintiffs of their constitutional rights to a fair trial.

369.    In the manner described for fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

370.    The Defendants misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

371.    As a result of this violation of his constitutional right to a fair trial, the Plaintiffs suffered injuries including but not limited to emotional distress, as is more fully alleged above.

372.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

373.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department.

## **PRAYER FOR RELIEF**

**WHEREFORE,** for the reasons stated above, the defendant, GONZALEZ, respectfully requests the following relief from this court:

> A. VOID the Judgment of Foreclosure and Sale of GONZALEZ RESIDENTIAL CONDO and every transaction into which it entered.

B. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

C. Any other relief this Court deems appropriate and just.

## COUNT VI
## VIOLATION OF DUE PROCESS

(GONZALEZ WAS DEFRAUDED OF GONZALEZ COMMERCIAL CONDO)

(ALL PLAINTIFFS v. BPNA and C&T LAW and C&T LAW Attorneys')

374.    Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs as if though fully set forth herein.

375.    As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as within the scope of their employment where relevant, deprived the Plaintiffs of their constitutional rights to a fair trial.

376.    In the manner described for fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

377.    The Defendants misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

378.    As a result of this violation of his constitutional right to a fair trial, the Plaintiffs suffered injuries including but not limited to emotional distress, as is more fully alleged above.

379.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

380.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department.

## **PRAYER FOR RELIEF**

**WHEREFORE**, for the reasons stated above, the Plaintiffs, respectfully request that this Court enter judgment in the Plaintiffs favor and against the Defendants as follows:

> A. VOID the Judgment of Foreclosure and Sale of GONZALEZ COMMERCIAL CONDO and every transaction into which it entered.
>
> B. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and
>
> C. Any other relief this Court deems appropriate and just.

## **COUNT VII**
## **VIOLATION OF DUE PROCESS**
(GONZALEZ WAS DEFRAUDED OF GONZALEZ RESTAURANT)

(ALL PLAINTIFFS v. BPNA and C&T LAW and C&T LAW Attorneys)

381.     Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

382.     As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as within the scope of their employment where relevant, deprived the Plaintiffs of their constitutional rights to a fair trial.

383.     In the manner described for fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading

127

and misdirecting the criminal prosecution of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

384.   The Defendants misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

385.   As a result of this violation of his constitutional right to a fair trial, the Plaintiffs suffered injuries including but not limited to emotional distress, as is more fully alleged above.

386.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

387.   The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiffs respectfully requests the following relief from this court:

> A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and
>
> B. Any other relief this Court deems appropriate and just.

## COUNT VIII
## VIOLATION OF DUE PROCESS
(GONZALEZ WAS DEFRAUDED OF CERTAIN MONIES AND ASSETS)

(PLAINTIFFS v. AXELROD)

388.     Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

389.     As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as within the scope of their employment where relevant, deprived the Plaintiffs of their constitutional rights to a fair trial.

390.     In the manner described for fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

391.     The Defendants misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

392.     As a result of this violation of his constitutional right to a fair trial, the Plaintiffs suffered injuries including but not limited to emotional distress, as is more fully alleged above.

393.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

394.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiffs respectfully requests the following relief from this court:

> A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive

damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

B. Any other relief this Court deems appropriate and just.

## COUNT IX
## VIOLATION OF THE SHERMAN ACT and CLAYTON ACT – BID RIGGING
(PLAINTIFFS v. ALL DEFENDANTS)

### Background

395. Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

396. After STONE, BALL, LEYDON and the DPT CONDO, working along with other CO-CONSPIRATORS, accomplished their initial goal of maliciously forcing GONZALEZ COMMERCIAL CONDO to fall behind in its mortgage payments, they began to fully conspire with BPNA and C&T LAW, to effectuate their scheme. Their specific intent was to: (1) initiate a wrongful foreclosure; (2) force a sale of GONALEZ COMMERCIAL CONDO at public auction; and (3) effectuate a bid-rigging scheme so that the property could be purchased by one of the CO-CONSPIRATORS at a price far below the fair market value.

397. BPNA and C&T LAW then effectuated a bid-rigging scheme in direct violation of the Sherman Act. In furtherance of that scheme BPNA and C&T LAW: (1) suppressed competitive bidding; (2) artificially suppressed the price of GONZALEZ COMMERCIAL CONDO; (3) fraudulently purchased GONZALEZ COMMERCIAL CONDO at a non-competitive price and at a deep discount at the Court ordered public auction; and (4) transferred GONZALEZ COMMERCIAL CONDO to LEYDON, one of the CO-CONSPIRATORS, at or below that same non-competitive purchase price, in direct violation of the Uniform Fraudulent Transfer Act.

398. Accordingly, GONZALEZ was not only defrauded of GONZALEZ COMMERCIAL CONDO, but he was also defrauded of any remaining surplus. Furthermore, the

IRS and government agencies, both state and federal, were also defrauded from the proper amount of taxes that should have been paid, had the property sold for the appropriate amount.

**Defendants and Co-Conspirators**

399.    As detailed more fully above, all of the DEFENDANTS, and various entities and individuals not made Defendants in this Information, participated as CO-CONSPIRATORS in the offenses charged in this information and performed acts and made statements in furtherance of them.

400.    The DEFENDANTS and UNKNOWN DEFENDANTS are jointly and severaly liable for the acts of their CO-CONSPIRATORS, whether named or not named as Defendants in this complaint.

401.    Each Defendant acted as the agent or joint venturer of or for other Defendants with respect to the acts, violation and common course of the conduct alleged by the Plaintiffs.

**Description of the Offense / Means and Methods**

402.    Beginning as early as April 2006 and continuing until in the present time, the DEFENDANTS and CO-CONSPIRATORS entered into and engaged in a combination and conspiracy to suppress and restrain competition by rigging bids to obtain title to GONZALEZ COMMERCIAL CONDO offered at Chicago, Illinois at a public real estate foreclosure auction, in unreasonable restraint of interstate trade and commerce, in violation of the Sherman Act, Title 15, United States Code, Section 1.

403.    For the purpose of forming and carrying out the charged combination and conspiracy, the DEFENDANTS and CO-CONSPIRATORS did those things that they combined and conspired to do, including but not limited to the following, among other things:

**Unlawful Suppression of Competitive Bidding**

131

404.    BPNA in direct collusion with C&T LAW, intentionally made the following false assertions and omissions of material facts in its Certificate of Publication and Notice of Sale at Public Auction for GONZALEZ COMMERCIAL CONDO, which had the effect of unlawfully concealing the sale of GONZALEZ COMMERCIAL CONDO from certain potential bidders at said public auction, and also unlawfully suppressed competitive bidding:

      a.  BPNA intentionally utilized an incorrect PIN Number of 17-06-234-044-0000, "044" for GONZALEZ COMMERCIAL CONDO;

      b.  BPNA intentionally utilized an incorrect Legal Description of GONZALEZ COMMERCIAL CONDO;

      c.  BPNA failed to provide a Unit Number (Unit 1) to identify GONZALEZ COMMERCIAL CONDO from the other three condominium units in the SUBJECT BUILDING;

      d.  BPNA fraudulently excluded the Commercial Parking from GONZALEZ COMMERCIAL CONDO Legal Description;

      e.  BPNA fraudulently concealed and failed to list the substantial improvements to GONZALEZ GOMMERCIAL CONDO; and

      f.  Improperly refused to allow GONZALEZ COMMERCIAL CONDO to be inspected prior to the Judicial Sale being conducted.

405.    The unlawful suppression of competitive bidding is also clearly demonstrated by the following search result for the listed invalid PIN number of 17-06-234-044-0000, which was conducted via the Lawyers Committee for Better Housing (LCBH) Website as of February 9, 2010, which website sets forth the following information:

> "The listed PIN is not associated with the listed address in CN (Case Number) or CCA (Cook County Assessors) online records. There is no result for the listed address and there is no Lis Pendens associated with the parties listed on this record".

406.    Pursuant to the above mentioned search result and the following reasons, it is clearly apparent that this is additional material evidence that competitive bidding was fraudulently suppressed by BPNA and C&T LAW;

a. The first part of the search result which reads: "The listed PIN is not associated with the listed address in CN (Case Number)",clearly demonstrates that the fraudulent "044" PIN utilized by BPNA is not associated with the actual address of GONZALEZ COMMERCIAL CONDO;

b. The second part of the search result which reads: "The listed PIN is not associated with the CCA (Cook County Assessors) online records" clearly demonstrates that the fraudulent "044" PIN utilized by BPNA does not exist in the Cook County Assessors Records;

c. The third part of the search result which reads: "There is no result for the listed address"; clearly demonstrates that the address listed in BPNA's Complaint to Foreclose on GONZALEZ COMMERCIAL CONDO is not associated with the fraudulent "044" PIN utilized by BPNA's Complaint to Foreclose; and

d. The fourth part of the above mentioned search result which reads: "there is no Lis Pendens associated with the parties listed on this record", clearly demonstrates that the parties are not connected to the fraudulent "044" PIN utilized by BPNA in its Complaint to Foreclose, and that although BPNA listed the PIN as "044", it did not record a Lis Pendens on "044" but rather fraudulently recorded the Lis Pendens on a different PIN.

407.   Furthermore, a search for the invalid PIN Number of 17-06-234-044-000, conducted via the Cook County Assessors Website returns the following statement:

"PIN not found.  Please re-enter".

## Unlawful Artificial Suppression of the Price of GONZALEZ COMMERCIAL CONDO

408.   BPNA and C&T LAW also intentionally artificially suppressed the price of GONZALEZ COMMERCIAL CONDO as clearly demonstrated by the following facts:

d. Although GONZALEZ COMMERCIAL CONDO included a private indoor parking spot, BPNA and C&T LAW excluded the Commercial Parking from the legal description on all foreclosure and auction related documents and notices. The legal description utilized by BPNA for GONZALEZ COMMERCIAL CONDO stated in pertinent part as follows:

"ALSO COMMERCIAL PARKING: AND ALSO EXCEPTING THAT PROPERTY AND SPACE***".

e. BPNA and C&T LAW also unlawfully concealed and failed to list the substantial improvements to GONZALEZ COMMERCIAL CONDO in the Notice of Sale for the public auction, by merely stating:

"the real estate is improved with a commercial property".

f. Furthermore, BPNA refused to open GONZALEZ COMMERCIAL CONDO for inspection by potential bidders prior to the court ordered public auction and misrepresented the condition of the property by implication. The Notice of Sale specifically stated:

"The property will NOT be open for inspection and plaintiff makes no representation as to the condition of the property".

## Fraudulent Purchase of GONZALEZ COMMERCIAL CONDO by BPNA at a Non-competitive Price

409.    On August 30, 2010, the Judicial Sale of GONZALEZ COMMERCIAL CONDO

was held at which BPNA was the successful bidder and was granted a Certificate of Sale. Pursuant

to the aforementioned bid-rigging scheme, BPNA was able to purchase GONZALEZ

COMMERCIAL CONDO considerably under market value for $441,600.00. At the time BPNA

purchased GONZALEZ COMMERCIAL CONDO, it is estimated that the fair market value of

that property was approximately $2,000,000.00, which is clearly demonstrated by the following

evidence:

d. On January 5, 2007, BPNA ordered and obtained an appraisal for GONZALEZ COMMERCIAL CONDO, from R. J. Schmitt & Associates Appraisers and Consultants. At the time, the appraised value was determined to be Nine-Hundred-Thousand-Dollars ($900,000.00) in the totally raw and unimproved state as depicted in the first picture below which was extracted directly from the appraisal. (See next page for this picture)

410.    Subsequently, GONZALEZ COMMERCIAL CONDO was fully improved with at

least $1,200,000.00 worth of improvements, as depicted in the second photograph below (See

pages above for this picture). Therefore, the value of the property on August 30, 2010, at the time

BPNA purchased it, was estimated to be approximately $2,000,000.00

## Unlawful material alteration and recording of the Judicial Sale Deed with Cook County Recorder of Deeds

411.    On December 10, 2010, BPNA was granted the Judicial Sale Deed for GONZALEZ COMMERCIAL CONDO.

412.    However, due to the fact that BPNA intentionally utilized the wrong PIN Number of 17-06-234-044-0000 on all foreclosure related documentation and supporting documents including the Notice of Sale at public auction, said official Judicial Sale Deed was executed for the incorrect and nonexistent PIN Number of 17-06-234-044-000.

413.    Sometime between December 10, 2010 and December 15, 2010, BPNA, in collusion with C&T LAW, forged and materially altered the Judicial Sale Deed through the act of crossing out the incorrect and non-existent PIN Number of 17-06-234-044-0000 on the Judicial Sale Deed, and adding the correct PIN Number of 17-06-234-071-000. Upon information and belief, this alteration was directly approved by BPNA.

414.    On December 15, 2010, said forged and materially altered Judicial Sale Deed, which was directly based on the non-existent PIN number of 17-06-234-044-0000 at the time of the Sale, was recorded by C&T LAW with the Cook County Recorder of Deeds against the correct PIN Number of 17-06-234-071-0000 in an intentional attempt to cover-up and conceal such fraudulent acts by BPNA in collusion with their counsel, C&T LAW. It is significant to note that as of October14, 2014, Aron from the Judicial Sales Corporation, confirmed that the Judicial Sale Deed which they have on record, still bears the fraudulent "044" PIN Number.

**Transfer of GONZALEZ COMMERCIAL CONDO to CO-CONSPIRATOR LEYDON, in violation of the Uniform Voidable Transactions Act**

415.    After BPNA took possession of GONZALEZ COMMERCIAL CONDO, BPNA, in collusion with its Agent and others, unlawfully converted all of GONZALEZ RESTAURANT personalty in direct violation of orders issued by the Circuit Court of Cook County and by Cook

County Sheriff. The aforementioned theft was captured on video and confirmed and testified to under oath by ZUCKER, BPNA'S own Agent.

416.   Thereafter, BPNA Fraudulently sold GONZALEZ COMMERCIAL CONDO and all of GONZALEZ RESTAURANT personalty to LEYDON, at a deep discount and in violation of the Illinois Uniform Fraudulent Transfer Act, Orders by the Circuit Court of Cook County and the Cook County Sheriff. Significantly the sale was effectuated after GONZALEZ had filed a lawsuit and had encumbered title to GONZALEZ COMMERCIAL CONDO by filing a lis pendens, and after GONZALEZ had also filed a lien in the amount of $1,500,000.00;

417.   Significantly, BPNA and C&T LAW aided and abetted LEYDON in a mortgage fraud scheme to enable LEYDON to purchase GONZALEZ COMMERCIAL CONDO from BPNA. Significantly, LEYDON apparently pledged GONZALEZ RESTAURANT personalty, which he did not own, and represented clear and marketable title in order to obtain the loan to purchase GONZALEZ COMMERCIAL CONDO from BPNA. BPNA was well aware of their fraudulent representations made by LEYDON. It is also important to note that, LEYDON was captured on video accessing GONZALEZ COMMERCIAL CONDO with his own set of keys on at least two occasions both of which were prior to the time BPNA sold GONZALEZ COMMERCIAL CONDO to LEYDON; and (2) During the sale of GONZALEZ COMMERCIAL CONDO to LEYDON, C&T LAW became LEYDONS Attorney.

418.   The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the DEFENDANTS and CO-CONSPIRATORS to suppress competition by suppressing competitive bidding and artificially suppressing the price of GONZALEZ COMMERCIAL CONDO to obtain title to GONZALEZ COMMERCIAL CONDO offered at an Illinois public real estate foreclosure auctions at a non-competitive price.

136

**Mail/Wire Fraud**

419. The DEFENDANTS and CO-CONSPIRATORS conspired to use the U.S. mail to carry out a fraudulent scheme to acquire title to the aforesaid rigged foreclosure property (GONZALEZ COMMERCIAL CONDO) sold at the aforesaid public auction at the aforesaid artificially suppressed and non-competitive price, and to cause financial institutions, homeowners and others with a legal interest in rigged foreclosure properties to receive less than the competitive price for the properties. The conspirators participated in the bid-rigging and mail fraud conspiracies at the aforesaid time frame.

**Trade and Commerce**

420. During the period covered by this Information, the business activities of the DEFENDANTS and CO-CONSPIRATORS that are the subject of this Information were within the flow of, and substantially affected, interstate trade and commerce.

**Antitrust Injury**

421. As a direct result of DEFENDANTS conspiracy, PLAINTIFFS have suffered and will suffer antitrust injury as Plaintiffs have been irreparably injured in their business including real and personal property by reasons of the continuation of this unlawful combination or conspiracy.

422. Monetary damages alone will not be adequate to compensate Plaintiffs for the irreparable harm they have and will continue to suffer, warranting permanent injunctive relief including but not limited to: (1) the immediate transfer of GONZALEZ COMMERCIAL CONDO from LEYDON to GONZALEZ.

**FRAUDULENT CONCEALMENT**

423. Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.

424. Plaintiff alleges that Defendants and their co-conspirators engaged in private meetings and communication in which they agreed to suppress the price, prevented competitive bidding, and ensure a fraudulent transfer to an insider. Defendants and their co-conspirators agreed to conceal the unlawful activity during the class period.

### **PRAYER FOR RELIEF**

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully request the following relief from this court:

   A. VOID the Judgment of Foreclosure and Sale of GONZALEZ COMMERCIAL CONDO and every transaction into which it entered.

   B. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

   C. Any other relief this Court deems appropriate and just.

### **COUNT X**
### **VIOLATION OF THE UNIFORM FRAUDULENT TRANSFER ACT (UFTA)**

#### PLAINTIFFS v. BPNA and LEYDON

425. PLAINTIFFS reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

426.     The transfer of GONZALEZ COMMERCIAL CONDO from BPNA to LEYDON, was made with the actual intent to delay, hinder, circumvent liability, and to conceal fraudulent and unlawful activity.

427.     The PLAINTIFFS bring this claim pursuant to the Uniform Fraudulent Transfer Act. As defrauded members, the PLAINTIFFS are tort "creditors" under the act.

428.     At all relevant times, BPNA was a "debtor" within the meaning of 740 ILCS 160/2 (c), (f), and (i).

429.     At all relevant times, PLAINTIFFS were "creditors" within the meaning of 740 ILCS 160/2 (c), (d), and (i).

430.     LEYDON's purchase of GONZALEZ COMMERCIAL CONDO, was a transfer within the meaning of 740 ILCS 160/2(1).

431.     In transferring GONZALEZ COMMERCIAL CONDO and GONZALEZ personal property contained therein, BPNA acted with actual intent to hinder, delay or defraud creditors within the meaning of 740 ILCS 160/5(a)(1).

432.     Among other things, the following factors, as detailed more fully in this Complaint, in pertinent part, demonstrate BPNA's fraudulent intent and lack of good faith at the time of the transfer of GONZALEZ COMMERCIAL CONDO within the meaning of 740 ILCS 160/5:

      a. Prior to the transfer of GONZALEZ COMMERCIAL CONDO from BPNA to LEYDON, GONZALEZ and his Companies filed a Lis Pendens against the title of GONZALEZ COMMERCIAL CONDO, pursuant to a lawsuit based in part on fraud upon the court, which requested for the Court to VOID the entire Court proceedings, including the Judgement of Foreclosure and Sale;

      b. Prior to the fraudulent transfer, GONZALEZ RESTAURANT filed a Lien for $1,5000,000.00 which was recorded against the title of GONZALEZ COMMERCIAL CONDO;

      c. BPNA purchased GONZALEZ COMMERCIAL CONDO through a wrongful foreclosure and subsequent bid-rigging scheme, in direct violation of the Sherman Act, as fully detailed in this Complaint;

139

d. LEYDON was an insider, as demonstrated by various facts, including but not limited to the fact that LEYDON freely accessed GONZALEZ COMMERCIAL CONDO on his own and with his own set of keys, prior to the fraudulent transfer of GONZALEZ COMMERCIAL CONDO from BPNA to LEYDON;

433. BPNA received the benefit of a deep discounted price in bad faith. In particular, both BPNA and LEYDON knew that they paid well below fair value for GONZALEZ COMMERCIAL CONDO. BPNA and LEYDON caused, enticed and induced each other to transfer GONZALEZ COMMERCIAL CONDO to LEYDON with actual intent to hinder, delay, or defraud creditors and to conceal fraudulent and unlawful activity.

434. BPNA did not receive a reasonably equivalent value within the meaning of 740 ILCS 160/4, in exchange for the transfer of GONZALEZ COMMERCIAL CONDO to LEYDON

435. Further at the time of the transfer, upon information and belief, the relevant parties engaged in a business (and/or transaction) for which its remaining assets were unreasonably small in relation to the business (and/or transactions) and intended to incur, or believed or reasonably should have believed that they would incur, large debts and/or debts beyond their ability to pay as they became due.

436. By participating in this fraudulent transfer, the Defendants BPNA and LEYDON, acted with reckless indifference and with willful and wanton disregard to Plaintiffs interests.

437. As a direct and proximate result of BPNA's fraudulent transfer, the Plaintiff has suffered damages in an amount to be determined at trial, but which is not less than $4,000,000.00

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully requests the following relief from this court:

A. VOID the Judgment of Foreclosure and Sale of GONZALEZ COMMERCIAL CONDO and every transaction into which it entered;

140

B. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

C. Any other relief this Court deems appropriate and just.

## COUNT XI
## VIOLATION OF THE UNIFORM FRAUDULENT TRANSFER ACT (UFTA)

PLAINTIFFS v. BPNA

438.    PLAINTIFFS reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

439.    The sale of BPNA's assets listed below, were made by BPNA with the actual intent to delay, hinder, circumvent liability, and to conceal fraudulent and unlawful activity:

a.  On August 11, 2014, BPNA sold their Chicago Assets without notifying the Court or the Plaintiffs;

b.  On August 31, 2014, BPNA sold their Florida Assets without notifying the Court or the Plaintiffs;

c.  On November 7, 2014, BPNA sold their California Assets without notifying the Court or the Plaintiffs.

440.    The PLAINTIFFS bring this claim pursuant to the Uniform Fraudulent Transfer Act. As a defrauded member, the PLAINTIFFS are tort "creditors" under the act.

441.    At all relevant times, BPNA was a "debtor" within the meaning of 740 ILCS 160/2 (c), (f), and (i).

442.    At all relevant times, PLAINTIFFS were "creditors" within the meaning of 740 ILCS 160/2 (c), (d), and (i).

443.    The Defendants purchase of GONZALEZ COMMERCIAL CONDO, was a transfer within the meaning of 740 ILCS 160/2(1).

444.   In transferring its aforementioned assets, BPNA acted with actual intent to hinder,

delay or defraud creditors within the meaning of 740 ILCS 160/5(a)(1).

445.   Among other things, the following factors as detailed more fully in this Complaint,

in pertinent part, demonstrate BPNA's fraudulent intent and lack of good faith at the time of the

transfer of GONZALEZ COMMERCIAL CONDO within the meaning of 740 ILCS 160/5:

a.   Prior to the sale of BPNA's aforesaid assets by BPNA, GONZALEZ and his
     companies filed a Lis Pendens against the title of GONZALEZ COMMERCIAL
     CONDO, pursuant to a lawsuit based in part on fraud upon the court, which also
     began to expose a bid-rigging scheme by BPNA, in violation of the Sherman Act;

b.   Prior to the sale of BPNA's aforesaid assets by BPNA, GONZALEZ
     RESTAURANT filed a Lien for $1,5000,000.00, which was recorded against the
     title of GONZALEZ COMMERCIAL CONDO;

c.   Prior to the sale of BPNA's aforesaid assets by BPNA, on February, 21, 2013,
     LULAC (the largest and most widely respected Hispanic Civil Rights Organization
     in the United States, founded in 1929) filed an Amicus Curiae Brief in support of
     GONZALEZ, GONZALEZ COMMERCIAL CONDO, and GONZALEZ
     RESTAURANT, with the following specific interests in mind: (1) to help decrease
     or prevent the proliferation of anti-Hispanic sentiment and racial discrimination and
     provide negative reinforcement in an effort to protect the general Latino Public; (2)
     To help prevent the proliferation of Latino housing discrimination and segregation;
     and help reduce the enormous and disproportionate crisis related to unlawful and
     discriminatory foreclosure practices against Latinos, perpetrated by banks in
     collusion with its law firms; (3) To help prevent discrimination and damage related
     to the economic development of Latino Small Businesses, and encourage the
     growth and economic development; and (4) To deter Banks from unethically and
     unlawfully colluding with their law firms and others, and subsequently irreparably
     harming the general Latino public through unlawful or illegal acts

d.   Prior to the sale of BPNA's aforesaid assets by BPNA, On September 20, 2013,
     IRIZARRY (AXELROD's client) signed and notarized an additional affidavit,
     which directly implicated BPNA in a bid-rigging scheme, in direct violation of the
     Sherman Act, in which IRIZARRY stated in pertinent part as follows:

     "On about October 19, 2011, but after I received the call from Robert Stone, Attorney
     Terrence G. Tiu, from the law firm Chuhak & Tecson P.C, who represents Banco
     Popular North America in Banco Popular North America v. Anastacio Gonzalez,
     Case No. 10 CH 02403 (Mortgage Foreclosure Action), called me to appear in court
     on October 19, 2011 in Courtroom 2503 at 2:00 p.m. and then instructed me to
     represent and testify that I owned the subject furniture located at 1700 W. Division. I
     then informed him that I was being represented by attorney David J. Axelrod, gave

142

him his contact information, and told him to call Mr. Axelrod directly. Mr. Tiu called me back after speaking with Mr. Axelrod and informed me that Mr. Axelrod could not attend court on October 19, 2011 at 2:00, but that he authorized me and instructed me to appear. Mr. Tiu then prepared me for direct and cross-examination as a witness, and instructed me to tell the judge that the furniture was mine. In addition, Mr. Tiu stated that Banco Popular was going to take all of Gonzalez's assets and "leave him on the street", including his condominium, business, furniture, TV's, and coolers located on the second level above the kitchen. Mr. Tiu further stated that if I were to comply with his requests, I could also take the coolers and the stove, but I declined.";

e. The above mentioned representations by IRIZARRY are corroborated by C&T LAW's documentation, due to the fact that on October, 19 and 20, 2011, C&T LAW on behalf of BPNA, entered a line item in their petition of attorney's fees for the BPNA mortgage foreclosure case, which stated the following:

"Telephone conference with Ray's Booths regarding lawsuit and claim to certain personal property against debtor.

"Telephone conference with Ray's Booths regarding invoices, personal property and testimony at hearing."

"Review message from creditor claiming secured interest in personal property."

"Review e-mail from client regarding arrest of debtor."

"E-mail to client regarding bench warrant and timing of process."

446.    BPNA caused, enticed and induced the transfer of its aforesaid assets, with actual intent to hinder, delay, or defraud creditors and to conceal fraudulent activity by BPNA, including but not limited to a direct violation of the Sherman Act.

447.    Further at the time of the transfer, upon information and belief, the relevant parties engaged in a business (and/or transaction) for which its remaining assets were unreasonably small in relation to the business (and/or transactions) and intended to incur, or believed or reasonably should have believed that they would incur, large debts and/or debts beyond their ability to pay as they became due.

448.    By participating in the aforesaid fraudulent transfer of assets, BPNA, acted with reckless indifference and with willful and wanton disregard to Plaintiffs potential rights.

143

449.   As a direct and proximate result of the aforesaid fraudulent sale by BPNA, the

Plaintiff has suffered damages in an amount to be determined at trial, but which is not less than

$4,000,000.00

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully

request the following relief from this court:

> A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding
>    compensatory damages, costs, and attorneys' fees, along with punitive
>    damages and treble damages against each of the individual Defendants in their
>    individual capacities as well as jointly and severally; and
>
> B. Any other relief this Court deems appropriate and just.

## COUNT XII
## VIOLATION OF THE UNIFORM FRAUDULENT TRANSFER ACT (UFTA)

### PLAINTIFFS v. LEYDON

450.   PLAINTIFFS reassert and incorporate herein by reference the allegations made in

all paragraphs, inclusive as if though fully set forth herein.

451.   The transfer of GONZALEZ COMMERCIAL CONDO from LEYDON to 1700

W. DIVISION, LLC, was made with the actual intent to delay, hinder, circumvent liability, and to

conceal fraudulent and unlawful activity.

452.   The PLAINTIFFS bring this claim pursuant to the Uniform Fraudulent Transfer

Act. As a defrauded member, the PLAINTIFFS are tort "creditors" under the act.

453.   At all relevant times, LEYDON was a "debtor" within the meaning of 740 ILCS

160/2 (c), (f), and (i).

454.   At all relevant times, PLAINTIFFS were "creditors" within the meaning of 740

ILCS 160/2 (c), (d), and (i).

455.    LEYDON's transfer of GONZALEZ COMMERCIAL CONDO, to 1700 W. Division, LLC, was a transfer within the meaning of 740 ILCS 160/2(1).

456.    In transferring GONZALEZ COMMERCIAL CONDO and GONZALEZ personal property contained therein, LEYDON acted with actual intent to hinder, delay or defraud creditors within the meaning of 740 ILCS 160/5(a)(1).

457.    Among other things, the following factors as detailed more fully in this Complaint, in pertinent part, demonstrate Defendants' fraudulent intent and lack of good faith at the time of the transfer of GONZALEZ COMMERCIAL CONDO within the meaning of 740 ILCS 160/5:

      a.  Prior to the transfer of GONZALEZ COMMERCIAL CONDO from LEYDON to 1700 W. Division, LLC by LEYDON, GONZALEZ and his Companies filed a Lis Pendens against the title of GONZALEZ COMMERCIAL CONDO, pursuant to a lawsuit based in part on fraud upon the court, which requested for the Court to VOID the entire Court proceedings, including the Judgement of Foreclosure and Sale;

      b.  Prior to the fraudulent transfer of GONZALEZ COMMERCIAL CONDO from LEYDON to 1700 W. Division, LLC, GONZALEZ RESTAURANT filed a Lien for $1,5000,000.00 which was recorded against the title of GONZALEZ COMMERCIAL CONDO;

      c.  When LEYDON transferred GONZALEZ COMMERCIAL CONDO to 1700 W. Division, LLC, LEYDON was under a Citation to discover assets, which was ordered by the Court, which specifically prohibited LEYDON from transferring assets;

      d.  LEYDON transferred GONZALEZ COMMERCIAL CONDO to 1700 W. Division LLC (a company owned only by LEYDON and his wife) at little to no cost, upon information and belief;

      e.  LEYDON was an insider, as demonstrated by various fact, including but not limited to the fact that LEYDON freely accessed GONZALEZ COMMERCIAL CONDO on his own and with his own set of keys, prior to the fraudulent transfer of GONZALEZ COMMERCIAL CONDO from BPNA to LEYDON;

      f.  LEYDON apparently committed Mortgage Fraud to purchase the property.

458.    LEYDON received the benefit of a deep discounted price in bad faith. In particular, both BPNA and LEYDON knew that BPNA transferred GONZALEZ COMMERCIAL CONDO

at well below fair value. However, more significantly, LEYDON transferred GONZALEZ COMMERCIAL CONDO to 1700 W. Division, LLC, a company owned only by LEYDON and his wife, at little to no cost, upon information and belief. The Defendants caused, enticed and induced each other to transfer GONZALEZ COMMERCIAL CONDO to 1700 W. Division, LLC with actual intent to hinder, delay, or defraud creditors.

459. LEYDON did not receive a reasonably equivalent value within the meaning of 740 ILCS 160/4, in exchange for the transfer of GONZALEZ COMMERCIAL CONDO to 1700 W. Division, LLC.

460. Further at the time of the transfer, upon information and belief, the relevant parties engaged in a business (and/or transaction) for which its remaining assets were unreasonably small in relation to the business (and/or transactions) and intended to incur, or believed or reasonably should have believed that they would incur, large debts and/or debts beyond their ability to pay as they became due.

461. By participating in this fraudulent transfer, the Defendants LEYDON and 1700 W. Division, LLC, acted with reckless indifference and with willful and wanton disregard to Plaintiffs interests.

462. As a direct and proximate result of Defendants' fraudulent transfer, the Plaintiff has suffered damages in an amount to be determined at trial, but which is not less than $4,000,000.00

## **PRAYER FOR RELIEF**

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully requests the following relief from this court:

> A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

146

B. Any other relief this Court deems appropriate and just.

## COUNT XIII
## UNJUST ENRICHMENT

### PLAINTIFFS v. BPNA

463. Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

464. BPNA unjustly deprived and cheated the PLAINTIFFS out of the true and proper value of GONZALEZ COMMERICAL CONDO, through a bid-rigging scheme in direct violation of the Sherman Act. Accordingly, BPNA unjustly received the benefit of a price well below fair market value to acquire GONZALEZ COMMERCIAL CONDO and unjustly received the benefit.

465. BPNA has unjustly been enriched.

466. It would violate the principals of justice, equity and good conscience for BPNA to retain these benefits.

467. By participating in this unjust enrichment scheme, BPNA and other CO-CONSPIRATORS acted with reckless indifference and with willful and wanton disregard to Plaintiffs rights.

468. As a direct and proximate result of the aforesaid scheme, the Plaintiff has suffered damages in an amount to be determined at trial, but which is not less than $4,000,000.00

### PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully request the following relief from this court:

> A. VOID the Judgment of Foreclosure and Sale of GONZALEZ
> COMMERCIAL CONDO and every transaction into which it entered;

147

B. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

C. Any other relief this Court deems appropriate and just.

## COUNT XIV
## UNJUST ENRICHMENT

### PLAINTIFFS v. LEYDON and 1700 W. DIVISION, LLC

469. Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

470. LEYDON unjustly deprived and cheated the PLAINTIFFS out of the true and proper value of GONZALEZ COMMERICAL CONDO, through a bid-rigging scheme in direct violation of the Sherman Act, in collusion with BPNA and other CO-CONSPIRATORS, Accordingly, LEYDON and 1700 W. DIVISION, LLC unjustly received the benefit of a price well below fair market value to acquire GONZALEZ COMMERCIAL CONDO and unjustly received the benefit.

471. LEYDON and 1700 W. DIVISION, LLC have been unjustly enriched.

472. It would violate the principals of justice, equity and good conscience for LEYDON and 1700 W. DIVISION, LLC to retain these benefits.

473. By participating in this unjust enrichment scheme, BPNA and other CO-CONSPIRATORS acted with reckless indifference and with willful and wanton disregard to Plaintiffs rights.

474. As a direct and proximate result of the aforesaid scheme, the Plaintiff has suffered damages in an amount to be determined at trial, but which is not less than $4,000,000.00

## PRAYER FOR RELIEF

148

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully request the following relief from this court:

    A. VOID the Judgment of Foreclosure and Sale of GONZALEZ COMMERCIAL CONDO and every transaction into which it entered;

    B. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

    C. Any other relief this Court deems appropriate and just.

### COUNT XV
### CONVERSION (THEFT AND SPOILATION OF EVIDENCE)
(PLAINTIFFS V. BPNA, PEAK PROPERTIES, ZUCKER)

475. Plaintiffs assert and incorporate herein by reference the allegations made in all previous paragraphs, inclusive as if though fully set forth herein.

476. After taking possession of GONZALEZ COMMERCIAL CONDO; BPNA, PEAK PROPERTIES and ZUCKER wrongfully assumed and retained control of the PLAINTIFFS Property located inside GONZALEZ COMMERCIAL CONDO. Thereafter the following occurred:

    a. BPNA in collusion with PEAK PROPERTIES and ZUCKER first unlawfully stole some of PLAINTIFFS personalty;

    b. BPNA in collusion with PEAK PROPERTIES and ZUCKER then disposed of some of GONZALEZ personal property with the intent to Spoil Evidence, which GONZALEZ had accumulated against the DEFENDANTS, pursuant to the unlawful and improper conduct Described in this Complaint.

477. BPNA then sold GONZALEZ COMMERCIAL CONDO to LEYDON, and all of the remaining assets belonging to PLAINTIFFS that were located inside GONZALEZ COMMERCIAL CONDO. These actions were additionally unlawful for the following reasons:

      a.   On September 29, 2011, BPNA was under strict orders by the Cook County Sheriff to allow GONZALEZ RESTAURANT to retrieve its assets. The Cook County Sherriff Order stated that BPNA would be criminally and civilly liable if it would not allow the PLAINTIFFS to retrieve their assets in a timely manner;

      b.   On October 19, 2011, BPNA was also under Order by Judge White to: (1) allow GONZALEZ do an inventory and remove its assets; and (2) BPNA was ordered not to "remove anything".

478.    Plaintiff has and had an absolute and unconditional right to, and is entitled to immediate possession of, the remaining property, presently under the wrongful and unauthorized control of Defendants, and to property otherwise previously converted and/or disposed of.

479.    On several occasions, the Plaintiffs demanded for the return of the subject property presently and previously under the wrongful and unauthorized control of Defendants.

480.    BPNA, failed to comply with Plaintiffs demand for return of the subject property, presently and previously under Defendants wrongful and unauthorized control. Instead, Defendants had and have continued to exercise wrongful and unauthorized control and or destruction of the subject property.

481.    The actions of the Defendants and their agents, contractors and/or employees were done intentionally, willfully, wantonly, maliciously, recklessly and with gross disregard for the Plaintiff's rights.

482.    As a direct and proximate result of Defendants' unauthorized and wrongful control of Plaintiffs subject property, Plaintiff has caused damages in an amount to be determined at trial, but which is not less than $4,000,000.00.

## **PRAYER FOR RELIEF**

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully requests the following relief from this court:

      A.  Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive

damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

B. Any other relief this Court deems appropriate and just.

## COUNT XVI
## CONVERSION (THEFT AND SPOILATION OF EVIDENCE)

### (PLAINTIFFS V. LEYDON)

483.    Plaintiffs assert and incorporate herein by reference the allegations made in all previous paragraphs, inclusive as if though fully set forth herein.

484.    After taking possession of GONZALEZ COMMERCIAL CONDO; LEYDON wrongfully assumed and retained control of the PLAINTIFFS Property located inside GONZALEZ COMMERCIAL CONDO.

485.    Prior to purchasing GONZALEZ COMMERCIAL CONDO, LEYDON apparently pledged the PLAINTIFFS personal property, in order to secure the Mortgage.

486.    On December 20, 2011, LEYDON transferred GONZALEZ COMMERCIAL CONDO and converted the Plaintiffs remaining personal property, which was located inside GONZALEZ COMMERCIAL CONDO to his new entity, "1700 W. Division, LLC". This was an especially fraudulent action, due to the fact that LEYDON was under a Citation to discover assets issued by Judge White, which specifically prevented LEYDON from transferring such assets.

487.    Plaintiff has and had an absolute and unconditional right to, and is entitled to immediate possession of, the remaining property, presently under the wrongful and unauthorized control of Defendants, and to property otherwise previously converted and/or disposed of.

488.    On several occasions, the Plaintiffs demanded for the return of the subject property presently and previously under the wrongful and unauthorized control of Defendants.

489.    LEYDON, failed to fully comply with Plaintiffs demand for return of the subject property, presently and previously under Defendants wrongful and unauthorized control. Instead, Defendants had and have continued to exercise wrongful and unauthorized control and or destruction of the subject property.

490.    The actions of the Defendants and their agents, contractors and/or employees were done intentionally, willfully, wantonly, maliciously, recklessly and with gross disregard for the Plaintiff's rights.

491.    As a direct and proximate result of Defendants' unauthorized and wrongful control of Plaintiffs subject property, Plaintiff has caused damages in an amount to be determined at trial, but which is not less than $4,000,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully requests the following relief from this court:

> A.  Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and
>
> B.  Any other relief this Court deems appropriate and just.

## COUNT XVII
## FALSE IMPRISONMENT
(GONZALEZ v. AXELROD, BPNA, C&T LAW)

492.    Plaintiff reasserts and incorporates herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

493.    As described more fully above, the Defendants, while acting individually, jointly, and in conspiracy, and within the scope of their employment, caused Plaintiff to be falsely imprisoned in violation of his constitutional rights.

494.    As described above, Defendants unlawfully seized and detained Plaintiff GONZALEZ, or caused him to be detained, without probable cause, and without any other legal justification on various occasions.

495.    As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

496.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, willfully, and wantonly, with indifference to Plaintiffs Constitutional Rights.

497.    As a direct and proximate result of this violation, Plaintiff has suffered injuries, including but not limited to severe emotional distress and damages in an amount to be determined at trial, but which is not less than $4,000,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, GONZALEZ respectfully requests the following relief from this court:

A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

B. Any other relief this Court deems appropriate and just.

## COUNT XVIII
## ASSAULT AND BATTERY

(GONZALEZ ON BEHALF OF LATINO ASSOCIATE v. BPNA, C&T LAW, TIU, PEAK PROPERTIES, ZUCKER)

498.     Plaintiff reasserts and incorporates herein by reference the allegations made in all previous paragraphs, inclusive as if though fully set forth herein.

499.     GONZALEZ Latino assistant was physically battered and verbally assaulted by BPNA AGENT ZUCKER, in collusion with and in the presence of C&T LAW Attorney, Terrence Tiu, whom witnessed the entire incident.  As GONZALEZ Latino Associate was being shoved, and elbowed, by BPNA Agen, ZUCKER, he (ZUCKER) repeatedly verbally assaulted GONZALEZ Latino Associate by yelling various racial epithets and derogatory terms directed at GONZALEZ Latino associate in an attempt to force him to physically respond.

500.     Neither GONZALEZ nor GONZALEZ Latino associate retaliated to the assault and battery.  Instead, during the assault and battery GONZALEZ Latino Associate backed up, stared at C&T LAW Attorney, Terrence Tiu, and shrugged his shoulders as he was requesting for C&T LAW Attorney to intervene and stop the attack.

501.     However, the C&T LAW Attorney failed to intervene in any way and instead laughed and grinned at GONZALEZ Latino associate during the assault and battery by the BPNA agent.  Significantly, the incident, occurred on the public sidewalk directly outside the door of GONZALEZ COMMERCIAL CONDO.

502.     On October 22, 2011, shortly after the assault and battery, GONZALEZ called the Chicago Police to report the incident.  Before the Police arrived, BPNA AGENT ZUCKER fled the scene, however, the C&T LAW Attorney was still present.  Upon arriving at the scene, the Chicago Police completed a Battery Police Report naming BPNA AGENT ZUCKER, as the offender and GONZALEZ Latino assistant as the victim. When the Chicago Police asked the C&T

LAW Attorney what he had seen, Terrence Tiu, lied to the Chicago Police by stating that he did not witness the incident.

503. On October 23, 2011 at 12:12 a.m., GONZALEZ documented the entire incident in detail and emailed said documentation to BPNA, and C&T LAW. To date, they have yet to respond to or deny the factual allegations even after GONZALEZ filed motions.

504. Plaintiff was subjected to a harmful or offensive touching, without his consent, by one or more of the Defendant's supervisors, managers and/or employees.

505. Defendant took no steps to prevent Plaintiff from suffering a battery.

506. The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

507. The foregoing acts by the Defendant were done intentionally.

508. These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

509. Defendant took no steps to prevent Plaintiff from being assaulted.

510. As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## **PRAYER FOR RELIEF**

**WHEREFORE**, for the reasons stated above, GONZALEZ respectfully requests the following relief from this court:

A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

B. Any other relief this Court deems appropriate and just.

## COUNT XIX
## ASSAULT AND BATTERY

(GONZALEZ ON BEHALF OF LATINO ASSOCIATE v. LEYDON)

511.     Plaintiff reasserts and incorporates herein by reference the allegations made in all previous paragraphs, inclusive as if though fully set forth herein.

512.     On October 17, 2011, LEYDON instigated and set in motion a physical and verbal attack against GONZALEZ Latino Associate in concert of action with another unknown individual. Specifically, the following occurred:

> d.  GONZALEZ Latino associate was struck in the face and back of the head by LEYDON's associate pursuant to which he suffered injuries to the head and eye;
>
> e.  GONZALEZ Latino associate was also verbally assaulted pursuant to which he was called a "jag off", "piece of shit", and "fat boy. Further, the offender yelled "I hate punks";
>
> f.  In response, Gonzalez Latino Associate filed a police report regarding the assault and battery and was subsequently examined and treated at St. Elizabeth Hospital Emergency Room on October 17, 2011, and October 20, 2011 for the injuries suffered;

513.     Plaintiff was subjected to a harmful or offensive touching, without his consent, by one or more of the Defendant's supervisors, managers and/or employees.

514.     Defendant took no steps to prevent Plaintiff from suffering a battery.

515.     The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

516.     The foregoing acts by the Defendant were done intentionally.

517.     These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

518.     Defendant took no steps to prevent Plaintiff from being assaulted.

156

519.     As a direct and proximate result of the foregoing conduct, the Plaintiff suffered

personal injuries, suffered mental anguish, anxiety and humiliation, emotional distress and other

forms of personal injury and bodily damage.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, GONZALEZ respectfully requests

the following relief from this court:

> A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding
>    compensatory damages, costs, and attorneys' fees, along with punitive
>    damages and treble damages against each of the individual Defendants in their
>    individual capacities as well as jointly and severally; and
>
> B. Any other relief this Court deems appropriate and just.

## COUNT XX
## ASSAULT AND BATTERY

### (GONZALEZ v. DPT CONDO, DPT CONDO PRESIDENT, DPT CONDO SECRETARY, STONE, BALL)

520.     Plaintiff reasserts and incorporates herein by reference the allegations made in all

previous paragraphs, inclusive as if though fully set forth herein.

521.     On March 6, 2011, STONE, BALL and an unknown associate, unlawfully broke

into and trespassed onto GONZALEZ ROOFTOP PARCEL, by drilling out the deadbolt lock to

the access door and forcing it to open.  When GONZALEZ observed the incident, as they were

drilling out the deadbolt lock, GONZALEZ made STONE, BALL and the unidentified person

aware that they were unlawfully breaking and entering onto GONZALEZ ROOFTOP PARCEL

and demanded that they stop.  Nevertheless, STONE and BALL directed the unidentified person

to continue drilling-out the deadbolt lock.  As GONZALEZ was videotaping the incident with his

phone, as the CO-CONSPIRATORS were breaking in, the unidentified person who was drilling

157

out the lock, physically attacked and verbally assaulted GONZALEZ while holding the drill in his

hand. After STONE and BALL trespassed onto GONZALEZ ROOFTOP PARCEL, STONE then

yelled at GONZALEZ "Go back into your fucking habitrail".

522.    On March 6, 2011, shortly after the incident, GONZALEZ made his Attorney aware

of the incident, then filed a Chicago Police report.

523.    Significantly, on March 6, 2011, GONZALEZ was then treated at St. Mary

Elizabeth Hospital for the injuries he sustained, during the aforesaid physical attack.

524.    Plaintiff was subjected to a harmful or offensive touching, without his consent, by

one or more of the Defendant's supervisors, managers and/or employees.

525.    Defendant took no steps to prevent Plaintiff from suffering a battery.

526.    The supervisors, managers and/or employees engaging in this conduct did so with

the intent to harm the Plaintiff.

527.    The foregoing acts by the Defendant were done intentionally.

528.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate

battery or harmful or offensive touching.

529.    Defendant took no steps to prevent Plaintiff from being assaulted.

530.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered

personal injuries, suffered mental anguish, anxiety and humiliation, emotional distress and other

forms of personal injury and bodily damage.

### PRAYER FOR RELIEF

**WHEREFORE,** for the reasons stated above, GONZALEZ respectfully requests

the following relief from this court:

> A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding
>    compensatory damages, costs, and attorneys' fees, along with punitive

damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

B. Any other relief this Court deems appropriate and just.

## COUNT XXI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(GONZALEZ v. ALL DEFENDANTS)

534. Plaintiffs reassert and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

535. As described more fully in this Complaint, the Defendants, all while acting individually, jointly, and in conspiracy, as well as within the scope of their employment where applicable, committed acts and conduct that were extreme and outrageous. The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff GONZALEZ, as is more fully alleged in this complaint.

536. Said actions and conduct did directly and proximately cause severe emotional distress to GONZALEZ, and thereby constituted intentional infliction of emotional distress.

537. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the right of others.

538. As a direct and proximate result of Defendants' wrongful acts, GONZALEZ suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

### PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiff, GONZALEZ, respectfully requests the following relief from this court:

A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

B. Any other relief this Court deems appropriate and just.

## COUNT

## COUNT XXII – STATE LAW CLAIM
## CIVIL CONSPIRACY

### (ALL PLAINTIFFS v. ALL DEFENDANTS)

539. PLAINTIFFS reasserts and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

540. As described more fully in this Complaint, DEFENDANTS, acting in concert with other known and unknown CO-CONSPIRATORS, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

541. In furtherance of the Conspiracy, Defendants committed overt acts and where otherwise willful participants in joint activity.

542. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the PLAINTIFFS.

543. As a direct and proximate result of Defendants' conspiracy, Plaintiffs has suffered damages including severe emotional distress and anguish, as is more fully alleged above. and damages in an amount to be determined at trial, but not less than $4,000,000.00.

### PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully requests the following relief from this court:

> A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

160

B. Any other relief this Court deems appropriate and just.

## COUNT XXIII – TITLE 18, U.S.C., SECTION 241, 42 U.S.C. 1985(3), CIVIL CONSPIRACY TO DEPRIVE DEFENDANTS OF THEIR CIVIL RIGHTS

(ALL PLAINTIFFS v. ALL DEFENDANTS)

544.    PLAINTIFFS reasserts and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

545.    Defendant's violated 42 U.S.C. 1985(3) by conspiring to prevent by force, intimidation, or threat, Plaintiffs from defending themselves in the pursuit of life, liberty and property, equal opportunity, access to the courts as guaranteed by the United States Constitution

546.    Defendants' actions against Plaintiffs were taken with racially discriminatory intent and effect.

547.    As described more fully in the proceeding paragraphs, Defendants, acting in concert of action with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

548.    The Defendant's reached an agreement amongst themselves to deprive Plaintiffs of their constitutional rights, all as described in the various paragraphs of this complaint.

549.    Independently, before, during and after the conspiracy to defraud the Plaintiff's, each of the Defendants further conspired and continued to conspire, to hinder, delay, and deprive the Plaintiffs of their civil rights.

550.    In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

551.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

161

552.    By reasons of misconduct of Defendants, Plaintiffs were deprived of rights, privileges, and immunities secured to him by the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and laws enacted therein.

553.    As a direct and proximate result of Defendants' conspiracy, Plaintiffs has suffered damages including severe emotional distress and anguish, as is more fully alleged above. and damages in an amount to be determined at trial, but not less than $4,000,000.00.

### PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully requests the following relief from this court:

> C.  Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages and treble damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and
>
> D.  Any other relief this Court deems appropriate and just.

### JURY DEMAND

**Plaintiffs demand trial by jury.**

Respectfully submitted,

PLAINTIFFS

By: _____

Robert D. Shearer
Once of its Attorneys

Robert D. Shearer
1400 W. Sherwin Ave.
Chicago, IL. 60626
(224) 306-8937

162