**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOMO ENTERPRISES, LLC, a dissolved Limited Liability Company, ANASTACIO GONZALEZ, PLAZA LOUNGE, LLC, a dissolved Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> BANCO POPULAR OF NORTH AMERICA, POPULAR INC, POPULAR COMMUNITY BANK, CHUHAK & TECSON, PEAK PROPERTIES, DAVID J. AXELROD AND ASSOCIATES, THOMAS H. HORN, TERENCE G. TIU, DANIEL J. FUMAGALLI, JOSHUA S. HYMAN, KARA ALLEN, MICHAEL L. ZUCKER, ROBERT S. STONE, DAVID BALL, JENNIFER CIRAR, DIVISON POINT TERRACES CONDO ASSOCIATION, DPT CONDO PRESIDENT, DPT CONDO SECRETARY, KOVITZ SHIFRIN & NESBIT, JOHN LEYDON, KATE LEYDON, 1700 W. DIVISION LLC, JEFFREY E. ROCHMAN, DAVID J. AXELROD, CHICAGO TITLE & TRUST CO, NORTHERN TITLE CO, UNNAMED CO-CONSPIRATORS, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 15-cv-11074 <br><br> Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Momo Enterprises, LLC, a dissolved LLC ("Momo"), Anastacio Gonzalez ("Gonzalez"), and Plaza Lounge, LLC, a dissolved LLC ("Plaza Lounge") (collectively, "Plaintiffs") brought their 179 page, 34-count second amended complaint (the "complaint"), (Dkt. 20), against a plethora of parties. The defendants filed individual motions to dismiss, in addition to a joint memorandum in support of dismissal (Dkt. 48). After reviewing the complaint and the various motions and memoranda, and hearing oral argument, this Court grants the following motions:

- North American Title's[1] motion to dismiss [34]
- Popular, Inc.'s ("Popular, Inc.") motion to dismiss [38]
- 1700 W. Division LLC's motion to dismiss [40]
- John Leydon's ("John Leydon") motion to dismiss [42]
- Banco Popular of North America ("Banco Popular"), Popular Community Bank ("PCB"), Thomas H. Horn ("Horn"), Chuhak & Tecson, P.C. ("Chuhak & Tecson"), Terrence G. Tiu ("Tiu"), Daniel J. Fumagalli ("Fumagalli"), Joshua S. Hyman ("Hyman"), and Kara Allen's ("Allen") (collectively, the "Bank Group") motion to dismiss [43]
- Kate Leydon's ("Kate Leydon") motion to dismiss [45]
- Robert Stone ("Stone"), David Ball ("Ball"), Jennifer Cirar ("Cirar"), DPT Condo Association ("DPT Condo Association"), DPT Condo President ("DPT President"), and DPT Condo Secretary's ("DPT Secretary") (collectively, the "DPT Defendants") motion to dismiss [49]
- Michael Zucker ("Zucker") and Peak Properties, LLC ("Peak Properties") (collectively, "Peak Defendants") motion to dismiss [33]
- Kovitz Shifrin & Nesbit, P.C.'s ("KSN") motion to dismiss [37]
- David J. Axelrod and Associates ("Axelrod and Associates") and David J. Axelrod's ("Mr. Axelrod") (collectively, the "Axelrod Defendants") motion to dismiss [39]
- Chicago Title Trust & Co. ("Chicago Title") motion to dismiss [101][2]

This Court outlines the grounds for this ruling and the resulting relief in the discussion section below.

**Background**

Gonzalez is the former owner of a commercial condominium and a residential condominium in a building located at 1700 W. Division Street in Chicago, IL. (Dkt. 20 ¶ 20). Plaintiffs brought this suit, in large part, to challenge the sales and foreclosures of the residential and commercial condominiums and the Plaintiffs' subsequent evictions from those properties. They

---

[1] Plaintiffs misnamed defendant Northern Title Company in the complaint; this defendant's proper name is North American Title Co. (Dkt. 29; Dkt. 34).

[2] This Court denied Plaintiffs' motion for entry of default against Chicago Title (Dkt. 87) and permitted counsel to appear on behalf of Chicago Title. (Dkt. 97). The Court also set a briefing schedule for Chicago Title's motion to dismiss. (Dkt. 97). Chicago Title adopted the arguments the other defendants made in the joint memorandum (Dkt. 48) and the arguments made in Northern Title's motion to dismiss (Dkt. 34). Plaintiffs argue that Chicago Title should not be permitted to adopt the arguments made in the joint memorandum and Northern Title's motion to dismiss; they rely on Federal Rule of Civil Procedure 10(c), which relates to adoption by reference in pleadings, and authority that analyzes Federal Rule of Appellate Procedure 28(i). The authority Plaintiffs cite is inapplicable here. Courts in this district have permitted a defendant to adopt arguments made in another defendant's motion to dismiss. *See, e.g. U.S. ex. rel. Howard v. Urban Inv. Trust, Inc.*, No. 03 C 7668, 2009 WL 2252252, at *4 (N.D. Ill. July 29, 2009) (Andersen, J.). The Court also finds that Chicago Title has sufficiently shown how the arguments it wishes to adopt apply to it. Plaintiffs' arguments for disregarding and denying Chicago Title's motion are unavailing.

allege, as described below, that the sales and foreclosures were the product of a large conspiracy made up of neighbors, banks, attorneys, and other parties, which was perpetrated through multiple lawsuits, purported fraudulent transfers, and a wide variety of torts. This Court was called upon to decipher the lengthy, complicated, convoluted, and often inconsistent complaint, in addition to the multiple motions and briefs filed in response.

*1. The subject properties*

The building located at 1700 W. Division is comprised of three residential condominiums, a commercial condominium, and a rooftop parcel. By the end of 2005, Ball, Cirar, and Stone owned the residential condominiums on the second and third floors of the building. (Dkt. 20 ¶¶ 60-62). On September 28, 2006, Gonzalez purchased the residential condominium on the fourth floor and became the owner of the rooftop parcel. (*Id.* ¶ 64). Stone, Ball, and Cirar, as part of their purchase contracts, agreed that the rooftop parcel and the commercial condominium would exist separate and apart from the residential condominium properties and the DPT Condo Association, and that they would not directly or indirectly contest the application for or possession of a liquor license by the occupants of the commercial condominium. (*Id.* ¶ 62).

Starting in April, 2006, Stone, Ball, and Cirar induced Gonzalez to pay for common bills related to the building located at 1700 W. Division Street. These bills included maintenance, repair and improvement, electric, and water bills. (*Id.* ¶ 106).

On March 22, 2010, Ball and Stone formed the DPT Condo Association. (*Id.* ¶ 108). The DPT Condo Association allegedly refused to service or provide maintenance for common element areas on the fourth floor of the building, change hallway lights, paint, or clean the front and rear stairways. (*Id.* ¶ 142).

On January 25, 2007, Gonzalez, through Momo, purchased the commercial condominium space located on the first floor of the 1700 W. Division building. (*Id.* ¶¶ 20, 21, 65). In April, 2007,

Gonzalez, through Plaza Lounge, applied for the required licenses to open his restaurant in the commercial condominium. (*Id.* ¶ 68). Gonzalez launched his restaurant[3] in the commercial condominium in December, 2008. (*Id.* ¶ 73). Thereafter, a series of lawsuits were filed and actions were taken against the Plaintiffs.

*2. The first state lawsuit – Stone, Ball, and Cirar v. Gonzalez and Plaza Lounge*

On March 10, 2009, Stone filed a state court complaint against Gonzalez and Plaza Lounge alleging a noise nuisance (the "first suit"). Stone requested an order preventing Plaza Lounge from playing music in the restaurant after 9:00 PM. (*Id.* ¶¶ 77, 78). On July 22, 2009, Ball and Cirar joined the suit as plaintiffs. (*Id.* ¶ 88). Gonzalez alleges that Ball and Cirar joined the suit in an effort to remove Plaza Lounge from the commercial condominium. (*Id.* ¶ 90). Removing Plaza Lounge would have helped Ball and Cirar sell their residential condominium more quickly. (*Id.* ¶ 90). On September 11, 2009, Gonzalez, Stone, Ball, and Cirar participated in mediation. (*Id.* ¶ 93).

*3. The second state lawsuit – DPT Condo Association v. Gonzalez*

On June 3, 2010, the DPT Condo Association filed a complaint in state court against Gonzalez alleging that Gonzalez owed the DPT Condo Association $6,401.04 (the "second suit"). (*Id.* ¶ 110). On June 4, 2010, the DPT Condo Association created a "30 Day Notice and Demand Letter" which claimed that Gonzalez owed the DPT Condo Association $6,401.04 as of April 2, 2010. (*Id.* ¶¶ 111, 112). On January 6, 2011, Ball filed an amended complaint which added a count demanding possession of the residential condominium pursuant to the Forcible Entry and Detainer Act and alleged that Gonzalez owed the DPT Condo Association $9,491.54. (*Id.* ¶ 114). On February 1, 2011, KSN filed an appearance on behalf of the DPT Condo Association. (*Id.* ¶ 116). The case was transferred to the "forcible call" on March 9, 2011. (*Id.* ¶ 118). On June 28, 2011,

---

[3] It appears as if Plaza Lounge was the limited liability company through which Gonzalez ran his restaurant. (Dkt. 20 ¶¶ 20, 22). The Court will refer to Gonzalez's restaurant as Plaza Lounge where the complaint treats the restaurant as a corporate entity.

KSN filed a second amended complaint on behalf of the DPT Condo Association which alleged that Gonzalez owed it $11,735. (*Id.* ¶ 119). Trial began on September 21, 2011. (*Id.* ¶ 123). A judgment of $5,650 was entered in favor of the DPT Condo Association and against Gonzalez. (*Id.* ¶ 125). The DPT Condo Association also obtained an order for possession of Gonzalez's residential unit. (*Id.* ¶ 125). On December 8, 2011, Gonzalez was forced to leave the residential condominium. (*Id.* ¶ 213).

*4. The third state lawsuit – The DPT Condo Association v. Gonzalez and Momo*

On June 1, 2010, the DPT Condo Association filed a state court complaint against Gonzalez and Momo[4] alleging that they owed the DPT Condo Association $2,750 in insurance costs for the commercial condominium spanning from September 2006 to April 2010 (the "third suit"). (*Id.* ¶ 128). The DPT Condo Association filed a motion for default against Gonzalez and Momo and scheduled the motion for presentment on September 14, 2010. (*Id.* ¶ 130). Gonzalez did not attend the hearing on behalf of Plaza Lounge as he was scheduled to be in two other courtrooms at the same date and time. (*Id.* ¶ 131). The state court entered a default judgment against Gonzalez and Momo for $2,750. (*Id.* ¶ 132)). On November 12, 2010, the default judgment was vacated and the suit was dismissed. (*Id.* ¶ 133).

*5. The fourth state lawsuit – Irizarry v. Gonzalez*

On September 3, 2009, Axelrod filed a breach of contract and account stated suit on behalf of his client, Irizarry, and against Gonzalez (the "Axelrod suit"). (*Id.* ¶ 290). The Axelrod suit appears to pertain to furniture Irizarry and his company, R&M Booth, provided to Gonzalez and Plaza Lounge for use in the commercial condominium. (*Id.* ¶ 292). Plaintiffs now allege that

---

[4] The complaint in the instant case says that suit was filed against "[Gonzalez commercial condo]." (Dkt. 20 ¶ 128). The complaint does not appear to identify the commercial condominium as an actual party, nor does it allege that suit was brought against the Gonzalez restaurant/Plaza Lounge, therefore this Court treats "[Gonzalez commercial condo]" as Gonzalez and Momo, as Gonzalez purchased the commercial condominium through Momo. The distinction, however, does not affect this Court's analysis.

Axelrod misrepresented, concealed, and suppressed material information at various hearings, although Plaintiffs do not identify what this information was. (*Id.* ¶¶ 293a-g).

Over the course of this contested litigation, Axelrod, on behalf of Irizarry, made several representations concerning Banco Popular, including the following: that Irizarry "removed certain business property at directions of the attorney for Banco Popular," (*Id.* ¶ 271), and that "[i]n late March 2012, [Irizarry] was called by someone who said he was connected with Banco Popular, a bank foreclosing on 1700 W. Division . . ." and that the Banco Popular agent told Irizarry he had one hour to remove his furniture from the commercial condominium. (*Id.* ¶ 272).

After meeting with Gonzalez on September 11, 2013, Irizarry signed two affidavits. The first indicated that he voluntarily agreed to vacate all judgments and judgment orders entered against Gonzalez in the Axelrod suit, (*Id.* ¶ 276), and the second indicated that in October, 2011, Stone and Tiu, a Chuhak & Tecson attorney, had reached out to him about the proceedings to remove Plaza Lounge from the commercial condominium. (*Id.* ¶¶ 277d, e). The second affidavit also discussed communications between John Leydon and Irizarry in February and March of 2012 about collecting property from the commercial condominium. (*Id.* ¶¶ 277f, g). On September 23, 2013, Irizarry appeared in court and dismissed the Axelrod suit and vacated all judgments and judgment orders against Gonzalez. (*Id.* ¶ 278).

*6. Purchase and sale of the commercial condominium and the alleged bid-rigging scheme*

Throughout the proceedings in the first suit, Stone allegedly told Gonzalez that he was working with Horn, an Assistant Vice President and Loan Workout Officer at Banco Popular, to buy the commercial condominium. (*Id.* ¶ 99a). On January 20, 2010, Chuhak & Tecson filed a foreclosure action on behalf of Banco Popular against the commercial condominium, naming Gonzalez and Momo as the defendants, after Gonzalez and Momo fell behind on the mortgage

payments (the "mortgage foreclosure action").[5], [6]  (*Id.* ¶ 145).  In its complaint, Banco Popular used

the wrong PIN number to identify the commercial condominium,[7] used the incorrect legal

description of the commercial condominium, failed to provide a unit number for the commercial

condominium, and excluded the commercial parking lot from the legal description of the

commercial condominium.  (*Id.* ¶ 146).  Gonzalez filed an appearance in the foreclosure action and

filed a "tentative Answer" on May 11, 2010.  (*Id.* ¶ 150).  On July 9, 2010, Banco Popular filed a

motion for default and entry of judgment of foreclosure and sale, which it scheduled for

presentment on July 21, 2010; the motion represented that Gonzalez and Momo had been served

but that they had not filed a responsive pleading.  (*Id.* ¶ 152).  In support of the July 9 motion for

default, Horn submitted an affidavit that alleged that Banco Popular had in its possession a

promissory note from Momo dated August 1, 2006, for $13,287,000 and a promissory note from

Momo dated January 27, 2007, for $680,000.  (*Id.* ¶ 154).  On July 21, 2010, the Cook County Circuit

Court entered an order of default and a default judgment of foreclosure and sale in the amount of

$680,000 against Gonzalez and Momo.  (*Id.* ¶ 155).  A judicial sale of the commercial condominium

was scheduled for August 30, 2010.  (*Id.* ¶ 156).

In its certificate of publication and notice of sale at public auction for the commercial

condominium, Banco Popular used the 044 PIN instead of the 071 PIN, used the incorrect legal

description, failed to use the unit number, and failed to list substantial improvements to the

commercial condominium.  (*Id.* ¶¶ 158a-e).  Banco Popular also refused to allow inspection of the

commercial condominium prior to the judicial sale.  (*Id.* ¶ 158f).  Plaintiffs allege that these

---

[5] Plaza Lounge was allegedly never made a party to the mortgage foreclosure action.  (Dkt. 20 ¶ 179).

[6] The complaint says "GONZALEZ COMMERCIAL CONDO [fell] behind on its mortgage payment."  The Court notes that a commercial condominium cannot fall behind on a mortgage payment, only the mortgagee can.  From what this Court can tell, the mortgagee of the commercial condominium was either Gonzalez or Momo, the LLC through which Gonzalez purchased the commercial condominium.

[7] Banco Popular used 17-06-234-044-0000 as the commercial condominium PIN number ("044 PIN") when it should have been listed as 17-06-234-071-0000 ("071 PIN").

omissions were meant to suppress competitive bidding on the commercial condominium. (*Id.* ¶¶ 158, 162).

On August 30, 2010, Banco Popular successfully bid on the commercial condominium and was granted a certificate of sale. (*Id.* ¶ 163). Banco Popular purchased the commercial condominium for $441,600, where the estimated fair market value of the property was $2,000,000. (*Id.* ¶ 163). Banco Popular filed a motion to appoint Zucker as the receiver for the commercial condominium, which was rescheduled for presentment on September 14, 2010, (*Id.* ¶ 165a), which date coincided with a motion in the first suit and a motion for default in the third suit. (*Id.* ¶¶ 165b, c). During the receivership hearing, Banco Popular represented to the court that Gonzalez and Momo owed the City of Chicago $17,000 for water bills, which Plaintiffs claim was a fraudulent representation.[8] (*Id.* ¶ 166). Zucker was appointed as receiver for the commercial condominium. (*Id.* ¶ 169).

On December 9, 2010, Banco Popular presented a motion for order approving report of sale and distribution and for an entry of deficiency judgment. (*Id.* ¶ 173) Banco Popular obtained an order approving the report of sale and distribution. (*Id.* ¶ 174). On December 10, 2010, Banco Popular was granted the judicial sale deed for the commercial condominium. (*Id.* ¶ 175). The sale deed, however, was executed for the 044 PIN. (*Id.* ¶ 176). Banco Popular allegedly crossed out the 044 PIN and added the 071 PIN on the judicial sale deed sometime between December 10 and December 15, 2010. (*Id.* ¶ 177).

On January 6, 2011, Zucker, on behalf of Banco Popular, served Plaza Lounge with a landlord's five-day notice pursuant to the terms of the commercial condominium lease. (*Id.* ¶¶ 180, 181). On January 10, 2011, Plaza Lounge tendered, and Banco Popular accepted, outstanding rent it owed. (*Id.* ¶ 183). On January 31, 2011, Banco Popular filed a petition for an order of possession of

---

[8] It is unclear if they made this claim in the state court proceedings.

the commercial condominium against Plaza Lounge. (*Id.* ¶ 186). On April 6, 2011, Gonzalez filed an opposition to this motion, which detailed the alleged "unlawful acts" being committed in furtherance of the conspiracy to defraud Gonzalez of the commercial condominium. (*Id.* ¶ 234). On June 24, 2011, Banco Popular pursued and obtained a deficiency judgment against Gonzalez and Momo for the full amount of the mortgage debt and a citation to discover assets was issued. (*Id.* ¶ 236). Despite making monthly lease payments, Plaza Lounge was evicted from the commercial condominium on September 29, 2011. (*Id.* ¶ 187). Plaintiffs allege that the eviction violated several terms of the commercial condominium lease agreement. (*Id.* ¶ 188).

On October 20, 2011, Banco Popular sold the commercial condominium to John Leydon via a special warranty deed, despite the Plaintiffs' lien on the property and the various petitions to vacate the foreclosure which this Court describes in the next section. (*Id.* ¶¶ 196, 196a). Chuhak & Tecson prepared and Horn signed the special warranty deed which included the correct 071 PIN and the commercial parking parcel in the legal description. (*Id.* ¶ 243). On October 25, 2011, John Leydon obtained a mortgage to purchase the commercial condominium; this transaction was completed at the Chicago Title offices. (*Id.* ¶ 208). Plaintiffs allege that John Leydon made several false representations in his pursuit of acquiring the mortgage. (*Id.* ¶¶ 209a-c).

On November 21, 2011, Gonzalez filed an emergency motion for temporary restraining order ("TRO"), presumably in the mortgage foreclosure action, requesting that John Leydon be prohibited from removing certain property from and leasing the commercial condominium. (*Id.* ¶ 210). The TRO also set a date for a hearing on damages for alleged conversion, theft, and assault and battery, allegations which this Court details below. (*Id.* ¶ 210). Plaintiffs do not identify the judge that heard the motion. Chuhak & Tecson represented John Leydon in this action. (*Id.* ¶ 211).

On December 13, 2011, Judge Alexander White approved a citation to discover assets against John Leydon. (*Id.* ¶ 218). The citation prohibited John Leydon from transferring any of his

assets. (*Id.* ¶ 219). One day later,[9] John Leydon obtained a second mortgage for the commercial condominium from North American Title. (*Id.* ¶ 225). This mortgage was obtained while Plaintiffs were challenging the judgment in favor of Banco Popular, and while the $1,500,000 lien against the commercial condominium was still active. (*Id.* ¶ 226). On the same day, John Leydon filed a quitclaim deed and corrected the previously incorrect legal description of the commercial condominium. (*Id.* ¶ 228). On December 20, 2011, John Leydon transferred the commercial condominium to defendant 1700 W. Division LLC. (*Id.* ¶ 220).

*7. Challenge of the commercial condominium foreclosure*

On October 14, 2011, Gonzalez, Momo, and Plaza Lounge filed a lien against the commercial condominium for the $1,500,000 liquidated damages pursuant to the eviction terms in the commercial condominium lease, (*Id.* ¶ 192), and a petition pursuant to 735 ILCS 5/2-1401(f) in the mortgage foreclosure action. (*Id.* ¶ 193). The petition requested that the circuit court vacate and void all of the judgments and orders in the mortgage foreclosure action. (*Id.* ¶ 193). On October 19, 2011, the trial court ordered Banco Popular to allow Gonzalez to access the commercial condominium in order to conduct an inventory of the remaining personal property and to schedule time for Gonzalez to remove such property. (*Id.* ¶ 195). On November 4, 2011, Banco Popular filed a sanctions motion against Gonzalez, who was pro se at the time, which alleged that Gonzalez had filed false verified pleadings. (*Id.* ¶ 244). The motion for sanctions requested that Gonzalez, Plaza Lounge, and Momo be held in civil contempt, and that they be restricted from filing any motions for 180 days without leave of court. (*Id.* ¶ 244a, b).

Banco Popular began to include Axelrod on the service list for all motions starting in April, 2012. (*Id.* ¶ 262e). It should be noted that, based on this Court's review of the record, it does not appear that Axelrod represented any of the parties involved in the mortgage foreclosure action. If in

---

[9] The complaint says "December 14, 2012," (Dkt. 20 ¶ 225), but given the surrounding allegations, this Court believes that "2012" was a typo.

fact he did not represent any of the parties, there would be no reason for him to be on the service list, thereby informing some of Plaintiffs' positions related to the alleged conspiracy.

On June 11, 2012, Banco Popular amended the sanctions motion and requested that the matter be transferred to the Cook County State's Attorney for prosecution of a class 3 felony against Gonzalez for "filing of numerous false verified pleadings." (*Id.* ¶ 246).

On June 13, 2012, Jorge Sanchez of MALDEF appeared before Judge White to defend Gonzalez against the sanctions motion and deficiency judgment. (*Id.* ¶ 247). Judge White, after hearing oral argument, indicated that "we have a big problem with the foreclosure judgment." (*Id.* ¶ 251a). This Court appreciates Judge White's refreshing candor. This Court also notes that many of the problems with the foreclosure judgment might have been avoided if the parties or trial judges had thoroughly reviewed and addressed the record in the mortgage foreclosure action. Judge White ordered Gonzalez to file a motion to vacate the underlying orders of default and the default judgment of foreclosure and sale with the Circuit Court judge who was assigned to the relevant mortgage foreclosure calendar. (*Id.* ¶ 251, 252). On June 27, 2012, Gonzalez filed an amended petition under section 2-1401(f) in an effort to vacate the underlying default judgment and judgment of foreclosure and sale. (*Id.* ¶ 252). The case was transferred to the mortgage foreclosure calendar of the Cook County Circuit Court. (*Id.* ¶ 253). On August 17, 2012, Banco Popular filed a motion to transfer the pending section 2-1401(f) petition to Judge Jeffrey Warnick.[10] (*Id.* ¶ 254). Gonzalez was not represented by counsel at the time. (*Id.* ¶ 255). At the hearing on the motion, Judge Alfred M. Swanson, the mortgage foreclosure judge, asked Banco Popular for an explanation as to why the case was transferred back to the mortgage foreclosure calendar; Banco Popular failed to inform the judge that the transfer was for the purpose of filing a motion to vacate the order of default and the

---

[10] Judge Warnick is currently a Cook County Circuit Court Judge in the Municipal and Law Division whose courtroom is currently located in Skokie, Illinois. Plaintiffs allege that in August, 2012, Judge Warnick was located in a different judicial district.

default judgment of foreclosure and sale and related orders. (*Id.* ¶¶ 255, 256). This motion to transfer was stricken. (*Id.* ¶ 257). Banco Popular allegedly drafted an order to strike the 2-1401(f) petition rather than an order to strike the motion to transfer, but Gonzalez caught the attempt and no such order was entered. (*Id.* ¶¶ 258, 259).

On October 2, 2012, Gonzalez, with assistance of counsel, filed another amended 2-1401(f) petition to vacate the default judgment of foreclosure and sale. (*Id.* ¶ 269). On October 19, 2012, Banco Popular filed a motion for contempt against Gonzalez, Momo, and Plaza Lounge demanding a writ of attachment against Gonzalez. (*Id.* ¶ 270). Shortly thereafter, Banco Popular attempted to present another motion to transfer, which was almost identical to the August 17, 2012 motion; this motion was stricken. (*Id.* ¶¶ 260, 261).

In late 2014, Banco Popular sold its Chicago, Florida, and California assets while the $1,500,000 lien and 2-1401(f) petition in the mortgage foreclosure case was pending. (*Id.* ¶ 285).

On February 25, 2015, Gonzalez filed another motion to vacate the deficiency judgment; Judge White transferred the case to the trial court to evaluate the deficiency judgment as well as the order of default and default judgment of foreclosure and sale. (*Id.* ¶ 288). Banco Popular again moved to have the case transferred to Judge Warnick. (*Id.* ¶ 289).

*8. Banco Popular and Axelrod's purported efforts to have Gonzalez arrested*

On November 18, 2010, Axelrod obtained an alias body attachment against Gonzalez in the Axelrod suit[11] which required Gonzalez to appear on January 27, 2011, the same time at which Gonzalez was required to appear in the mortgage foreclosure action[12]. (*Id.* ¶¶ 231a-c). Axelrod secured a second alias body attachment which required Gonzalez to appear on June 30, 2011, the same date as Banco Popular's petition for an order of possession in the mortgage foreclosure action,

---

[11] The record is silent as to why a body attachment was needed or granted. The same is true for all of the other body attachments that this Court discusses.

[12] It is reasonable to presume that Axelrod scheduled the return date on the body attachment.

but in a different courtroom. (*Id.* ¶¶ 237b, c). Later, Axelrod and Banco Popular "arranged" to set same day appearances on March 28, 2012 for return on a third body attachment and for a continuance in the mortgage foreclosure action. (*Id.* ¶¶ 245a, b). Axelrod appeared in the mortgage foreclosure action and asked the court to have Gonzalez arrested for failure to appear in the Axelrod suit; the Cook County Sheriff's Office effectuated the arrest. (*Id.* ¶ 245c).

This pattern continued when Axelrod and Banco Popular both set hearings on August 23, 2012 in the Axelrod suit and mortgage foreclosure action respectively. (*Id.* ¶¶ 262b, c). Gonzalez did not appear at the hearing in the Axelrod suit and Axelrod demanded Gonzalez be arrested. Gonzalez was arrested by the Cook County Sheriff on August 23, 2012. (*Id.* ¶ 262d). Counsel for Gonzalez appeared before the state court on August 24, 2012 and presented a motion that demonstrated that Banco Popular removed and converted many of the personal items from the commercial condominium that purportedly belonged to Gonzalez but which Axelrod sought to collect in the Axelrod suit. (*Id.* ¶ 263). On August 24, 2012, the court ordered that Gonzalez be immediately released from Cook County Jail. (*Id.* ¶ 264). On August 27, 2012, substitute counsel for Axelrod demanded that Gonzalez not be released and that the court issue a higher bond. (*Id.* ¶ 267). The circuit court judge disagreed with counsel and issued a second order for Gonzalez's immediate release. (*Id.* ¶ 268).

On November 14, 2013, Axelrod appeared in court and obtained a fourth body attachment against Gonzalez, pursuant to a rule to show cause, which Axelrod did not place with the Cook County Sheriff. (*Id.* ¶¶ 280, 281). On the same day, Axelrod mailed a "mutual release" letter to Gonzalez. (*Id.* ¶¶ 281, 282). The release allegedly threatened to have the body attachment placed with the Cook County Sheriff's Office so that they could effectuate Gonzalez's arrest if Gonzalez did not agree to absolve Axelrod of liability for any actions taken by Axelrod in representing "any of the parties" up to that date. (*Id.* ¶¶ 282, 282b). It is unclear who "any of the parties" refers to. On

December 8, 2013, Axelrod mailed a second release letter of similar substance to Gonzalez's attorney. (*Id.* ¶ 283). Gonzalez filed a motion to vacate the body attachment; Axelrod appeared before the state court on January 16, 2014 and had it strike Gonzalez's motion. (*Id.* ¶ 284).[13]

### 9. Theft and conversion

After the sale of the commercial condominium and after Plaza Lounge was evicted, the Cook County Sheriff's Office issued an order to Banco Popular restricting it from removing certain property from the commercial condominium. (*Id.* ¶ 190). Gonzalez filed a police report after witnessing Banco Popular remove various items from the commercial condominium on October 4, 5, and 9, 2011. (*Id.* ¶ 191).

On October 20, 2011, Banco Popular allegedly sold the remaining property that belonged to Plaza Lounge to John Leydon. (*Id.* ¶ 197).

### 10. Assault and battery

On October 22, 2011, Gonzalez and his assistant arrived at the commercial condominium to take inventory of the property that remained there. (*Id.* ¶ 199). Gonzalez called the police alleging that Zucker, who was present at the commercial condominium, had committed assault and battery on Gonzalez's associate. (*Id.* ¶ 200). Defendant Tiu, who accompanied Zucker, told the police he witnessed nothing. (*Id.* ¶ 204).

### 11. Additional actions towards Plaza Lounge

Plaintiffs allege various other actions over a period of three years, from December, 2008 until December, 2011. Plaintiffs allege that Stone and others dumped dog feces and urine at the entrance of Plaza Lounge and at Gonzalez's garage entrance. (*Id.* ¶ 100). Plaintiffs further allege

---

[13] If certain allegations against the Axelrod Defendants are true, they raise issues that should be brought to the attention of the Illinois Attorney Registration and Disciplinary Committee. This Court, however, simply makes note of the concerning allegation of the purported "mutual release" letters and Plaintiffs' failure to either attach the letters to the complaint or any of their other filings, or to quote the portion of the letters that threaten to have Gonzalez arrested should he refuse to sign a release. Similarly, Axelrod's pursuit of body attachments against Gonzalez appears to be problematic, to say the least. Unfortunately, none of the parties provide insight into the bases for the multiple body attachments.

that Stone, Ball, and others repeatedly pad-locked the Plaza Lounge exit and blocked the emergency exit with garbage containers smeared with dog feces. (*Id.* ¶ 101). During that same period of time, Stone, Ball, and Cirar filed multiple police reports against Plaza Lounge alleging a noise nuisance. (*Id.* ¶ 102). They also made several negative public statements about the restaurant. (*Id.* ¶ 103).

Stone also allegedly damaged the Gonzalez residential condominium stairways on multiple occasions. (*Id.* ¶ 134). On March 6, 2011, Gonzalez observed Stone, Ball, and an unknown associate breaking into the Gonzalez rooftop parcel by drilling out a deadbolt lock and forcing the rooftop door open. (*Id.* ¶ 135). The unidentified person physically attacked and verbally assaulted Gonzalez. (*Id.* ¶ 135).

### 12. Spoliation of evidence

Plaintiffs allege that on October, 4, 5, and 9, 2011, Banco Popular and its agents removed certain items from the commercial condominium space that belonged to Plaza Lounge. (*Id.* ¶ 238). Plaintiffs claim that the items included evidence – documents, files, and records – that Gonzalez accumulated against Banco Popular and other defendants. (*Id.* ¶ 239). Plaintiffs allege that Banco Popular intended to "spoil" this purported incriminating evidence. (*Id.* ¶ 240). Plaintiffs, however, do not identify what the evidence is or provide proof that the evidence was there.

## Discussion

This Court first addresses the Defendants' arguments for dismissal based on jurisdiction before it addresses their substantive arguments for dismissal.

### 1. Personal jurisdiction

Rule 12(b)(2) requires dismissal of an action against a party over whom this Court lacks personal jurisdiction. Fed R. Civ. P. 12(b)(2). Personal jurisdiction exists if an out-of-state defendant has minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783

F.3d 695, 697 (7th Cir. 2015) (citation omitted). A court may assert general personal jurisdiction over a foreign corporation if its affiliations with a state are so continuous and systematic as to render it essentially at home in the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (citations omitted). A party's business presence in the forum state, by itself, is insufficient to establish general personal jurisdiction. *Id.* at 761-62. Specific personal jurisdiction exists where a defendant's contacts with the forum are linked to the claims. *Kipp*, 783 F.3d at 698 (citation omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct 1115, 1121, 188 L. Ed. 2d 12 (2014).

Popular, Inc. is the only defendant that moves to dismiss the complaint for lack of personal jurisdiction. It argues that this Court does not have general jurisdiction over it because its only presence in Illinois is a corporate affiliate and it is incorporated and has its principal place of business in Puerto Rico. Popular, Inc. also points out that the Plaintiffs do not allege that Popular, Inc. participated, managed, directed, or had any involvement in the wrongs alleged in the complaint. Plaintiffs contend that this Court has personal jurisdiction because Popular, Inc.'s "corporate veil was pierced" and because it has sufficient contacts with Illinois. (Dkt. 78 ¶ 70). Plaintiffs rely on a *Crain's Chicago Business* article which states that "[t]he North American unit of Popular Inc. . . . is selling its Chicago franchise," for support. Plaintiffs do not provide any authority that suggests that this sale, alone, establishes general jurisdiction. Plaintiffs also do not argue that Popular, Inc. was involved in any of wrongs alleged in the complaint. This Court finds that Plaintiffs have not sufficiently alleged that Popular, Inc. is "at home" in Illinois or that it was involved with the alleged wrongs, therefore, this Court finds that it does not have personal jurisdiction over Popular, Inc. Popular, Inc.'s motion to dismiss [38] is granted without prejudice.

*2. Subject matter jurisdiction based on the Rooker-Feldman doctrine*

Northern Title, 1700 W. Division LLC, John Leydon, Kate Leydon, the Bank Group, and the DPT Defendants all move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). These defendants argue that *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction over the Plaintiffs' claims.

Under the *Rooker-Feldman* doctrine, federal district courts may not assert jurisdiction in cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005); *see also Johnson v. Cook Cnty. Probate Ct.*, No. 11 C 01897, 2011 WL 1548385, at *2 (N.D. Ill. Apr. 22, 2011) (citations omitted) (*Rooker-Feldman* precludes federal jurisdiction over claims alleging injury caused by a state court judgment). No matter how erroneous or unconstitutional a state court judgment may be, the only federal court with jurisdiction to review such a judgment is the Supreme Court. *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) (citation omitted). The *Rooker-Feldman* doctrine also applies to any claims that are "inextricably intertwined" with the state court judgment. *Taylor v. Fed. Nat. Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004) (citation omitted). A claim is inextricably intertwined with a state court decision if it "alleges that the injury was caused by the state court judgment, or, alternatively, whether [it] alleges an independent prior injury that the state court failed to remedy." *Id.* (citing *Long v. Shorebank Development Corp.*, 182 F.3d 548, 555 (7th Cir. 1999)). If a claim is inextricably intertwined with the state court judgment, a federal district court may only consider it if the plaintiff did not have a reasonable opportunity to raise the issue in the state court proceeding. *Id.*

These defendants argue that the *Rooker-Feldman* doctrine applies because Plaintiffs primarily seek to void the state foreclosure judgments on the commercial and residential condominiums and

the subsequent sales. Plaintiffs argue that the *Rooker-Feldman* doctrine does not apply because the state court judgments were procured through fraud, deception, accident, or mistake. Plaintiffs appear to rely primarily on *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2003), to support their position.

The plaintiff's claims in *Kougasian* were based on alleged extrinsic fraud, which was used to procure a judgment from the state court. *Id.* at 1140. The alleged fraud consisted of submitting a false declaration to the state court at the last minute and refusing to supply contact information for the declarant. *Id.* The *Kougasian* court held that the *Rooker-Feldman* doctrine "does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court *judgment obtained by the fraud.*" *Id.* at 1141 (emphasis added). Plaintiffs' reliance on *Kougasian,* however, is misplaced as the Seventh Circuit has rejected the precise situation the *Kougasian* court addresses. *See, e.g. Taylor*, 374 F.3d at 533. The plaintiff in *Taylor* lost her home in a foreclosure action. 374 F.3d at 531. She brought a claim in federal court alleging that the defendants committed extrinsic fraud and a fraud upon the court by instituting a wrongful foreclosure action against her. *Id.* The Seventh Circuit affirmed the district court's dismissal, finding that the district court's reliance on *Rooker-Feldman* was proper because the relief the plaintiff requested was "tantamount to a request to vacate the state court's judgment of foreclosure." *Id.* at 532; *see also Jones v. U.S. Bank Nat. Ass'n*, No. 10 C 0008, 2011 WL 814901, at *2 (N.D. Ill. Feb. 25, 2011) (Holderman, C.J.) (citing *Taylor*) (rejecting plaintiff's argument based on *Kougasian*).

Plaintiffs also argue that the *Rooker-Feldman* doctrine is inapplicable because Defendants fraudulently invoked the state court's jurisdiction through the use of extrinsic fraud. Plaintiffs cite to the Seventh Circuit's decision in *Long* for support, which held that a state court judgment is void and challengeable in federal court if the state court's jurisdiction was acquired through the use of extrinsic fraud. 182 F.3d at 561 (citations omitted). Extrinsic fraud refers to situations where the

unsuccessful party has been prevented from fully exhibiting her case, is kept away from court, or where she never had knowledge of the suit. *Id.* (citations omitted). In *Long*, one of the defendants induced the plaintiff to sign a consent to entry of judgment form and then appeared before the state court, *ex parte*, and represented to the court that the plaintiff agreed to surrender possession of her apartment, thereby preventing the plaintiff from exhibiting her case. *Id.* at 552, 561.

Here, Plaintiffs allege that the DPT Defendants and KSN's state court pleadings contained fraudulent allegations, (*see, e.g.* Dkt. 20 ¶¶ 337a, b), that the DPT Defendants offered "perjured" testimony, (*see, e.g. id.* ¶ 337b), and that the Bank Group used the incorrect PIN number and incorrect legal description for the commercial condominium. (*Id.* ¶¶ 346a-d). Plaintiffs, however, merely offer conclusory allegations of "fraud;" they do not explain or even allege that the "fraud" prevented them from participating in the state court proceedings or from contesting the judgments. They also fail to explain how or even argue that the state court's jurisdiction was acquired through this "fraud." This Court finds that the "fraud" Plaintiffs allege does not fit into the classic definition of extrinsic fraud, therefore, Plaintiffs' argument fails.

This Court applies the *Rooker-Feldman* doctrine to Plaintiffs' claims and grants the following relief:

Count I (fraud on the court) is dismissed as to the DPT Defendants and KSN without prejudice as it seeks a declaration that "the judgment of foreclosure and sale of [the residential condominium], and every transaction related into which it entered VOID." This count clearly seeks to set aside the state court judgments.

Count II (fraud on the court) is dismissed as to the Bank Group without prejudice, for similar reasons as Count I except that the relief requested relates to the commercial condominium.

Count III (fraud on the court) is dismissed as to the Bank Group without prejudice. Count III is inextricably linked to the state court foreclosure judgment and sale of the commercial

condominium. This count could have been raised at the state level in post-judgment relief, pursuant to section 2-1401(f).

Count V (violation of due process) is dismissed as to the DPT Defendants and KSN without prejudice since Plaintiffs ask this Court to set aside the state court foreclosure judgment and sale of the residential condominium and rooftop parcel.

Count VI (violation of due process) is dismissed as to the Bank Group without prejudice because Plaintiffs ask this Court to set aside the state foreclosure judgment and sale of the commercial condominium.

Count VII (violation of due process) is dismissed as to the Bank Group without prejudice. Count VII is inextricably intertwined with the state foreclosure and sale proceedings of the Gonzalez restaurant which was located in the commercial condominium, and it is not an independent injury arising from the Defendants' conduct.

Count IX (violation of the Sherman Act and Clayton Act – bid rigging) is dismissed as to all named[14] defendants without prejudice because Plaintiffs ask this Court to void the foreclosure and sale of the commercial condominium, effectively setting aside the state court judgment.

Count XIII (unjust enrichment) is dismissed as to Banco Popular without prejudice and Count XIV (unjust enrichment) is dismissed as to John Leydon and 1700 W. Division LLC without prejudice as Plaintiffs ask this Court to void the foreclosure judgment and sale of the commercial condominium.

---

[14] "All named defendants" includes defendant Jeffrey E. Rochman ("Rochman"). Rochman is an attorney and defendant 1700 W. Division LLC's registered agent. (Dkt. 20 ¶¶ 42, 45). Rochman allegedly helped Stone close on Stone's condominium and was John Leydon's "closing attorney" on the commercial condominium. (Dkt. 20 ¶ 208). Rochman filed an answer to the complaint on September 6, 2016. (Dkt. 57). He then filed a motion to withdraw his answer and join the joint motion to dismiss, (Dkt. 58), which this Court denied. (Dkt. 61). This Court indicated that Rochman could file any other proper motion following the filing of an answer. (Dkt. 61). Since his motion was denied, Rochman has been silent and filed nothing. The defendants, the plaintiffs, and Rochman himself, have not addressed Rochman's status in this matter. Since the claims against Rochman, however, are limited to the claims against "all named defendants," this Court, in the interest of justice and judicial efficiency, grants him the same relief as it grants to the rest of the defendants.

Count XXVII (wrongful eviction) is dismissed as to DPT Condo, Banco Popular, and Chuhak & Tecson without prejudice as it is inextricably linked to the state court judgments (i.e. the commercial condominium foreclosure). Moreover, Plaintiffs challenged the foreclosure and eviction in state court. (*see*, *e.g.* Dkt. 20 ¶¶ 193, 242, 269).

Count XXXIII (Civil Conspiracy) is dismissed as to all named defendants[15] without prejudice as the conspiracy claim is inextricably intertwined with the state court foreclosures and sales. Plaintiffs have had multiple opportunities over the last five and a half years to raise conspiracy issues in their 2-1401(f) petitions.

*3. Subject matter jurisdiction based on diversity*

Plaintiffs only claim that this Court has diversity jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332. (Dkt. 20 ¶¶ 52, 53, 55). Plaintiffs did not plead, nor do they argue, that this Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. For jurisdiction based on diversity of citizenship, diversity must be complete – "no plaintiff may be a citizen of the same state as any defendant." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (internal quotations omitted). Plaintiff Gonzalez is a resident of Illinois, (Dkt. 20 ¶ 20), and Chuhak & Tecson is an Illinois corporation.[16] (*Id.* ¶ 27). Complete diversity does not exist, therefore this Court does not have jurisdiction over the state law claims. Accordingly, this Court grants the following relief without addressing the Defendants' substantive arguments:

- Count IV (fraud upon the court) is dismissed as to the Axelrod Defendants without prejudice.
- Count X (Illinois Uniform Fraudulent Transfer Act) is dismissed as to Banco Popular and John Leydon without prejudice.
- Count XI (Illinois Uniform Fraudulent Transfer Act) is dismissed as to Banco Popular without prejudice.
- Count XII (Illinois Uniform Fraudulent Transfer Act) is dismissed as to John Leydon without prejudice.

---

[15] *See* note 14.
[16] There are several other non-diverse defendants.

- Count XV (conversion – theft and spoliation of evidence) is dismissed as to Banco Popular, Peak Properties, and Zucker without prejudice.
- Count XVI (conversion – theft and spoliation of evidence) is dismissed as to John Leydon without prejudice.
- Count XVII (false imprisonment) is dismissed as to the Axelrod Defendants, Banco Popular, and Chuhak & Tecson without prejudice.
- Count XVIII (Assault and Battery) is dismissed as to Banco Popular, Chuhak & Tecson, Tiu, Peak Properties, and Zucker without prejudice.
- Count XIX (Assault and Battery) is dismissed as to John Leydon without prejudice.
- Count XX (Assault and Battery) is dismissed as to the DPT Defendants without prejudice.
- Count XXI (IIED) is dismissed as to all named defendants[17] without prejudice.
- Count XXII (Breach of contract) is dismissed as to the DPT Defendants without prejudice.
- Count XXIII (breach of contract) is dismissed as to Banco Popular without prejudice.
- Count XXIV (tortious interference with an advantageous business relationship and expectancy) is dismissed as to the DPT Defendants without prejudice.
- Count XXV (abuse of process) is dismissed as to the Banco Popular, Chuhak & Tecson, the DPT Defendants, and the Axelrod Defendants without prejudice.
- Count XXVI (malicious prosecution) is dismissed as to the DPT Defendants and the Axelrod Defendants without prejudice.
- Count XXVIII (invasion of privacy) is dismissed as to Banco Popular, Chuhak & Tecson, Zucker, Peak Properties, and John Leydon without prejudice.
- Count XXXI (breach of fiduciary duty) is dismissed as to the DPT Defendants without prejudice.

*4. Statutes of limitations*

A party may raise a statute of limitations defense in a motion to dismiss if the allegations in the complaint set forth everything necessary to satisfy the affirmative defense. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (citation omitted). The Defendants contend that certain claims are untimely and point to various allegations in the complaint that support their contentions. Plaintiffs, however, argue that all of the applicable limitations periods were tolled. This Court does not find Plaintiffs' arguments to be persuasive.

First, Plaintiffs argue that any applicable statute of limitations was tolled because the injuries they allegedly suffered were part of a continuing tort. Under a "continuing tort" or "continuing

---

[17] See note 14.

violation" theory, where a tort involves continuous or repeated injurious behavior by the same actor(s) and of a similar nature, a plaintiff's cause of action does not accrue, and the limitations period does not begin to run, until the date the final injury occurs or the tortious acts cease. *Taylor v. Bd. of Educ. of City of Chicago*, 10 N.E.3d 383, 395-96, 2014 IL App. (1st) 123744, ¶ 46 (citations omitted); *see also Robinson v. Morgan Stanley*, No. 06 C 5158, 2007 WL 2815839, at *9–10 (N.D. Ill. Sept. 24, 2007) (Holderman, C.J.) ("continuing tort" theory did not apply where the only act within the limitations period did not significantly resemble or relate to the earlier acts). In this case, Plaintiffs maintain that the last "tortious action" was Axelrod allegedly inducing a state court to strike one of Plaintiffs' motions on January 16, 2014. (Dkt. 20 ¶ 284). Plaintiffs make no effort to show how this action is a continuation of any previous injurious behavior, Plaintiffs do not identify any common actors apart from the Axelrod Defendants, and Plaintiffs have not shown that this action resembles any other injuries they allegedly suffered. Plaintiffs' continuing tort argument falls flat.

Next, Plaintiffs argue that no statute of limitations applies because they challenge a "void" state court order. This Court already dismissed this argument when it found, as discussed above, that Plaintiffs have not identified any extrinsic fraud that would have deprived the state court of subject matter jurisdiction.

The Plaintiffs claim that the applicable limitations periods were tolled by the doctrine of equitable estoppel. Equitable estoppel is available where a defendant takes active steps, beyond the wrongdoing underlying the complaint, to prevent a plaintiff from filing suit. *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999) (citations omitted); *see also Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990). These steps include, for example, hiding evidence or promising not to plead the statute of limitations. *Hentosh*, 167 F.3d at 1174 (citations omitted). The only allegation in the complaint that could possibly

support an argument that Defendants attempted to prevent Plaintiffs from filing suit is the allegation that Banco Popular, Chuhak & Tecson, and others "spoiled" evidence. (Dkt. 20 ¶ 305c). Plaintiffs, however, do not describe the evidence that these defendants allegedly kept from them, nor do they describe how the purported destruction of the evidence prevented them from discovering their causes of action. Moreover, it is clear that Plaintiffs witnessed and were aware of all of the purported injuries that give rise to their claims. Therefore, equitable estoppel does not apply.

Plaintiffs contend that all of the limitations periods have also been tolled by duress. "[C]ourts have universally rejected the theory that duress tolls the statute of limitations when . . . duress is not an element of the underlying cause of action." *Pierre v. Inroads, Inc.*, 858 F. Supp. 769, 774 (N.D. Ill. July 21, 1994) (Shadur, J.) (quoting *Pahlavi v. Palandjan*, 809 F.2d 938, 942 (1st Cir. 1987)). Plaintiffs plead that the actions which caused them duress were "separate and distinct from the alleged wrong giving rise to the suit." (Dkt. 20 ¶¶ 311, 322). This Court, after reviewing the complaint, has found that Plaintiffs do not allege duress as an element of any of their claims. This argument is unavailing.

Finally, Plaintiffs argue that equitable tolling should apply. "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). The allegations in the complaint make it clear that Plaintiffs have always been generally aware of the purported wrongs committed against them, and the individuals and entities that allegedly committed those wrongs, therefore equitable tolling does not apply.

Plaintiffs filed suit on December 9, 2015. (Dkt. 1). Accordingly, this Court grants the following relief based on the applicable statutes of limitations:

Count XXIX (Fair Debt Collection Practices Act) is dismissed as to the Axelrod Defendants, Chuhak & Tecson, DPT Condo, and KSN with prejudice because it is time barred. The FDCPA has a one-year statute of limitations. 15 U.S.C. § 1692k. The last "collection activity" alleged in this case was when Gonzalez was evicted from the residential condominium on December 15, 2011. (Dkt. 20 ¶ 127). This case was filed in December 2015, well beyond the one-year limitations period.

Count XXXII (Violation of the Fair Housing Act) is dismissed as to the DPT Defendants with prejudice as it is time barred. A plaintiff must bring her FHA claim within two years of the alleged injury. 42 U.S.C. § 3613(a)(1)(A). The last act that might be construed as a violation of the FHA occurred on December 15, 2011, when DPT Condo evicted Gonzalez from the residential condominium. (Dkt. 20 ¶ 127). This action falls outside of the FHA's two-year limitations period.

Count XXXIV (Civil Conspiracy to deprive plaintiffs of their civil rights pursuant to 18 U.S.C. § 241[18] and 42 U.S.C. § 1985(3)) is dismissed as to all named defendants[19] with prejudice because it is barred by the statute of limitations. In Illinois, there is a two-year statute of limitations for claims brought under 42 U.S.C. § 1985(3). *Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001). The Plaintiffs were deprived of the commercial condominium on September 29, 2011, and the residential condominium on December 15, 2011. This claim was brought outside of the two year statute of limitations.

*5. Plaintiffs' remaining federal claims*

Finally, this Court turns to whether Plaintiffs have sufficiently pleaded their remaining federal claims.

Plaintiffs allege that the Axelrod Defendants deprived them of their substantive and procedural due process rights. (Dkt. 20 Count VIII). The due process clauses of the United States

---

[18] This is a criminal statute and has no application here.
[19] *See* note 14.

and Illinois constitutions regulate governmental and state action, not action by private individuals or entities. *Hinman v. Lincoln Towing Serv., Inc.*, 771 F.2d 189, 192 (7th Cir. 1985) ("[T]he Fourteenth Amendment erects no shield against merely private conduct, however discriminatory or wrongful") (internal quotations omitted); *Methodist Med. Center of Ill. v. Taylor*, 489 N.E.2d 351, 354, 140 Ill. App. 3d 713 (3d Dist. 1986). Plaintiffs argue that the Axelrod Defendants are state actors because they worked closely with a state court clerk and because they moved for body attachments against Gonzalez; they rely on *Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.*, 795 F.2d 1344 (7th Cir. 1986) for support. In *Del's*, the Seventh Circuit found that the defendants' actions became state action when they enforced an *ex parte* order which had armed them with the state's power to dispossess plaintiff of its property. *Id.* at 1346. Plaintiffs, however, have not alleged that the Axelrod Defendants were armed with state powers similar to the defendants in *Del's*. Further, Plaintiffs provide no authority to support the proposition that the Axelrod Defendants are state actors because they have a relationship with the state courtroom clerk or because they pursued claims and remedies against Gonzalez in state court which were permitted by law. Plaintiffs have failed to state a claim for violation of due process, therefore Count VIII is dismissed as to the Axelrod Defendants without prejudice.

Plaintiffs also bring a Title VII claim. (Dkt. 20 Count XXX). The Seventh Circuit makes it clear that a plaintiff must prove the existence of an employment relationship in order to maintain a Title VII action against a defendant. *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1996) (citations omitted). Plaintiffs fail to allege any employment relationship between Gonzalez and any of the named defendants. Plaintiffs also failed to provide any evidence that they satisfied the administrative remedy requirements of Title VII. Count XXX is therefore dismissed as to all named defendants without prejudice.[20]

---

[20] *See* note 14.

**Conclusion**

For the foregoing reasons, the Defendants' motions to dismiss [33], [34], [37], [38], [39], [40], [42], [43], [45], [49], and [101] are granted as specifically stated throughout this order. The parties are hereby ordered to appear for a status hearing on April 7, 2017 at 9:30 AM. This Court requests that the parties not file any new motions prior to the status.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: March 30, 2017